UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ANTHONY FUDGE,

                                    Petitioner,

                                                            9:13-cv-1370
                                                            (GTS/TWD)
v.

D. LACLAIR, Superintendent,

                                    Respondent.
_____

APPEARANCES:                            OF COUNSEL:

ANTHONY FUDGE
Petitioner, *pro se*
1208 Hawley Avenue
Syracuse, New York 13203

HON. ERIC T. SCHNEIDERMAN              MICHELLE ELAINE MAEROV, ESQ.
Attorney General for the State of New York   Assistant Attorney General
Counsel for Respondent
120 Broadway
New York, New York 10271


**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge


<u>**ORDER and REPORT-RECOMMENDATION**</u>

This action has been referred to the undersigned by the Hon. Glenn T. Suddaby, Chief

United States District Judge, for a report-recommendation pursuant to 28 U.S.C. § 636(b) and

Northern District of New York Local Rule 72.3(c).  Petitioner Anthony Fudge, a former New

York State prisoner proceeding *pro se*, has commenced this habeas corpus proceeding pursuant

to 28 U.S.C. § 2254.  For the following reasons, the Court recommends denying the petition.

# I.     THE HABEAS PETITION

Petitioner challenges a judgment of conviction entered June 17, 2009, following a jury

trial in Onondaga County Supreme Court, the Hon. John J. Brunetti, Acting Supreme Court

Justice, presiding.  (Dkt. No. 1.)  Petitioner was convicted of assault in the second degree,

unlawful fleeing a police officer in a motor vehicle in the third degree, resisting arrest, and

criminal possession of a controlled substance in the seventh degree.  (Dkt. No. 8-3 at 497-53.[1])

Petitioner was sentenced as a second felony offender to concurrent terms of six years

imprisonment, to be followed by five years of post-release supervision.  *Id*. at 508.

The Appellate Division, Fourth Department unanimously affirmed Petitioner's conviction

on March 15, 2013, and leave to appeal to the New York Court of Appeals was denied on August

7, 2013.  *People v. Fudge*, 960 N.Y.S.2d 792 (4th Dep't 2013), *lv denied*, 972 N.Y.S.2d 539

(2013).  Petitioner timely filed this petition on November 4, 2014.  (Dkt. No. 1.)

Petitioner challenges his conviction for second-degree assault, claiming the prosecution

"failed to show sufficient evidence beyond a reasonable doubt" that Onondaga County Sheriff's

Deputy Terrance Fischer ("Fischer") "was in fact injured in a motor vehicle pursuit" of Petitioner

on July 3, 2008.  *Id*. at ¶ 11.  In support of his petition, Petitioner relies on Fischer's grand jury

testimony, Fischer's medical records, and the trial testimony of Lawrence Moloff, M.D., who

treated Fischer at Crouse Hospital after Petitioner's arrest.  *Id*. at ¶¶ 12-16.  Petitioner further

alleges "such issues were not challenged" by his trial counsel, "which contributed to [his] false

imprisonment."  *Id*. at ¶ 17.

---

[1]  Page references to documents identified by docket number are to the numbers assigned by the
CM/ECF docketing system maintained by the Clerk's Office.

Liberally construed, Petitioner argues that (1) the assault indictment and conviction were based on insufficient evidence, and (2) trial counsel was ineffective for not challenging the sufficiency of the evidence on the assault count. *Id*. at ¶¶ 11-18. Respondent has answered the petition, arguing that it should be dismissed on various grounds, including the merits. (Dkt. No. 8.) Petitioner has filed a traverse. (Dkt. No. 10.)

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Petitioner's traverse succinctly and accurately summarizes the relevant facts as follows:

> On July 03, 2008, in the City of Syracuse, State of New York, Petitioner was pulled over for a traffic infraction. Petitioner then, after driving away, led [the] Syracuse Police Department/Onondaga County Sheriff on a high speed car chase.
>
> Fischer, who engaged in the pursuit of Petitioner, traveled over a dirt berm, alledegly (sic) hitting his head on the interior of his patrol car, alledegly (sic) <u>suffering a fractured C-7</u>, <u>broken neck</u>.
>
> Fischer, then got out of his patrol car, chased Mr. Lee (passenger) 50 to 75 feet, and fought with passenger. These events occurred with Fischer alledegly (sic) having a broken neck.

*Id*. at ¶¶ 2-5 (emphasis in original, internal citations omitted).

### A.   Indictment

On September 11, 2008, an Onondaga County grand jury returned a six-count indictment charging Petitioner with assault on a peace officer, police officer, fireman or emergency medical services professional (Penal Law § 120.08), criminal mischief in the third degree (Penal Law § 145.05), unlawful fleeing a police officer in a motor vehicle in the third degree (Penal Law § 270.25), resisting arrest (Penal Law § 205.50), criminal possession of a controlled substance in the seventh degree (Penal Law § 220.03), and reckless driving (Veh. and Traf. Law § 1212). (Dkt. No. 8-2 at 35-36.)

Relevant to this action, count one of the indictment alleged that Petitioner:

> on or about the 3rd day of July, 2008, at the City of Syracuse, in [Onondaga] County, intending to prevent a police officer from performing a lawful duty, caused serious physical injury to such police officer, to wit: a broken neck to Deputy Terrence Fischer.

*Id*. at 35.

On September 29, 2008, Petitioner appeared with retained counsel, Paul G. Carey, and entered a plea of not guilty to all charges. (Dkt. No. 8-3 at 7-9.) On October 14, 2008, Petitioner filed an omnibus motion, moving for, *inter alia*, inspection of the grand jury minutes for legal sufficiency and dismissal of the indictment on legal defectiveness grounds. (Dkt. No. 8-2 at 65-84.) Petitioner's motion to inspect the grand jury minutes was granted, while his motion to dismiss the indictment was denied with leave to renew. *Id*. at 49-51. Thereafter, as a result of additional motion practice, by Decision and Order dated January 30, 2009, count one of the indictment was reduced to the lesser included offense of assault in the second degree (Penal Law § 120.05(3)), based upon the lack of legally sufficient evidence of serious physical injury to Fischer in the grand jury record. *Id*. at 53-59. Accordingly, count one of the amended indictment alleged that Petitioner:

> on or about the 3rd day of July, 2008, at the City of Syracuse, in [Onondaga] County, intending to prevent a police officer from performing a lawful duty, caused physical injury to such police officer, to wit: an injured neck and substantial pain to Deputy Terrence Fischer.

*Id*. at 38.

On March 24, 2009, Petitioner appeared for a status conference with newly retained counsel, Tynan Bozeman ("Bozeman"). *Id*. at 57. Thereafter, on May 29, 2009, Petitioner informed Judge Brunetti that he wanted to retain a new attorney because Bozeman was not meeting with him as promised. *Id*. at 99-101, 104. Bozeman disagreed, stating that, "I see

[Petitioner] every other week it feels like." *Id*. at 101. Judge Brunetti advised Petitioner he could obtain new counsel if desired but his trial date of June 15, 2009, would not be adjourned. *Id*. at 106-07. Petitioner advised he would "get a new lawyer." *Id*. at 109. Petitioner did not, however, retain new counsel and Petitioner was represented by Bozeman at trial. *Id*. at 146.

## B.    Trial

Petitioner's trial began on June 15, 2009. *Id*. Five members of the Onondaga County Sheriff's Department involved in the pursuit testified for the People, including Fischer and his partner, Deputy Sheriff William June ("June"). *Id*. 277-363. Emergency room physician, Dr. Moloff, also testified for the People. *Id*. at 404-13. Three videotapes of the pursuit, captured by dashboard cameras installed in the patrol cars, were received into evidence. *Id*. at 135-37, 158, 187-88. Petitioner and his sister, JoAnne Fudge testified for the defense. *Id*. at 372-390, 417-47.

On June 17, 2009, Petitioner was convicted of second-degree assault, third-degree unlawful fleeing of a police officer in a motor vehicle,[2] resisting arrest, and seventh-degree criminal possession of a controlled substance. *Id*. at 497-98. On July 14, 2009, Petitioner was sentenced as a second felony offender to concurrent terms of six years imprisonment on the second-degree assault count, and one-year on each of the remaining counts, to be followed by five years of post-release supervision. *Id*. at 508.

## C.    Direct Appeal

With the assistance of new counsel, Petitioner appealed his conviction to the Appellate Division, Fourth Department. (Dkt. No. 8-2 at 3-23.) Petitioner argued (1) trial counsel was ineffective due to a conflict of interest, (2) he was deprived of a fair trial because the trial judge

---

[2]  The jury was instructed it did not need to consider the reckless driving count if they found Petitioner guilty of unlawful feeling of a police officer in a motor vehicle. (Dkt. No. 8-3 at 463, 472.) Petitioner was found not guilty of criminal mischief in the third degree. *Id*. at 497.

repeatedly made denigrating comments directed toward his trial counsel, and (3) the sentence was excessive and punished Petitioner for exercising his right to a trial. *Id.* Plaintiff also filed a *pro se* supplemental brief in which he argued (1) count one of the original indictment was based on false evidence that Fischer broke his neck, (2) the trial court's reduction of count one was improper, and (3) and he was found guilty of a crime not charged and voted on by the grand jury. *Id.* at 199-218.

The Appellate Division unanimously affirmed Petitioner's conviction. *Fudge*, 960 N.Y.S.2d at 792. First, the Appellate Division rejected Petitioner's contention that he was denied effective assistance of counsel, stating that "[w]hile defense counsel need not support a defendant's *pro se* motion for the assignment of new counsel, a defendant is denied the right to counsel when defense counsel become a witness against the defendant by taking a position adverse to the defendant in the context of such a motion." *Id.* at 793 (internal citations omitted). The Appellate Division held that trial counsel's "brief defense of her own performance . . . did not create a prejudicial conflict." *Id.* (internal citations omitted).

Second, the Appellate Division held Petitioner "failed to preserve for [its] review his further contention that he was deprived of his right to a fair trial because the court improperly denigrated defense counsel in the presence of the jury" and that "in any event," Petitioner's "contentions were without merit." *Id.* (internal citations omitted).

Third, regarding the challenge to the severity of Petitioner's sentence, the Appellate Division found Petitioner's contention that he was "improperly penalized for asserting his right to a trial," was "not preserved for [its] review and, in any event, that contention lacks merit." *Id.* (internal citations omitted). The Appellate Division held Petitioner's sentence was "not unduly harsh or severe." *Id.*

Lastly, after reviewing Petitioner's *pro se* supplemental brief, the Appellate Division held the claims were "unpreserved for [its] review, and in any event are without merit." *Id.* (internal citation omitted).

Petitioner sought leave to appeal to the New York Court of Appeals, raising the single issue of whether he was denied effective assistance of trial counsel where counsel took an adverse position to Petitioner's *pro se* motion to be provided with new counsel. *Id.* at 239-241. The Court of Appeals denied Petitioner's application on August 7, 2013. *Fudge*, 972 N.Y.S.2d at 539.

### III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas corpus relief with respect to a claim adjudicated on the merits in state court only if, based upon the record before the state court, the adjudication of the claim (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citing 28 U.S.C. § 2254(d)(1), (2)); *Premo v. Moore*, 562 U.S. 115, 120-21 (2011); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

The AEDPA "imposes a highly deferential standard for evaluating state-court rulings" and "demands that state-court decisions be given the benefit of the doubt." *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (per curiam) (quoting *Renico v. Lett*, 559 U.S. 766, 1862 (2010) (internal quotation marks omitted)). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold." *Id.* at 473.

Federal habeas corpus review is limited to determining whether a petitioner is in custody in violation of the Constitution, laws, or treaties of the United States. *See* 28 U.S.C. §§ 2241(c), 2254(a); *see Wainwright v. Goode*, 464 U.S. 78, 83 (1983) ("[F]ederal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension."); *Swarthout v. Cooke*, 562 U.S. 216, 221 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law). Federal habeas courts must presume that the state courts' factual findings are correct unless a petitioner rebuts that presumption with "'clear and convincing evidence.'" *Schriro*, 550 U.S. at 473-74 (quoting 28 U.S.C. § 2254(e)(1)).

## IV.    DISCUSSION

Petitioner claims that the second-degree assault indictment and conviction were not supported by legally sufficient evidence because the People did not prove that Petitioner caused Fischer to sustain a serious injury and that trial counsel was ineffective for not challenging the sufficiency of the evidence. (Dkt. No. 1 at ¶¶ 12-18.) Respondent contends Petitioner's claims are unexhausted and procedurally barred, partially noncognizable, and entirely meritless. (Dkt. No. 8-1 at 12-20.) Respondent is correct.

### A.    Exhaustion and Procedural Bar

An application for a writ of habeas corpus may not be granted until a prisoner has exhausted all remedies available in state court unless "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254 (b)(1)(A), (B)(I), (ii). To satisfy the exhaustion

requirement, a petitioner must do so both procedurally and substantively. Procedural exhaustion requires that a petitioner raise all claims in state court prior to raising them in the habeas corpus petition. Substantive exhaustion requires that a petitioner "fairly present" each claim for habeas relief in "each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1981))). The petitioner bears the burden of proving exhaustion. *Colon v. Johnson*, 19 F. Supp. 2d 112, 119-20 (S.D.N.Y. 1998) (citations omitted).

Here, Petitioner has not exhausted any of his claims. First, Petitioner never raised the sufficiency of the trial evidence of Fischer's injury in his direct appeal. (*See* Dkt. No. 8-2 at 3-23, 199-218.) Second, while Petitioner raised the issue of conflict-free counsel on direct appeal and sought leave to appeal to the Court of Appeals (*id*. at 10-13, 239-40), Petitioner did not argue trial counsel was ineffective for failing to challenge the sufficiency of the grand jury and trial evidence. *See, e.g.*, *Rodriguez v. Hoke*, 928 F.2d 534, 538 (2d Cir. 1991) (holding each separate factual claim made in support of an ineffective assistance of counsel claim must be fairly presented to a state court before a federal habeas court may rule on it). Third, as Respondent correctly notes, although Petitioner's *pro se* supplemental brief raised several issues regarding the indictment and conviction, Petitioner relied exclusively on state law and, thus, did not identify any constitutional principle at issue with the indictment. (*See* Dkt. No. 8-1 at 13.) As such, Petitioner has failed to fairly present his claims to the state courts for one complete round of the appellate review process. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Daye v. Att'y General of New York*, 696 F.2d 186, 194 (2d Cir. 1982) (en banc).

A claim that was not fairly presented to the state courts and does not satisfy the requirements of § 2254(b)(1) may still be "deemed" exhausted by the federal habeas court "if it is clear that the state court would hold the claim procedurally barred." *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991) (collecting cases); *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001) ("When a claim has never been presented to a state court, a federal court may theoretically find that there is an 'absence of available State corrective process' under § 2254(b)(1)(B)(I) if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile.").

Here, Petitioner cannot return to the state courts to fairly present his unexhausted claims because he has already sought direct appeal of his conviction and, in New York, a defendant is "entitled to one (and only one) appeal to the Appellate Division." *Aparicio*, 269 F.3d at 91. Moreover, because "New York does not otherwise permit collateral attacks on a conviction when the defendant unjustifiably failed to raise the issue on direct appeal," Petitioner could not now properly raise his claims, which are all record-based, in an Article 440 motion. *Id.* (citing N.Y. Crim Proc. § 440.10(2)(c)); *Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994), *cert. denied*, 514 U.S. 1054 (1995). As such, Petitioner's claims are deemed exhausted but procedurally barred. *See Ramirez v. Attorney General*, 280 F.3d 87, 94 (2d Cir. 2001); *Spence v. Superintendent, Great Meadow Corr. Fac.*, 219 F.3d 162, 170 (2d Cir. 2000).

A petitioner with a claim that is deemed exhausted because state remedies are no longer available may avoid the procedural bar if he "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Gutierrez v. Smith*, 702 F.3d 103, 110-11 (2d Cir. 2012) (citations

omitted); *DiGuglielmo v. Smith*, 366 F.3d 130, 135 (2d Cir. 2004) (citations omitted). "Cause" requires a showing that "some objective factor external to the defense impeded counsel's efforts to raise the claim in state court" or that the basis for a claim was not reasonably available to counsel. *Levine v. Comm'r of Corr. Servs.*, 44 F.3d 121, 127 (2d Cir. 1995) (internal quotation marks and citations omitted). As for a miscarriage of justice, this necessarily involves a showing that the petitioner is actually innocent. *Sweet v. Bennett*, 353 F.3d 135, 141 (2d Cir. 2003). A federal habeas court will reach the merits of a petitioner's procedurally barred claim only if he can establish cause and prejudice, or a miscarriage of justice. *Gutierrez*, 702 F.3d at 110-11.

In this case, neither is present in the record. Ineffective assistance of counsel may constitute cause, and to successfully allege it, the petitioner must raise it as a separate and meritorious claim. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). Even though Petitioner has raised ineffective assistance of trial counsel as a separate claim, as discussed below, he has failed to demonstrate that the claim is meritorious. *See also Reyes v. Keane*, 118 F.3d 136, 140 (2d Cir. 1997) ("[A] claim of cause for procedural default is not itself excepted from the doctrine of procedural default. Thus, a petitioner may not bring an ineffective assistance claim as a cause for a default when the ineffective assistance claim itself is procedurally barred.") (citation omitted). Petitioner has failed to establish cause for overcoming the procedural bar. Since cause is not established, the Court does not need to reach the inquiry on actual prejudice. *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985); *Horton v. Ercole*, 557 F. Supp. 2d 308, 323 (N.D.N.Y. 2008) (citations omitted).

As for a fundamental miscarriage of justice, "[t]o establish actual innocence, the petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley v. U.S.*, 523 U.S. 614, 623 (1998) (internal

quotation marks and citations omitted). Furthermore, "[i]t is important to note in this regard that 'actual innocence' means factual innocence, not mere legal sufficiency." *Id*. Petitioner has not met this burden. Even though Petitioner devotes the entirety of his traverse discussing Fischer's medical records, Petitioner does not allege new evidence tending to establish his actual innocence. (Dkt. No. 10.)

Based on the above, Petitioner's claims are unexhausted, deemed exhausted, and procedurally defaulted. Petitioner's claims are thus barred from habeas review.

Although Petitioner's claims are unexhausted, this Court may exercise its discretion to review and deny the claims on the merits if the claims are "plainly meritless." *Contant v. Sabol*, 987 F. Supp. 2d 323, 348 (S.D.N.Y. 2013) (citing *Rhines v. Weber*, 544 U.S. 269, 277 (2005)). As discussed below, Petitioner's claims are plainly meritless. Therefore, it is recommended that the Court exercise its discretion to review and deny Petitioner's claims on the merits.

**B.     Merits**

Turning to the merits, Respondent agues Petitioner's challenge to the sufficiency of the trial and grand jury evidence is partially noncognizable and entirely meritless, and his related ineffective assistance of trial counsel claim is meritless. (Dkt. No. 8-1 at 14-21.) Respondent is correct.

1.     Sufficiency of Grand Jury Evidence

Petitioner argues Fischer falsely testified before the grand jury on August 18, 2008, and September 2, 2008, by testifying that he "had a broken neck." (Dkt. No. 1 at ¶ 12.) Yet, the preliminary radiological report, dated July 4, 2008, indicated Fischer had "[n]o abnormalities of cervical spine. No acute abnormality of C7." *Id*. at ¶ 13. Accordingly, Petitioner claims

Fischer's grand jury testimony was "premature, without further diagnostic treatment until two (2) months after testimony." *Id*. at ¶ 14.

First, a federal court will not ordinarily review a federal claim presented in a habeas petition if it has been rejected by the state courts on an "independent and adequate" state law ground. *Coleman*, 501 U.S. at 750; *Murden v. Artuz*, 497 F.3d 178, 194 (2d Cir. 2007); *see also Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990) ("[F]ederal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim.").

In its decision, the Appellate Division dismissed Petitioner's claim attacking the validity of the indictment on state law preservation grounds. *Fudge*, 960 N.Y.S.2d at 792. There, the court expressly found Petitioner's challenges to the indictment raised in his *pro se* supplemental brief were "unpreserved for [its] review (see [N.Y. Crim. Proc. §] 470.05[2]), and in any event are without merit." *Fudge*, 960 N.Y.S.2d at 792. New York's preservation rule, which forbids direct appellate review of issues not preserved at trial, has consistently been held to be an independent and adequate state law ground. *Richardson v. Greene*, 497 F.3d 212, 219 (2d Cir. 2007). Because the Appellate Division rejected this claim on independent and adequate state procedural grounds, federal review is barred unless Petitioner establishes cause for the default and resulting prejudice, or that a fundamental miscarriage of justice will result from the Court's failure to review the claim. *See Coleman*, 501 U.S. at 750.

In this case, as discussed above, Petitioner has failed to establish either of these mitigating factors in this case. Even if Petitioner could demonstrate cause, which does not appear from the record, for the reasons set forth below, he cannot show prejudice insofar as this

claim is meritless.  *Pettigrew v. Bezio*, No 1:10-CV-1053, 2012 WL 1714934, at *4 (W.D.N.Y. May 15, 2012)[3] (concluding that a petitioner cannot show actual prejudice where the underlying defaulted claim is meritless); *Stepney*, 760 F.2d 40, 45 (2d Cir. 1985) (noting that federal habeas relief is unavailable as to procedurally defaulted claims unless both cause and prejudice are demonstrated); *see also Williams v. Brown*, No. 1:08-CV-10044, 2010 WL 850182, at *3 (S.D.N.Y. Mar. 11, 2010) (rejecting actual innocence claim where "[t]he evidence adduced by [the petitioner] in his petition solely concerns certain alleged procedural irregularities . . . none of which casts any doubt on [the petitioner's] underlying guilt").  Therefore, this claim is further barred by an independent and adequate state law ground.

In addition to being procedurally defaulted, Petitioner's claims related to the grand jury proceedings are not cognizable on federal habeas review.  "[N]ew York's constitution creates a right to indictment by a grand jury for felony charges, [and] state law governs how these proceedings are to be conducted and creates the remedies for any procedural violations."  *Nelson v. New York*, No. 10-CV-9021, 2013 WL 796276, at *2 (S.D.N.Y. Mar. 5, 2013).  "A state criminal defendant has no federal right to have felony charges against him presented to a grand jury[.]"  *Id.*; *see also Bransburg v. Hayes*, 408 U.S. 665, 688, n25 (1972) (the right to "indictment by grand jury is not part of the due process of law guaranteed to state criminal defendants by the Fourteenth Amendment); *LanFranco v. Murray*, 313 F.3d 112, 118 (2d Cir. 2002) (noting the Fifth Amendment right to an indictment by a grand jury does not apply to the states as it is not incorporated by the due process clause of the Fourteenth Amendment).

---

[3]  Copies of unreported cases cited herein will be provided to Petitioner.  *See Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Therefore, "claims of deficiencies in . . . state grand jury proceedings are [not] cognizable in a habeas corpus proceeding."  *Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir. 1989); *see also Nelson*, 2013 WL 796276, at *2 ("[B]ecause New York State law, and not federal law, prescribes how state grand jury proceedings are to be conducted, any claimed irregularity in state grand jury proceedings is necessarily a state law claim and cannot be a basis for habeas corpus relief."); *Rivers v. Costello*, No. 9:08-CV-107 (TJM/RFT), 2011 WL 4592041, at *9 (N.D.N.Y. Sept. 9, 2011) (The petitioner's claim regarding the validity of evidence presented to the grand jury "does not present a federal question and is therefore not cognizable on federal habeas review.") (emphasis omitted); *Louis v. Fischer*, No. 04-C-2887, 2007 WL 4198255, at *22-23 (E.D.N.Y. June 5, 2007) (holding that the petitioner's claim that a witness perjured herself in a grand jury proceeding is not cognizable on federal habeas review).

For these reasons, the Court recommends denying this claim.

### 2. Sufficiency of Trial Evidence

Petitioner contends that his conviction for second-degree assault was not supported by legally sufficient evidence because the People failed to show sufficient evidence beyond a reasonable doubt, that Fischer was in fact injured in a motor vehicle pursuit Petitioner.  (Dkt. No. 1 at ¶ 11.)

A convicted defendant seeking federal habeas review for sufficiency of evidence to support a conviction bears a heavy burden.  *Fama v. Commissioner of Corr. Servs.*, 235 F.3d 804, 811 (2d Cir. 2000); *Flowers v. Fisher*, 296 F. App'x 208, 210 (2d Cir. 2008); *United States v. Brewer*, 36 F.3d 266, 268 (2d Cir. 1994).  A petitioner making this claim is entitled to habeas relief only if it is found "that upon the record evidence adduced at trial no rational trier of fact

could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324, (1979).

When making an analysis concerning sufficiency of the evidence, the reviewing court is required to "consider the evidence in the light most favorable to the prosecution and make all inferences in its favor[,]" and must defer to the credibility assessments made by the jury without substituting its view for that of the factfinder. *Fama*, 235 F.3d at 811; *see also Jackson*, 443 U.S. at 319. Viewing the evidence in this light, the habeas court must uphold the verdict "if *any* rational trier of fact could have found the essential elements of the crime [of conviction] beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original).

Under New York law, a person is guilty of second-degree assault when "[w]ith intent to prevent . . . a police officer . . . from performing a lawful duty . . . he . . . causes physical injury to such . . . police officer." N.Y. Crim. Proc. § 120.05(3). Thus, the People were required to prove beyond a reasonable doubt that (1) on or about July 3, 2008, in the City of Syracuse, Petitioner acted with intent to prevent a police officer from performing a lawful duty, (2) Fischer was a police officer and was performing a lawful duty, and (3) Petitioner caused physical injury to Fischer. (*See* Dkt. No. 8-3 at 466.) As set forth above, count one of the indictment charged Petitioner with causing "an injured neck and substantial pain" to Fischer. (Dkt. No. 8-2 at 38.)

In this case, the evidence at petitioner's trial was sufficient to support a reasonable finder of fact in finding that petitioner was guilty of second-degree assault. As to the first element, Petitioner testified on his own behalf, and admitted that on July 3, 2008, after being stopped for a traffic violation, he fled from the police. (Dkt. No. 8-3 at 417-18, 440, 442.) He acknowledged that, in an effort to evade the police, he drove through stop signs and stop lights. *Id*. at 440. He travelled in the wrong direction on one-way streets. *Id*. He admitted to driving through

courtyards and over sidewalks. *Id*. at 441. Petitioner admitted driving over a dirt berm at a housing complex on the South Side of Syracuse. *Id*. at 442.

As to the second element, Fischer testified that he was employed as a Deputy Sheriff for the Onondaga County Sheriff's Department and was performing a lawful duty while pursuing Petitioner on July 3, 2008. *Id*. at 327-28.

As to the third element, New York law defines "physical injury" as "impairment of physical condition or substantial pain." Penal Law § 10.00[9]. Significantly, under New York law, "physical injury" requires no particular degree of pain or impairment. *See Witt v. Racette*, No. 10 Civ. 9180 (JPO), 2012 WL 3205177, at *7 (S.D.N.Y. Aug. 7, 2012) (citing *People v. McDowell*, 321 N.Y.S.2d 894, 895 (1971)). "So long as the pain is 'more than slight or trivial' it is considered sufficient to constitute physical injury under New York law." *Id*. (quoting *People v. Chiddick*, 834 N.Y.S.2d 710, 711-12 (2007)). In *Chiddick*, the Court of Appeals further held "[i]t is also relevant that [the victim] sought medical treatment . . . an indication that his pain was significant." 834 N.Y.S.2d at 712.

Fischer testified his head struck the interior roof of his patrol car while following Petitioner's vehicle over the dirt berm. (Dkt. No. 8-3 at 330-31.) He testified that he experienced "really bad" pain, rated about an "8" on a scale of 1 to 10. *Id*. at 331. After Petitioner's arrest, Fischer and June sought emergency medical treatment at Crouse Hospital. *Id*. 332, 336. Fischer was examined by Dr. Moloff, administered morphine, and placed in a cervical collar. *Id*. at 336, 337-38, 339. Fischer spent the night at the hospital and underwent an MRI, a CT scan, and x-rays, and was told he had fractured his seventh cervical vertebrae. *Id*. at 336-37.

Fischer testified that he took pain medication twice daily for the next three weeks and that he wore the cervical collar for three months. *Id*. at 338. Fischer underwent a month of

physical therapy, and missed five and one-half months of work because he could not drive or turn his head. *Id*. at 338-39. Fischer testified that months after the incident, he still experienced occasional pain. *Id*. at 339-40. In light of the above, the evidence presented at trial was more than sufficient for a rational trier of fact to conclude that the essential elements of the crime were present beyond a reasonable doubt.

Petitioner raises several arguments contesting the veracity of Fischer's testimony and challenging the medical evidence of Fischer's neck injury. (*See* Dkt. No. 10 at ¶¶ 7-9.) However, these arguments merely contest the credibility of the prosecution's evidence, and are insufficient to disturb the verdict. *See Marshall v. Lonberger*, 459 U.S. 422, 432-35 (1983) (holding that a federal court reviewing a habeas petition may not revisit the fact-finder's credibility determinations); *Vera v. Hanslmaier*, 928 F. Supp. 278, 284 (S.D.N.Y. 1996) (noting that a habeas court is not free to make credibility judgments about the evidence or weigh conflicting testimony). Here, as in many cases,

> the jury's decision was largely a matter of choosing whether to believe [Petitioner's] version of the events or to believe the version offered by the State. The jury chose to believe the State's witnesses, despite the inconsistencies in the evidence . . . . We cannot say that no reasonable jury could have found guilt beyond a reasonable doubt on all the evidence.

*Gruttola v. Hammock*, 639 F.2d 922, 928 (2d Cir. 1981).

Considering the evidence presented at trial, this Court is not persuaded that "it is more likely than not that no reasonable juror would have convicted." *Schlup*, 513 U.S. at 329. Accordingly, the Court recommends denying this claim.

### 3. Ineffective Assistance of Counsel

Petitioner contends trial counsel was ineffective for failing to challenge the sufficiency of evidence regarding Fischer's injury. (Dkt. No. 1 at ¶ 17.) To prevail on an ineffective assistance

of counsel claim, a habeas petitioner must: (1) show that counsel's performance fell below an "objective standard of reasonableness" under "prevailing professional norms," and (2) demonstrate that the alleged inefficiency resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).

Under the first prong of *Strickland*, the reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *United States v. Aguirre*, 912 F.2d 555, 560 (2d Cir. 1990) (quoting *Strickland*, 466 U.S. at 689). Regarding the second prong of the test, the question is whether there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is one sufficient to undermine confidence in the outcome of the trial or appeal. *Id.* Under *Strickland*, "counsel should be strongly presumed to have rendered adequate assistance and made all decisions in the exercise of reasonable professional judgment." *Id.* at 690.

Petitioner contends trial counsel rendered ineffective assistance by failing to challenge the assault indictment. (Dkt. No. 1 at ¶ 17.) However, claims regarding errors in grand jury procedure are not cognizable on federal habeas review where the petitioner was found guilty by a petit jury. *King v. Phillips*, No. 03-CV-6045 (NGG) (RB), 2009 WL 891763, at *3 (E.D.N.Y. Mar. 31, 2009) (citing, *inter alia*, *United States v. Eltayib*, 88 F.3d 157, 173 (2d Cir. 1996) (holding that a claim of prosecutorial misconduct failed because "a guilty verdict by a petit jury remedies any possible defects in the grand jury indictment")); *Smith v. Edwards*, No. 98 Civ. 7962(DLC), 2000 WL 709005, at *8 n.2 (S.D.N.Y. May 31, 2000) (rejecting claim that trial counsel failed to object to grand jury testimony as noncognizable on federal habeas review where the petitioner was found guilty by a petit jury). Accordingly, trial counsel's failure to challenge

the sufficiency of the grand jury evidence does not constitute ineffective assistance of counsel. *See, e.g.*, *LanFranco*, 313 F.3d at 118-20.

Petitioner further contends trial counsel failed to challenge the sufficiency of the conviction of second-degree assault. (Dkt. No. 1 at ¶ 17.) Respondent correctly argues this claim is obviously meritless because trial counsel moved for an order of dismissal:

> Your Honor, I would like to make a motion for trial order of dismissal. I feel that the People have failed to meet their burden that there was substantial pain or a physical impairment. In *People v. Calatano*, it was held that evidence insufficient [sic] when officer received very substantial blows to the chest, that it hurt a lot, but it failed to interfere with his continuing effort to apprehend the defendant.

(Dkt. No. 8-3 at 269.)

In any event, a review of the record reveals Petitioner's trial counsel comported with constitutional standards and rendered effective assistance overall. *See Harrington v. Richter*, 562 U.S 86, 111 (2011) ("it is difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy"). Trial counsel delivered a persuasive opening argument, arguing the People would not be able to meet their burden of proof on the assault charged, because "[n]o one got injured." (Dkt. No. 8-3 at 268.) Trial counsel explained that Fischer's injury did not interfere with his lawful duties and, in fact, after allegedly striking his head, Fischer "jumped out of the car, ran and even caught the passenger." *Id*. at 269. Trial counsel cross-examined all of the People's witnesses. Indeed, as discussed above, trial counsel moved for an order of dismissal of the assault charge, arguing the People failed to meet their burden of establishing "physical injury" and also moved to dismiss the criminal mischief count. *Id*. at 391, 398. During closing arguments, trial counsel again argued Fischer "was not hurt enough" because Fischer was able to run and apprehend the suspect after his alleged injury, and thus, Fischer did not sustain substantial pain and physical impairment. *Id*. at 451-56. Trial

counsel ultimately secured an acquittal on the criminal mischief count. *Id*. at 497. Finally, at sentencing, trial counsel argued for leniency. *Id*. at 506-07.

In light of the above, Petitioner's claim of ineffective assistance of counsel is without merit and the Court recommends denying this claim.

**WHEREFORE**, based on the foregoing, it is hereby

**RECOMMENDED** that the petition for a writ of habeas corpus (Dkt. No. 1) be **DENIED** and **DISMISSED**; and it is further

**RECOMMENDED** that no certificate of appealability should be issued with respect to any of the claims set forth in the petition as Petitioner has not made "a substantial showing of the denial of a constitutional right" pursuant to 28 U.S .C. § 2253(c)(2); and it is further

**ORDERED** that the Clerk's Office provide Petitioner a copy of this Order and Report-Recommendation, along with copies of unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report.[4] Such objections shall be filed with the Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.</u>** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of HHS*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

---

[4] If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

Dated: January 18, 2017
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

2012 WL 1714934
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

David C. PETTIGREW, Petitioner,

v.

Norman BEZIO, Superintendent, Respondent.

No. 10–CV–01053 (MAT).
|
May 15, 2012.

**Attorneys and Law Firms**

David C. Pettigrew, Comstock, NY, pro se.

Lisa Ellen Fleischmann, New York State Department of
Law, New York, Ny, for Respondent.

## DECISION AND ORDER

MICHAEL A. TELESCA, District Judge.

### I. Introduction

**\*1** *Pro se* Petitioner David C. Pettigrew ("Petitioner")
has filed a timely petition for a writ of habeas corpus
under 28 U.S.C. § 2254 challenging the constitutionality
of his custody pursuant to a judgment entered December
19, 2007, in New York State, County Court, Niagara
County, convicting him, upon his guilty plea, of Sexual
Abuse in the First Degree (N.Y. Penal Law ("Penal Law")
§ 130.65[2] ) and Criminal Contempt in the First Degree
(Penal Law § 215.51[b][vi] ). Petitioner was sentenced to a
determinate term of seven years imprisonment plus three
years of post-release supervision on the sexual assault
conviction, and an indeterminate prison term of from one
and one-third to four years imprisonment on the contempt
conviction.

### II. Factual Background and Procedural History

#### A. Introduction

Petitioner was initially charged in or about 2006 in
the Niagara County Family Court with abuse and
neglect proceedings relating to the victim in this matter,
Petitioner's then 14 or 15 year old daughter. When
Petitioner violated an order of protection, misdemeanor

contempt proceedings were initiated in the Lockport
City Court. In or about March through May 2006,
Petitioner began committing sex abuse crimes against his
daughter, and the Niagara County District Attorney's
Office brought the evidence of those crimes, and of
Petitioner's violations of orders of protection, before a
grand jury.

On July 12, 2007, a Niagara County grand jury charged
Petitioner with two counts of Sexual Abuse in the First
Degree (Penal Law §§ 130.65[1][2] ) (physical helplessness
and forcible compulsion), three counts of Rape in the
Second Degree (Penal Law § 130.30[1] ), one count of Rape
in the First Degree (Penal Law § 130.65[1] ), one count
of Criminal Contempt in the First Degree (Penal Law §
215.51[b][vi] ), and three counts of Criminal Contempt in
the Second Degree (Penal Law § 215.50[3] ). *See* Resp't Ex.
D at 8–12.

#### B. Plea & Sentencing

On October 18, 2007, Petitioner and his attorney appeared
before Niagara County Court Judge Peter L. Broderick,
Sr., and Petitioner agreed to plead guilty to the first and
sixth counts of the indictment (first degree sexual abuse
(helplessness) and first degree criminal contempt). Plea
Mins. [P.M.] 2–6. Petitioner admitted that, for purposes of
his own sexual gratification, he had touched his daughter
while she was sleeping. P.M. 16. Petitioner also admitted
that he "intentionally place[d] or attempt[ed] to place [his
daughter] in reasonable fear of imminent physical injury
by physical menace while an order of protection was
outstanding in her behalf," by restraining her from leaving
the house. P.M. 16.

On December 19, 2007, Petitioner was sentenced to a
determinate prison term of seven years, plus three years of
post-release supervision, for the sexual abuse conviction,
and to an indeterminate prison term of from one and one-
third years to four years for the contempt conviction. The
sentences were ordered to run concurrently. Sentencing
Mins. [S.M.] 12.

#### C. Direct Appeal

**\*2** Through counsel, Petitioner appealed his judgment of
conviction to the Appellate Division, Fourth Department
on the following grounds: (1) the appeal waiver was
invalid; and (2) Petitioner's sentence was harsh and
excessive. *See* Resp't Ex. C. Petitioner also filed a *pro se*

supplemental brief arguing that: (1) he did not violate the temporary order of protection (implicated in Count 9 of the indictment charging him with Criminal Contempt in the Second Degree) insofar as said order had expired on or about January 17, 2007; (2) prosecutorial misconduct in the Lockport City Court; (3) Petitioner received ineffective assistance of counsel in Lockport City Court because counsel did not argue that Petitioner had not committed contempt "on February 16, 17, 2007"; (4) Petitioner received ineffective assistance of counsel in the Niagara County Court because counsel elected not to adopt Petitioner's *pro se* motion; and (5) the Niagara County prosecutor committed misconduct in the grand jury proceedings. *See* Resp't Exs. C, E. On February 6, 2009, the Appellate Division unanimously affirmed Petitioner's conviction. *People v. Pettigrew,* 59 A.D.3d 958, 872 N.Y.S.2d 325 (4th Dep't 2009) (Resp't Ex. G); *lv. denied,* 12 N.Y.3d 820, 881 N.Y.S.2d 27, 908 N.E.2d 935 (2009) (Resp't Ex. I).

### D. Petitioner's *Pro Se* Motion to Vacate the Judgment

On or about January 8, 2009, Petitioner moved, *pro se,* pursuant to N.Y.Crim. Proc. Law ("CPL") § 440.10, to vacate the judgment of conviction, arguing, in sum and substance, the same grounds that he argued in his *pro se* supplemental brief on direct appeal. *See* Resp't Ex. J. The Niagara County Court denied the motion, and leave to appeal was denied. *See* Resp't Exs. K, L.

### E. The Habeas Corpus Petition

This habeas corpus petition followed, wherein Petitioner seeks relief on the following grounds: (1) the prosecutor maliciously prosecuted him in Lockport City Court for criminal contempt when there was no temporary order of protection in place on the day Petitioner allegedly violated it; (2) the Lockport City Court issued a warrant in the absence of probable cause; (3) the Lockport City Court had no jurisdiction over Petitioner because Petitioner committed no crime because a temporary order of protection was not in effect when Petitioner committed some of the subject conduct; (4) the Lockport City Court unreasonably seized Petitioner based on a contempt crime that he did not commit; (5) the Lockport City Court denied Petitioner an impartial jury trial; (6) the Lockport City Court violated Petitioner's statutory speedy trial rights; (7) Petitioner was deprived of the effective assistance of counsel in the Lockport City Court; (8) the prosecutor committed misconduct in the Lockport

City Court; (9) the prosecutor acted with vindictiveness in prosecuting Petitioner for a charge he allegedly did not commit; (10) the prosecutor committed misconduct in the Niagara County Court proceedings for presenting legally insufficient evidence to the grand jury; (11) the Niagara County Court violated Petitioner's right to a prompt arraignment; (12) Petitioner's guilty plea was coerced and thus involuntary, and his appeal waiver was invalid; (13) he was deprived of the effective assistance of counsel in the Niagara County Court; and (14) the government committed "[o]utrageous conduct" for prosecuting Petitioner for contempt when allegedly no temporary order of protection was in effect. *See* Pet. ¶ 12; Attachments (Dkt. No. 1).

### III. The Exhaustion Requirement

**\*3** "An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that ... the applicant has exhausted the remedies available in the courts of the State...." 28 U.S.C. § 2254(b)(1)(A); *see, e.g., O'Sullivan v. Boerckel,* 526 U.S. 838, 843–44, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *accord, e.g., Bossett v. Walker,* 41 F.3d 825, 828 (2d Cir.1994), *cert. denied,* 514 U.S. 1054, 115 S.Ct. 1436, 131 L.Ed.2d 316 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." *Daye v. Attorney General,* 696 F.2d 186, 191 (2d Cir.1982) (en banc), *cert. denied,* 464 U.S. 1048, 104 S.Ct. 723, 79 L.Ed.2d 184 (1984).

### IV. The AEDPA Standard of Review

For federal constitutional claims adjudicated on the merits by a state court, the deferential standard of review codified in the Anti–Terrorism and Effective Death Penalty Act ("AEDPA") applies. A habeas petitioner can only obtain habeas corpus relief by showing that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

### III. Analysis of the Petition

### 1. Involuntary Guilty Plea and
### Invalid Waiver of Right to Appeal

At ground twelve of the petition, Petitioner argues that: (1) his guilty plea was involuntary because it "was induce[d] by [s]ituational [c]oercion"; and (2) that the waiver of his right to appeal was invalid. Pet., Attachment at Ground Twelve. The former claim, which is raised for the first time in the instant petition, is unexhausted but deemed exhausted and procedurally defaulted from habeas review. The latter claim, which was raised and rejected on the merits on direct appeal, [1] is meritless.

[1]    In denying this claim, the Appellate Division found that: "[c]ontrary to the contention of defendant, his waiver of the right to appeal was voluntarily, knowingly, and intelligently entered." *Pettigrew*, 59 A.D.3d at 958–959, 872 N.Y.S.2d 325 (citations omitted).

### A. Petitioner's Involuntary Guilty Plea
### Claim is Unexhausted but Deemed
### Exhausted and Procedurally Defaulted

Petitioner claims, for the first time in the habeas petition, that his guilty plea was coerced and thus involuntary. *See* Pet., Attachment at Ground Twelve. Because Petitioner failed to properly raise this claim in the state courts, it is unexhausted for federal habeas purposes. *See* 28 U.S.C. § 2254(b)(1). Respondent argues that this record-based claim should be deemed exhausted but found to be procedurally barred from habeas review because Petitioner has no means to exhaust the claim in state court. *See* Resp't Mem. of Law at 13–14, 23. The Court agrees. *See Grey v. Hoke,* 933 F.2d 117, 120–121 (2d Cir.1991) ( "[f]or exhaustion purposes, 'a federal habeas court need not require that a federal claim be presented to a state if it is clear that the state court would hold the claim procedurally barred.' ") (quoting *Harris v. Reed,* 489 U.S. 255, 263 n. 9, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989)); *Spence v. Superintendent,* 219 F.3d 162, 170 (2d Cir.2000) ("Because [petitioner] failed to raise his claim in the ordinary appellate process and can now no longer do so, it is procedurally defaulted.")); CPL § 440.10(2)(c) (barring new record-based claims that could have been raised on direct appeal but unjustifiably were not).

**\*4** Because this claim is procedurally barred, it may only be reviewed if Petitioner establishes cause for the default and resulting prejudice, or that a fundamental miscarriage of justice will result from the Court's failure to review the claim. *See e.g ., Aparicio v. Artuz,* 269 F.3d 78, 90 (2d Cir.2001); *accord Carvajal v. Artus,* 633 F.3d 95, 104 (2d Cir.2011) ("If a habeas applicant fails to exhaust state remedies by failing to adequately present his federal claim to the state courts so that the state courts would deem the claim [ ] procedurally barred, we must deem the claim [ ] procedurally defaulted.' ") (quoting *Aparicio,* 269 F.3d at 90; alteration in *Carvajal* ). Petitioner provides no cause for the default; rather, he incorrectly asserts throughout his pleadings that he "need not exhaust state remed[ies], to seek Federal Relief." *See e.g.,* Pet. at pp 6–12; Attachment at pp 1, 2, 5–7, 11, 12, 14, 17, 21. In any event, even if Petitioner could establish cause, he cannot establish prejudice insofar as the claim is meritless (see *infra* ). Moreover, for purposes of the miscarriage-of-justice exception, Petitioner has made no showing that he is " 'actually innocent' (meaning factually innocent) of the crime for which he was convicted." *Carvajal,* 633 F.3d at 108 (citing *Bousley v. United States,* 523 U.S. 614, 622, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998); footnote omitted). Accordingly, Petitioner's claim that his guilty plea was coerced and thus involuntary is procedurally defaulted from habeas review and dismissed on that basis.

Assuming arguendo this claim was not procedurally defaulted, it still would not warrant habeas relief. "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.' " *Hill v. Lockhart,* 474 U.S. 52, 56, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) (quoting *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970)). The Second Circuit has summarized the relevant factors as follows:

> [A] plea is deemed 'intelligent' if the accused had the advice of counsel and understood the consequences of his plea, even if only in a fairly rudimentary way; it is deemed 'voluntary' if it is not the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to weigh his options rationally.

*Miller v. Angliker,* 848 F.2d 1312, 1320 (2d Cir.1988). A reviewing court will uphold a guilty plea entered by

a defendant " 'fully aware of the direct consequences ... unless induced by threats ... misrepresentation ..., or perhaps by promises that are by their nature improper.' " *Brady v. United States,* 397 U.S. at 755 (quotation omitted). Since a defendant who pleads guilty waives several fundamental constitutional rights, in order for the waiver to be valid under the due process clause, it must be " 'an intentional relinquishment or abandonment of a known right or privilege.' " *McCarthy v. United States,* 394 U.S. 459, 465, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969) (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)). "Not only must the plea of guilty be voluntary, it must also be a knowing and intelligent act done with 'sufficient awareness of the relevant circumstances and likely consequences.' " *United States v. Rossillo,* 853 F.2d 1062, 1064 (2d Cir.1988) (quoting *Brady,* 397 U.S. at 748).

**\*5** Here, Petitioner was charged in a ten-count indictment (containing a charge of first degree rape, a Class B felony), and was permitted to plead guilty to first degree sexual abuse and first degree contempt, Class D and E felonies, respectively. At the beginning of the plea colloquy, the court asked Petitioner if he had sufficient time to discuss the plea with his attorney, to which Petitioner responded in the affirmative. P.M. 7. When asked by the court if he was satisfied with his attorney's representation, Petitioner initially stated that, "[he] [didn't] have a choice of being satisfied with it"; however, when the court redirected Petitioner back to the question at hand, he answered, without hesitation, in the affirmative. P.M. 7–8. Immediately thereafter, when asked by the court if he had any complaints about his attorney, Petitioner stated that he did not and that "[he] [had] heard a lot of good words about [his attorney], that he's a good lawyer." P.M. 8. Additionally, Petitioner affirmatively stated on the record that he was aware of the corroboration aspect of the sexual abuse charge "before [his counsel] talked to [him]"; that he knew, prior to pleading guilty, that he would have to register as a sex offender; and, that his counsel told him about determinate sentences and that he had "read it [himself]". P.M. 8–9. Petitioner also acknowledged, on the record, that he did not use drugs or drink alcohol and that his prescription medication did not affect his ability to think. P.M. 10–11. Petitioner acknowledged that a guilty plea was in his best interest because, if he did not plead guilty, he faced consecutive sentences, and lengthier sentences on the more serious counts. P.M. 11–12. Petitioner denied

that any other sentencing promise had been made to him or that he had been threatened, intimidated, or forced to plead guilty. P.M. 12–13. Petitioner stated that he was pleading guilty freely and voluntarily, after having consulted with his attorney. P.M. 13. Petitioner also acknowledged that by pleading guilty, he was waiving his trial rights. P.M. 13–14. The court then proceeded to explain to Petitioner that he would also have to waive his right to appeal, as a condition of the plea. P.M. 14. Petitioner acknowledged this condition, asked the court no questions about it, and signed the written waiver of the right to appeal after he conferred with his attorney, and after counsel amended the waiver to state that Petitioner would receive concurrent sentences that would not exceed seven years. P.M. 13–15. Petitioner then admitted that he had committed sexual abuse and criminal contempt. P.M. 15–17. In sum, all of the implications of Petitioner's plea were known to him, and he entered it freely and voluntarily. Thus, his claim that his plea was involuntary is meritless and does not warrant habeas relief.

### B. Petitioner's Invalid Waiver of Right to Appeal Claim is Meritless

Petitioner argues that his appeal waiver was invalid. He appears to be claiming, as he did on direct appeal, that the court's statements during the plea colloquy erroneously indicated to him that the waiver of the right to appeal was "automatic," rather than a bargained-for condition of the plea. *See* Pet., Attachment at Ground Twelve; *see also* Pet'r Br. on Appeal, Point I at Resp't Ex. C. This claim was adjudicated on the merits in state court and therefore AEDPA applies.

**\*6** Appeal waivers are generally valid so long as they are "knowingly, voluntarily, and competently provided by the defendant." *United States v. Gomez–Perez,* 215 F.3d 315, 318 (2d Cir.2000). The transcript of Petitioner's plea belies the instant claim. The record reflects that the trial court initially explained to Petitioner that, "in order to accept the plea," he would be waiving several "important rights," including the right to have a jury trial, the right to confront witnesses, and the right to testify in his defense. P.M. 13. When asked if he understood that he had these rights, Petitioner answered in the affirmative. The trial court then asked Petitioner if he wished to waive these rights, and Petitioner indicated that he did. P.M. 13–14. The trial court then spent the next two pages of transcript discussing Petitioner's right to appeal, specifically stating to Petitioner at the outset that, "[a]nother condition of

the plea ... you would be waiving any right to appeal." P.M. 14. In response to this statement, Petitioner replied, "[y]es, sir." P.M. 14. The court then went on to explain that "all that means is that you won't be able to challenge any decision that's been made in the case thus far and that includes my sentencing. Do you understand that?" In response, Petitioner answered in the affirmative. P.M. 14. The following colloquy then occurred with respect to the written waiver of appeal prepared by the Assistant District Attorney, which Petitioner executed in open court after conferring with his attorney:

> PROSECUTOR: Judge, I prepared a written waiver, [defense counsel] has that. We'd require that be signed.
>
> THE COURT: Do you in fact waive your right to appeal?
>
> PETITIONER: Yes.
>
> THE COURT: All right. Did he execute the written waiver?
>
> DEFENSE COUNSEL: No, your honor. I just got it and I'll go through it with him. ( [Defense counsel] and [Petitioner] conferring .).
>
> ...
>
> THE COURT: The record will reflect that the [Petitioner] and his counsel have executed the waiver of right to appeal in open court.

P.M. 14–15.

As is evident from the transcript, Petitioner's claim that the waiver of his right to appeal was invalid because the court's statements indicated that said waiver was "automatic" is meritless. The record clearly reflects that the trial court addressed Petitioner's right to appeal separate and apart from the other rights Petitioner was waiving "automatically" as part of the plea, expressly referred to the waiver of the right to appeal as a "condition of the plea," explained the consequences of waiving that particular right, and then afforded Petitioner an opportunity to confer with his attorney before executing the written waiver of his right to appeal. P.M. 14–15.

Accordingly, the Court cannot find that the state court's adjudication of this claim was contrary to, or an

unreasonable application of, clearly established federal law. The claim is therefore dismissed.

### 2. Petitioner's Remaining Claims are Waived by the Guilty Plea

**\*7** Petitioner's remaining claims are waived by Petitioner's voluntary, knowing, and intelligent guilty plea. *Tollett v. Henderson,* 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973) (finding that a defendant's properly counseled and entered plea of guilty admits all of the elements of a formal criminal charge and waives a multitude of federal constitutional rights); *accord United States v. Coffin,* 76 F.3d 494, 497 (2d Cir.1996) ("A defendant who pleads guilty unconditionally while represented by counsel may not assert independent claims relating to events occurring prior to the entry of the guilty plea. 'He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [acceptable] standards.' ") (quoting *Tollett,* 411 U.S. at 267) (alteration in original)); *see also United States v. Garcia,* 339 F.3d 116, 117 (2d Cir.2003) (per curiam) ("It is well settled that a defendant who knowingly and voluntarily enters a guilty plea waives all non-jurisdictional defects in the prior proceedings.") *Whitehead v. Senkowski,* 943 F.2d 230, 233 (2d Cir.1991) ("Generally a knowing and voluntary guilty plea precludes federal habeas corpus review of claims relating to constitutional rights at issue prior to the entry of the plea."). Petitioner's voluntary, knowing and intelligent guilty plea (see *supra* ) precludes the Court's review of Petitioner's remaining claims.

To the extent ground three implicates a jurisdictional issue(s) that survived Petitioner's guilty plea, said claim still provides no basis for habeas relief. Initially, Petitioner failed to apprise the state court of the federal constitutional dimension of this claim when he raised it in his CPL § 440.10 motion, framing it as a violation of state case and statutory law. As such, the claim is unexhausted. *See Daye,* 696 F.2d at 191 ("The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts."). Petitioner's failure to exhaust this claim, however, is not fatal to the Court's disposition of it on the merits. Because the Court finds the claim to be wholly meritless, it has the discretion to dismiss the petition notwithstanding Petitioner's failure to exhaust. [2] *See* 28 U.S.C. § 2254(b)(2); *Pratt v. Greiner,* 306 F.3d 1190, 1197 (2d Cir.2002).

2    The Second Circuit has not yet established a standard for denying unexhausted claims under 28 U.S.C. § 2254(b)(2), but all four districts in New York have applied the "patently frivolous" test for dismissing such claims. *See, e.g., Love v. Kuhlman,* No. 99 Civ. 11063, 2001 U.S. Dist. LEXIS 22572, 2001 WL 1606759 (S.D.N.Y. Dec. 12, 2001); *Cruz v. Artuz,* No. 97 Civ. 2508, 2002 U.S. Dist. LEXIS 11150, 2002 WL 1359386 (E.D.N.Y. June 24, 2002); *Toland v. Walsh,* No. 02 Civ. 0399, 2008 U.S. Dist. LEXIS 24616, 2008 WL 820184 (N.D.N.Y. Mar. 26, 2008); *Hammock v. Walker,* 224 F.Supp.2d 544 (W.D.N.Y.2002). A minority of courts in this Circuit have denied such petitions when they do not raise even a colorable federal claim. *See Hernandez v. Lord,* No. 00 Civ. 2306, 2000 U.S. Dist. LEXIS 10228, 2000 WL 1010975 (S.D.N.Y. July 21, 2000) (discussing cases applying this standard) (internal quotation marks omitted). Under either of these standards, Petitioner's claims are meritless.

At ground three of the petition, Petitioner argues that "[t]he Lockport City Court had no authority or jurisdiction over the matter or [him], because there was no crime committed by [him] on February 16, 17, 2007." Pet. ¶ 12, Ground Three. This argument is limited to count 9 of the indictment (charging Criminal Contempt in the Second Degree), which concerned Petitioner's failure, on or about February 16 or 17, 2007, to abide by the terms of an order of protection. *See* Resp't Ex. D. Petitioner, however, pleaded guilty to count 6 of the indictment, which concerned his failure, in March or April 2006, to abide by the terms of an order of protection. P.M. 2–3. Count 9 of the indictment was dismissed when Petitioner pleaded guilty to count 6 and thus his argument lacks a factual basis. Accordingly, ground three, to the extent it

survived the guilty plea, is unexhausted and, in any event, meritless.

**\*8** Accordingly, Petitioner's remaining claims provide no basis for habeas relief and are dismissed.

### V. Conclusion

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. No. 1) is denied, and the petition is dismissed. Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. *See, e.g., Lucidore v. New York State Div. of Parole,* 209 F.3d 107, 111–113 (2d Cir.2000). The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. *Coppedge v. United States,* 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

### IT IS SO ORDERED.

### All Citations

Not Reported in F.Supp.2d, 2012 WL 1714934

WESTLAW    © 2017 Thomson Reuters. No claim to original U.S. Government Works.                    6

2010 WL 850182
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial
staff and not assigned editorial enhancements.**

United States District Court,
S.D. New York.

Derrick WILLIAMS, Petitioner,
v.
William BROWN, Respondent.

No. 08 Civ. 10044(DLC).
|
March 11, 2010.

**Attorneys and Law Firms**

Derrick Williams, Napanoch, NY, pro se.

Nancy D. Killian, Bronx District Attorney, Bronx, NY,
for Respondent.

*OPINION & ORDER*

DENISE COTE, District Judge.

**\*1** On July 11, 2008, *pro se* petitioner Derrick
Williams ("Williams") filed a petition for a writ of
habeas corpus under 28 U.S.C. § 2254. In his petition,
Williams contests the lawfulness of the "persistent
violent felony offender" sentence enhancement he received
following his conviction for second-degree robbery in
1998. On February 23, 2009, the petition was referred
to the Honorable Michael H. Dolinger, United States
Magistrate Judge, for a Report and Recommendation
("Report") pursuant to 28 U.S.C. § 636(b)(1) (B).
The Report, issued on January 25, 2010, concludes
that Williams has not made a sufficient showing of
circumstances that would merit tolling the one-year
statute of limitations established by the Antiterrorism
and Effective Death Penalty Act of 1996, 28 U.S .C.
§ 2244(d)(1) ("AEDPA"). Consequently, the Report
recommends that his petition be dismissed as untimely.
That recommendation is accepted and the petition is
denied.

*BACKGROUND*

The facts outlined below are described in greater detail
in the Report, which is incorporated here by reference.
Williams was convicted in March 1998 of robbery in
the second degree following a jury trial in New York
Supreme Court, Bronx County. At sentencing, on October
1, 1998, the prosecutor sought a sentencing enhancement
pursuant to New York Penal Law ("NYPL") § 70.08 on
the basis that Williams was a persistent violent felony
offender. [1] The prosecutor offered evidence of two prior
violent felony offenses by Williams: a 1981 conviction for
robbery in the first degree (N.Y.PL § 160.15) and a 1987
conviction for criminal possession of a weapon in the third
degree (N.Y.PL § 265.02). The sentencing judge, Hon.
Barbara F. Newman, found that Williams was a persistent
violent felony offender as defined in NYPL § 70.08 and
sentenced him to an indeterminate term of imprisonment
of eighteen years to life.

[1]  NYPL § 70.08 provides that a person classified as
a "persistent violent felony offender" must receive
a mandatory sentencing enhancement. A "persistent
violent felony offender" is defined as "a person who
stands convicted of a violent felony offense as defined
in [NYPL § 70.02(1) ] ... after having previously been
subjected to two or more predicate violent felony
convictions as defined in [NYPL § 70.04(1)(b) ]." *Id.*
§ 70.08(1)(a).

Extensive post-conviction proceedings followed. Williams
then filed this § 2254 petition in federal court on or about
July 11, 2008.

In the petition, Williams does not contend that he
was innocent of the underlying offense for which he
was convicted and sentenced in 1998. Rather, Williams
challenges his October 1, 1998 sentence as illegal on
the basis that he was "actually innocent" of being a
persistent violent felony offender because his second
predicate conviction in 1987 under NYPL § 265.02 for
criminal possession of a weapon in the third degree "[was]
not for a violent felony offense." [2] In particular, Williams
alleges that the 1998 sentencing court made an erroneous
finding of fact regarding which subdivision of NYPL
§ 265.02 supported his 1987 conviction, and therefore,
incorrectly categorized his prior felony offenses under
New York sentencing law. [3] Williams maintains that the

1987 conviction was based on the first subdivision of § 265.02, which is not categorized as a "violent felony offense," as opposed to the fourth subdivision of § 265.02, which is. [4] In support of his claim, Williams proffers a Certificate of Disposition dated September 8, 2006 from the Bronx County Clerk (the "2006 Certificate") stating that the 1987 conviction was for a violation of NYPL § 265.02(1); a "commitment order" signed by the Associate Court Clerk indicating that he was sentenced "as a second felony offender"; and a letter from the Chief of the Records Management Bureau of the New York Division of Criminal Justice Services stating that his "arrest of May 19, 1986 is considered a non-violent felony conviction." Williams expressly concedes that his habeas petition was filed more than one year after the date that his conviction became final, but argues that an "actual innocence" exception should be applied in order to circumvent the application of the one-year statute of limitations.

[2]     Williams does not dispute that his 1981 conviction for first-degree robbery constitutes a "violent felony offense" for the purposes of sentence enhancement under NYPL § 70.08.

[3]     According to the indictment of May 23, 1986 that led to Williams's 1987 conviction, Williams was charged with knowingly possessing a loaded .38 caliber revolver in a place other than his home or business. The court accepted Williams' guilty plea on March 11, 1987, and sentenced him on April 10, 1987.

[4]     NYPL § 265.02 then provided, in pertinent part:
        A person is guilty of criminal possession of a weapon in the third degree when:
        (1) He commits the crime of criminal possession of a weapon in the fourth degree as defined in subdivision one, two, three or five of section 265.01 [i.e., if he possesses any firearm], and has been previously convicted of any crime; or
        ...
        (4) He possesses any loaded firearm. Such possession shall not, except as provided in subdivision one, constitute a violation of this section if such possession takes place in such person's home or place of business.

**\*2** On November 19, 2008, the Honorable Harold Baer, United States District Judge, issued an Order directing petitioner to show cause by affirmation within 60 days why his petition should not be dismissed as untimely under AEDPA. On January 22, 2009, petitioner responded

by acknowledging the late filing of his petition and stating that "[t]here are no facts that would support equitable tolling of the AEDPA," but suggesting that "[p]etitioner can only rely upon the rule in this circuit that a prisoner serving a noncapital sentence may avail himself to the doctrine of actual innocence as an aegis against an unlawful sentence." On January 30, 2009, the case was reassigned to this Court, and on February 23, 2009, the respondent was directed to answer the petition. In lieu of answering, however, the respondent filed a motion to dismiss on April 21, 2009, arguing that the petition was untimely under 28 U.S.C. § 2244(d)(1) and that no equitable tolling or "actual innocence" exception applied. [5] Williams opposed the respondent's motion on June 10, 2009, and no reply was filed by the respondent.

[5]     In his motion, respondent calculated that 1,209 days had elapsed-excluding the time during which each of Williams's five post-conviction collateral challenges were pending-since Williams's conviction had become final for the purposes of 28 U.S.C. § 2244(d)(1).

In his thorough Report, Judge Dolinger carefully considers each of Williams's arguments and concludes that tolling of the one-year limitations period under AEDPA is not merited in light of the ample evidence of Williams's guilt under NYPL § 265.02(4) of the 1987 predicate felony offense. As a result, the Report recommends that the petition be denied. No objections to the Report were filed by any party.

## DISCUSSION

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). If no timely objection has been made to the Magistrate Judge's Report and Recommendation, "a district court need only satisfy itself that there is no clear error on the face of the record." Wilds v. United Parcel Serv., 262 F.Supp.2d 163, 169 (S.D.N.Y.2003).

Under AEDPA, once a state court judgment of conviction has become final, a person in custody pursuant to that judgment may only file a federal habeas petition within one year after "the conclusion of direct review or the expiration of the time for seeking such review," 28 U.S.C. § 2244(d)(1)(A), excluding any period of time while "a properly filed application for State post-conviction or

other collateral review ... is pending." *Id.* § 2244(d)(2). Under the law of this Circuit, however, courts possess the inherent power to equitably toll AEDPA's one-year limitation period where certain conditions exist. *See, e.g., Belt v. Burge,* 490 F.3d 201, 205 (2d Cir.2007) ("[I]n rare and exceptional circumstances a petitioner may invoke the courts' power to equitably toll the limitations period." (citation omitted)). Williams's petition became final for AEDPA purposes no later than February 2005, and Williams does not contest that his § 2254 petition is untimely. Williams instead relies upon the proposition that there is an equitable or constitutional exception to AEDPA's statute of limitations where a petitioner is actually innocent of conduct giving rise to a sentencing enhancement. Williams relies upon *Spence v. Superintendent, Great Meadow Correctional Facility,* 219 F.3d 162 (2d Cir.2000), a case in which the Court of Appeals held that a procedural default may be excused when a defendant contesting a sentence enhancement can show "by clear and convincing evidence ... that he is actually innocent of the act on which his harsher sentence was based." *Id.* at 172.

**\*3** The holding in *Spence* did not expressly contemplate statutes of limitations, and the Second Circuit has "specifically reserved the question of whether a claim of actual innocence based on newly discovered evidence constitutes an extraordinary circumstance that merits equitable tolling ... as well as the question of whether the Constitution would require equitable tolling for actual innocence." *Doe v. Menefee,* 391 F.3d 147, 160 (2d Cir.2004). The Second Circuit stated that it will consider this question "in a proper case," *id.* at 174, but suggests that in order to take advantage of the actual innocence exception, "[t]he petitioner must support his claim 'with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial.' " *Id.* at 161 (quoting *Schlup v. Delo,* 513 U.S. 298, 324 (1995)).

Whatever the exact contours of the "actual innocence" exception may be-and the Report analyzes this unsettled question of law in admirable detail-it is clear that Williams has not succeeded in demonstrating that tolling of the one-year limitations period is merited. Williams's claim that he was "actually innocent" of being a persistent violent felony offender has already been adjudicated through state post-conviction collateral proceedings, and the court found as a matter of historical fact that Williams was

convicted under NYPL § 265.02(4) rather than under NYPL § 265.02(1). AEDPA instructs that state court factual findings "shall be presumed to be correct" on federal habeas review and provides that the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Richard S. v. Carpinello,* 589 F.3d 75, 80-81 (2d Cir.2009) (discussing the standard of review under AEDPA where a state court has already adjudicated the merits of a petitioner's claim).

Williams has not met this burden. The evidence adduced by Williams in his petition solely concerns certain alleged procedural irregularities during his 1987 sentencing and inconsistencies within post-conviction recordkeeping, none of which casts any doubt on Williams's underlying guilt. In particular, Williams's contention that "had [the 2006 Certificate] been presented at the original sentencing hearing [in 1998], petitioner would not have been sentenced as a career offender" is unpersuasive given that the sentencing judge did not base the sentence enhancement upon secondary records alone, but rather, upon her independent review of the minutes of the 1987 plea and sentencing proceedings.[6] Indeed, the evidence before the 1998 sentencing court-evidence that Williams does not challenge-demonstrated that Williams had possessed an unlicensed, loaded weapon in a place other than his home or business in violation of NYPL § 265.02(4), and moreover, that the indictment related to the 1987 conviction had specifically charged him under that subsection. Thus, Williams has failed to meet his burden of demonstrating by clear and convincing evidence that he is actually innocent of the 1987 predicate violent felony offense. Moreover, he has also failed to show that his claim of actual innocence is based on newly discovered evidence.

6    After Williams raised questions about his 1987 conviction during the first sentencing hearing, the sentencing was adjourned so that the court could obtain the minutes of the 1987 plea.

*CONCLUSION*

**\*4** Finding no clear error in Judge Dolinger's Report, the Report is adopted. The petition is denied, and the respondent's April 21, 2009 motion to dismiss the petition is denied as moot. The parties' failure to file written

objections precludes appellate review of this decision. *See Caidor v. Onondaga County,* 517 F.3d 601, 604 (2d Cir.2008). The Clerk of Court shall close the case.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 850182

---

**End of Document**                    © 2017 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 796276
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Tyrone NELSON, Petitioner,
v.
People of NEW YORK, Respondent.

No. 10 Civ. 9021(LTS)(HBP).
|
March 5, 2013.

*OPINION AND ORDER*

PITMAN, United States Magistrate Judge.

**\*1** By notice of motion dated February 27, 2012 (Docket Item 17), petitioner moves to add to the record certain materials, which he describes as "discovery exhibits." For the reasons set forth below, the motion is granted in part and denied in part.

This is a habeas corpus proceeding in which petitioner seeks to challenge a judgment of conviction entered on March 5, 2008 after a jury trial, by the Supreme Court of the State of New York for New York County (Stone, J.) for three counts of aggravated criminal contempt and one count of criminal mischief in the fourth degree, in violation of New York Penal Law Sections 215.52(1) and 145.00(1), respectively. The convictions arise out of several altercations petitioner had with his former girl-friend, Alicia Mendez–Vaz, including at least one assault in which petitioner inflicted injuries on Ms. Mendez–Vaz that were so serious that she was required to undergo reconstructive surgery on her eye. The altercations occurred while an order of protection was in force against petitioner, requiring him to refrain from contact with Mendez–Vaz. The petition asserts five claims: (1) petitioner was deprived of his right to counsel when the Trial Court failed to conduct any inquiry of petitioner, misconstrued his complaints about his counsel as a request to proceed *pro se* and refused to appoint new counsel for petitioner; (2) petitioner's double jeopardy rights were violated by the prosecution's initiation of grand jury proceedings after initially deciding to proceed by way of information; (3) the prosecution offered evidence of previously precluded bad acts; (4) petitioner's sentence

violated due process and was an abuse of discretion in view of the Trial Court's alleged earlier promise to sentence petitioner to a maximum of six to twelve years and (5) petitioner's constitutional speedy trial rights were violated.

The subject of petitioner's present motion is a mixture of documents which appear to relate to petitioner's trial and certain post-trial proceedings. Respondent states that, with two exceptions discussed in more detail below, "[t]o the extent that the records submitted by petitioner were before the state court, respondent has no objection to the Court's consideration of them" (Declaration of Assistant Attorney General Lisa E. Fleischmann, Esq., dated May 2, 2012 (Docket Item 20) ("Fleischmann Decl."), at ¶ 2). Unfortunately, respondent does not inform me to what extent the materials submitted by petitioner were before the Trial Court. Thus, respondent does not really provide much help. Accordingly, except for the two specific items discussed below, respondent's objections are waived, and the material submitted by petitioner will be made part of the record.

The first specific item to which respondent objects is Ms. Mendez–Vaz's criminal record, which was apparently disclosed to petitioner before she testified. Respondent claims that this item is irrelevant and "violates the victims's privacy" (Fleischmann Decl. ¶ 2). The document is irrelevant to petitioner's claims. It does not, however, violate any privacy right that Ms. Mendez–Vaz enjoys. Adult convictions are matters of public record. I am not aware of any principle of law (and respondent cites none) that affords a convicted individual a right to keep the conviction secret. Because the document is irrelevant, I shall disregard it. There is no reason to seal it or to have it physically removed from the record in this proceeding, as respondent requests.

**\*2** The second specific item to which respondent objects is a transcript of certain grand jury testimony. It appears that this material was produced to petitioner during his trial pursuant to *People v. Rosario,* 9 N.Y.2d 286, 173 N.E.2d 881, 213 N.Y.S.2d 448 (1961) and N.Y.Crim. Proc. Law Section 240.45. Respondent argues that because this material is made secret by statute, N.Y.Crim. Proc. L. § 190.25(4)(a), it should either be sealed or physically removed from the record. In his reply, petitioner argues that the grand jury minutes are relevant

to his contention that there were irregularities before the grand jury.

Assuming without deciding that the petition can be read to assert irregularities before the grand jury,[1] such a claim cannot provide a basis for relief. It is fundamental that in a federal habeas corpus proceeding, a petitioner can only assert rights protected by the United States Constitution or other federal law; violations of rights afforded solely by state law are not cognizable in a federal habeas proceeding. *Estelle v. McGuire,* 502 U.S. 62, 67–68 (1991). A state criminal defendant has no federal right to have felony charges against him presented to a grand jury. *Alexander v. Louisiana,* 405 U.S. 625, 633 (1972); *Hurtado v. California,* 110 U.S. 516, 538 (1884); *LanFranco v. Murray,* 313 F.3d 112, 118 (2d Cir.2002). In addition, because New York State law, and not federal law, prescribes how state grand jury proceedings are to be conducted, any claimed irregularity in state grand jury proceedings is necessarily a state law claim and cannot be a basis for habeas corpus relief.

I note that petitioner's motion (Docket Item 17) contains a section entitled "Grounds for Dismissal" in which petitioner lists nine "points," which are unsupported by argument or explanation. To the extent these points might be read as asserting new grounds for habeas corpus relief, I disregard them as an improper attempt to amend the petition.

While New York's constitution creates a right to indictment by a grand jury for felony charges, state law governs how these proceedings are to be conducted and creates the remedies for any procedural violations. Thus, any alleged impropriety in petitioner's grand-jury proceeding arises out of state law and cannot form the basis for federal habeas relief. *See, e.g., Hutchins v. Herbert,* 260 F.Supp.2d 571, 577 (W.D.N.Y.2003) (holding that petitioner's grand jury claim was purely a matter of state law and thus did not present a cognizable

federal habeas claim); *Gibbs v. New York,* 2002 WL 31812682, *4 (S.D.N.Y. Dec. 12, 2002) (same).
*Harris v. Hulihan,* 11 Civ. 3019(RA)(MHD), 2012 WL 5265624 at *19 (S.D.N.Y. Aug. 8, 2012) (Report & Recommendation) (Dolinger, M.J .). Finally, even if there were irregularities in the state grand jury proceedings, those irregularities are harmless given the trial jury's finding that petitioner is guilty. *Lopez v. Riley,* 865 F .2d 30, 32 (2d Cir.1989) ("If federal grand jury rights are not cognizable on direct appeal where rendered harmless by a petit jury, similar claims concerning a state grand jury proceeding are a *fortiori* foreclosed in a collateral attack brought in a federal court."), *citing United States v. Mechanik,* 475 U.S. 66, 72–73 (1986).

Thus, if petitioner has any grand jury claim, it cannot be the basis for habeas corpus relief, and respondent is, therefore, correct that the grand jury minutes are irrelevant to the disposition of the petition. Because state grand jury material retains its confidential nature notwithstanding a disclosure at a criminal trial, *Rechtschaffer v. City of N.Y.,* 05 Civ. 9930(RJS)(JCF), 2009 WL 773351 at *3 (S.D.N.Y. Mar. 18, 2009) (Francis, M.J.); *Turturro v. City of N.Y.,* 33 Misc.3d 454, 455–56, 460–61, 925 N.Y.S.2d 808, 810, 813–14 (Sup.Ct. Kings Co.2011), the Clerk of the Court is directed to remove the grand jury minutes from Docket Item 17 and to file them under seal.

**\*3**  Accordingly, for all the foregoing reasons, petitioner's motion to add certain documents to the record is granted except with respect to Ms. Mendez–Vaz's criminal record and the grand jury minutes. The Clerk of the Court shall remove the grand jury minutes from Docket Item 17 and file them separately, under seal.

SO ORDERED.

### All Citations

Not Reported in F.Supp.2d, 2013 WL 796276

2011 WL 4592041
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Muhammad RIVERS, Petitioner,
v.
Joseph J. COSTELLO, Respondent.

Civ. No. 9:08–CV–0107 (TJM/RFT).
|
Sept. 9, 2011.

**Attorneys and Law Firms**

Muhammad Rivers Binghamton, NY, pro se.

Hon. Eric T. Schneiderman, New York State Attorney
General, Alyson J. Gill, Esq., Assistant Attorney General,
of Counsel, New York, NY, for Respondent.

***REPORT–RECOMMENDATION and ORDER***

RANDOLPH F. TREECE, United States Magistrate
Judge.

**\*1** Petitioner Muhammad Rivers, acting *pro se,*
commences this action seeking *habeas corpus* relief
pursuant to 28 U.S.C. § 2254. Rivers asserts the following
grounds in support of his Petition: (1) prosecutorial
misconduct from failing to disclose *Brady* material and
from submitting knowingly false evidence before the
grand jury; (2) amendments to the indictment rendered it
unconstitutionally insufficient; (3) guilty plea was invalid
because of Petitioner's incompetence; and (4) ineffective
assistance of counsel. Dkt. No. 1, Pet. For the reasons set
forth below, this Court recommends that Rivers's Petition
be **denied.**

## I. FACTUAL BACKGROUND
## AND PROCEDURAL HISTORY

In December 2002, M.T., [1] who was then seven years
old, told a school teacher that Petitioner, her stepfather,
had sexual contact with her on numerous occasions.
*See* Dkt. No. 17–11, State Court R. [hereinafter "R."],
Pet'r's App. for Leave to Appeal, at p. 1 (reproduced and

attached to Dkt. No. 1, Pet.). M.T. was interviewed by the
Department of Social Services Child Protective Services
and the Broome County District Attorney's Office. *Id.* She
was also examined by the Binghamton Police Department
and a nurse practitioner who found injuries that were
consistent with sexual abuse. *See* Pet., Ex. B, Binghamton
Police Investigative Report.

[1]   Because Petitioner was convicted of a sex offense and
      included the name of his minor victim in his Petition,
      this Court directed the Clerk of the Court to seal the
      Petition so as to maintain the confidentiality of the
      victim. Text Order, dated Jan. 31, 2008. To further
      preserve confidentiality, we now only refer to the
      victim by her initials.

Based on these facts, on July 16, 2004, a grand jury
charged Petitioner with a Course of Sexual Conduct
Against a Child in the First Degree (N.Y. PENAL LAW §
130.75) for engaging in two or more acts of sexual conduct,
including at least one act of sexual intercourse, with M.T.
during the Fall of 2001 through the Spring of 2002. Dkt.
No. 17–4, R., Ex. C, Indictment, at p. 3. Petitioner was
arraigned before the New York State Supreme Court,
Broome County, on July 28, 2004, where a plea of not
guilty was entered on his behalf. Dkt. No. 17–13, [2] R.,
Arraignment Tr., dated July 28, 2004, at pp. 1–4.

[2]   The record docketed at 17–13 includes the entire
      collection of transcripts of state court proceedings.
      The transcripts appear, in order, as the following:
      Arraignment Tr., dated July 28, 2004; Appearance
      Tr., dated Aug. 26, 2004; Suppression Hr'g Tr., dated
      Jan. 5, 2005; Mot. Hr'g Tr., dated Apr. 14, 2005; Plea
      Hr'g Tr., dated Apr. 18, 2005; Appearance Tr., dated
      June 17, 2005; and Sentencing Tr., dated June 23,
      2005. In the interest of clarity, this Court will refer to
      each transcript docketed here individually.

On April 18, 2005, the day the jury trial was set to
commence, the Petitioner, accompanied by his attorney,
D. Edwin Lyons, Esq., met with the prosecution and
informed the court that the parties negotiated a plea. Dkt.
No. 17–13, R., Plea Hr'g Tr., dated Apr. 18, 2005, at pp.
3–6. Pursuant to his guilty plea, the trial court entered
a judgment of conviction against Petitioner to the lesser
charge of a Course of Sexual Conduct Against a Child in
the Second Degree (N.Y. PENAL LAW § 130.80). *Id.* at
p. 6. On June 23, 2005, Petitioner was sentenced to two
years imprisonment, the minimum determinate sentence
associated with this offense, followed by two years of post-

release supervision. *See* Dkt. No. 17–13, R ., Sentencing Tr., dated June 23, 2005, at pp. 2–3; *People v. Rivers,* 37 A.D.3d 908, 829 N.Y.S.2d 274, 274–75 (N.Y.App. Div., 3d Dep't 2007).

On July 12, 2005, Petitioner filed a direct appeal in the New York State Appellate Division, Third Judicial Department. *See* Dkt. No. 17–2, R., Ex. A, Notice of Appeal, at p. A1. Contemporaneously, Petitioner's assigned counsel, Alexander W. Bloomstein, Esq., filed a brief with the Appellate Division asking for permission to withdraw from his representation because Petitioner's case presented "no meritorious issues that could be raised on appeal." Dkt. No. 17–2, R., Ex. A, Appellant Counsel's Br., at p. 8. On August 9, 2006, the prosecution filed a letter in response that agreed with Petitioner's counsel's statement of facts and conclusion that the appeal was frivolous. Dkt. No. 17–3, R., Ex. B.

**\*2** By a decision and order, dated February 8, 2007, the Appellate Division affirmed the trial court's judgment of conviction against Petitioner and granted Petitioner's counsel's leave to withdraw from representation. *People v. Rivers,* 829 N.Y.S.2d at 275; Dkt. No. 17–5, R., Ex. D. The court stated that, based on their review of the record, Petitioner "entered a knowing, voluntary and intelligent guilty plea and was sentenced in accordance with the plea agreement." *People v. Rivers,* 829 N.Y.S.2d at 275. Petitioner's *pro se* application to the New York Court of Appeals for leave to appeal the Appellate Division's determination was denied on July 3, 2007. Dkt. No. 17–6, R., Ex. E.

On July 19, 2007, Petitioner moved to vacate the judgment of conviction, pursuant to New York Criminal Procedure Law ("C.P.L") § 440.10. Dkt. No. 17–7, R., Ex. F. Specifically, he claimed that the prosecution withheld favorable evidence in violation of *Brady* [3] and submitted knowingly false and insufficient evidence to the grand jury; that the prosecution's amendment to the indictment made it defective; that his plea of guilty was not voluntary due to mental health issues; and that his defense counsel provided ineffective representation. *See id.*

[3] *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In *Brady,* the Supreme Court held that the "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt

or to punishment, irrespective of the good faith of the prosecution." *Id.* at 87.

On September 25, 2007, the county court denied Petitioner's motion. Dkt. No. 17–10, R., Ex. I, Order on 440 Mot., dated Sept. 25, 2007. Contrary to Petitioner's assertions, the court found that Petitioner's trial counsel was not ineffective, but rather made appropriate demands for discovery and a bill of particulars; filed pre-trial motions to dismiss the indictment, suppress certain evidence, and compel disclosure; and secured for Petitioner "a favorable disposition, whereby the [Petitioner] not only was permitted to plead guilty to a lesser charge, but obtain a sentence commitment less than he could have had upon a conviction to the crime as charge[d][ ]in the indictment." *Id.* at pp. 1–2. Furthermore, the court found that Petitioner's "mental health issues," including his claim of post-traumatic stress syndrome, were revealed in the pre-sentence investigation report and that there was "nothing in the record or in the pre-sentence investigation [that] suggests [Petitioner] had any difficulty communicating with counsel or in understanding the proceedings. Nothing in the record suggests anything but that the guilty plea was knowingly, intelligently and voluntarily entered." *Id.* at p. 2. Lastly, with regard to Petitioner's remaining claims addressing the purported prosecutorial misconduct, including amendments to the indictment, the court declared that Petitioner's motion "should be summarily denied.... The [Petitioner]'s assertions in his affidavit in support of his motion are merely conclusory statements; no new or additional facts outside the record are alleged in support of his claims." *Id.* (citing C.P.L §§ 440.10(2)). Petitioner's application for leave to appeal to the Appellate Division was denied on January 14, 2008. Dkt. No. 15–2, Resp't Mem. of Law, at p. 6 & 8; *see also generally* Pet. [4]

[4] In their Memorandum of Law opposing Rivers's Petition for *habeas* relief, Respondent states that the Appellate Division's denial of Petitioner's application for leave to appeal is included in the state court records as Exhibit K. However, Exhibit K has not been included in the record provided to this Court. *See generally* Dkt. No. 17. Because the averment that Petitioner did in fact seek leave to appeal and that the request was denied is not disputed, and because there exists no indication to the contrary in the record, this Court accepts Respondent's and Petitioner's assertion.

**\*3** On January 24, 2008, Rivers filed the instant *Habeas Corpus* Petition pursuant to 28 U.S.C. § 2254. Respondent concedes this Petition has been timely made. Resp't Mem. of Law at p. 7.

## II. DISCUSSION

### A. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (1996) ("AEDPA"), a federal court may not grant *habeas* relief to a state prisoner on a claim unless the state court adjudicated the merits of the claim and such adjudication either

1) resulted in a decision that was contrary to, or involved an unreasonable application, of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Hawkins v. Costello,* 460 F.3d 238, 242 (2d Cir.2006).

The petitioner bears the burden of proving by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Jones v. Vacco,* 126 F.3d 408, 415 (2d Cir.1997); *Rivera v. New York,* 2003 WL 22234679, at \*3 (S.D.N.Y. Aug. 28, 2003); *see also Estelle v. McGuire,* 502 U.S. 62, 68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("[F]ederal habeas corpus relief does not lie for errors of state law."). The AEDPA also requires that "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also DeBerry v. Portuondo,* 403 F.3d 57, 66 (2d Cir.2005); *Boyette v. LeFevre,* 246 F.3d 76, 88 (2d Cir.2001) (quoting § 2254(e)(1)) (internal quotations omitted).

The Second Circuit has provided additional guidance concerning application of this test, noting that:

[u]nder AEDPA, we ask three questions to determine whether a federal court may grant habeas relief: 1) Was the principle of Supreme Court case law relied upon in the habeas petition "clearly established" when the state court ruled? 2) If so, was the state court's decision "contrary to" that established Supreme Court precedent? 3) If not, did the state court's decision constitute an "unreasonable application" of that principle?

*Williams v. Artuz,* 237 F.3d 147, 152 (2d Cir.2001) (citing *Williams* and *Francis S. v. Stone,* 221 F.3d 100, 108–09 (2d Cir.2000)).

### B. In Custody Requirement

According to the New York State Department of Corrections and Community Supervision ("DOCCS") website, Rivers was released from confinement on July 15, 2008. *See* New York State DOCCS, Inmate Population Information Search, *available at* http://nysdocslookup .docs.state.ny.us (last visited May 6, 2011). Rivers's current status as released from incarceration, however, does not deprive this Court of jurisdiction to entertain his Petition.

**\*4** The determining consideration for evaluating whether a petitioner meets the "in custody" requirement of the writ of *habeas corpus,* pursuant to 28 U.S.C. § 2254(a), is the petitioner's status on the date his petition was filed. *Spencer v. Kemna,* 523 U.S. 1, 7, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998). There is no question that Rivers meets the in custody requirement. He filed his Petition for *habeas* relief on January 24, 2008, while incarcerated at the Mid–State Correctional Facility. He was therefore in prison "at the time the [P]etition was filed, which is all the 'in custody' provision of 28 U.S.C. § 2254 requires." *Id.*

A *habeas* petition may be moot, however, when a *habeas* petitioner has been released from custody after filing a petition. The relevant inquiry becomes whether a case or controversy under Article III, § 2 of the U.S. Constitution is still presented. A *habeas* petition challenging a criminal

conviction "is not necessarily mooted when the petitioner is released from prison, as collateral consequences of that conviction may still impinge on the petitioner post-release, and therefore a case or controversy may continue to exist." *Perez v. Greiner,* 296 F.3d 123, 125 (2d Cir.2002) (citing *Pollard v. United States,* 353 U.S. 354, 358 (1957)). When a term of imprisonment has expired, "some concrete and continuing injury other than the now-ended incarceration or parole—some collateral consequence of the conviction—must exist if the suit is to be maintained." *Spencer v. Kemma,* 523 U.S. at 7.

Though Petitioner completed his sentence, "[t]here remains a live case or controversy due to the collateral consequences that attach to criminal conviction post-release." *United States v. Becker,* 502 F.3d 122, 124 n. 1 (2d Cir.2007) (citing *Perez v. Greiner,* 296 F.3d at 125). In *Sibron v. New York,* the Supreme Court, noting the various ancillary effects accompanying a criminal conviction, such as deportation, inability to become a citizen, impeachment evidence in future criminal trials, and increased future prison sentences, promulgated a presumption that collateral consequences attach to criminal convictions post-release. 392 U.S. 40, 54–56, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). After *Sibron,* a *habeas* petition challenging a criminal conviction is rendered moot by a release from imprisonment "only if it is shown that there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction." *Id.* at 57. Nothing in the record or submissions before this Court indicates that there will be no possibility of collateral legal consequences imposed on Petitioner from his conviction of a Course of Sexual Conduct Against a Child in the Second Degree. [5]

[5]    Rather, the record reveals that an order of protection against Petitioner was issued during Sentencing, directing him to "have absolutely no contact whatsoever with the [victim.]" Sentencing Tr. at p. 3.

Thus, because Rivers was incarcerated in Mid–State Correctional Facility when he filed his Petition, he fulfills the statutory "in custody" requirement, and because, upon information and belief, collateral consequences still exist from Rivers's criminal conviction, his Petition is not rendered moot by his release from custody.

### C. Rivers's Guilty Plea

#### 1. *Validity of the Plea*

**\*5** Petitioner claims that he was incompetent to enter a valid plea of guilty. Specifically, he alleges that he "lacked the ability to accept the negotiated [sic] disposition due to a Post Tramatic [sic] Stress disorder and new medication that was being administerd [sic] to him." Pet. at p. 11.

When Petitioner raised this claim again in his 440 motion to vacate the trial court's judgment, the Broome County court declared that "[Rivers's] 'mental health issues' ... were revealed in the pre-sentence investigation report, indicating [Petitioner]'s diagnosis of post-traumatic stress syndrome stemming from a 1993 shooting incident.... Nothing in the record suggests anything but that the guilty plea was knowingly, intelligently and voluntarily entered." Dkt. No. 17–10, R., Ex. I, Order on 440 Mot., dated Sept. 25, 2007, at p. 2. [6] In accord with the AEDPA, we must now determine whether that conclusion constituted an unreasonable application of established federal law.

[6]    As the Appellate Division denied Petitioner's application for leave to appeal the county court's denial of his 440 motion to vacate judgment, *see supra* Part I & note 4, the county court's decision represents the highest state court determination of these factual issues.

A guilty plea must represent "a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). Here, the trial court's conclusion that Petitioner's guilty plea was "knowingly, intelligently and voluntarily entered" is supported by the record. A review of the transcript from the plea hearing reveals that Petitioner was informed and aware of the consequences of his guilty plea. *See* Dkt. No. 17–13, R., Plea Hr'g Tr., dated Apr. 18, 2005. Petitioner told the court that he had sufficiently discussed the plea with his attorney, and understood that by pleading guilty and admitting he engaged in acts of sexual conduct with a seven-year-old female child he was giving up his right to a jury trial, to confront and cross-examine witnesses, and to offer any defense. *Id.* at pp. 3–4. The court asked Petitioner a number of questions to ascertain if his plea

was voluntary or was instead the result of duress or coercion, to which Petitioner, who was under oath and represented by counsel, replied that his plea was indeed voluntarily made. *Id.* at pp. 4–6.

Petitioner's unsupported allegation that he was incompetent to enter a guilty plea is not sufficient to warrant *habeas* relief. A criminal defendant's self-inculpatory "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison,* 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977). Accordingly, such statements "are generally treated as conclusive in the face of the defendant's later attempt to contradict them." *Adames v. United States,* 171 F.3d 728, 732 (2d Cir.1999) (citations omitted). Petitioner has not provided evidence that would justify overlooking his statements under oath that he was choosing to plead guilty of his own accord.

Therefore, after a thorough review of the record, we cannot conclude that Rivers's guilty plea violated Petitioner's constitutional rights. The state court's determination of the claim was not an unreasonable application of established federal law, and we recommend Petitioner's claim be **denied.**

### 2. *Ineffective Assistance of Counsel*

**\*6** Petitioner also complains that he received ineffective assistance from his trial counsel. Pet. at p. 12 (cont.). Specifically, Rivers claims that his counsel failed to file appropriate pre-trial motions and improperly pressured him to accept a plea deal. *Id.*

The Broome County court addressed this claim on the merits, finding that, "[c]ontrary to [Petitioner]'s assertions, counsel for the defendant filed an omnibus motion, including, *inter alia,* a motion to dismiss the indictment pursuant to CPL § 210.30, motions to suppress certain evidence and to compel disclosure. [Counsel] had also made appropriate demands for discovery and for a bill of particulars." Order on 440 Mot. at p. 1. Further, defense counsel "secured for the defendant a favorable disposition, whereby the defendant not only was permitted to plead guilty to a lesser charge, but obtain a sentence commitment less than he could have had upon a conviction to the crime as charge[d][ ]in the indictment." *Id.* at p. 2. Thus, the county court denied Petitioner's claim

that his counsel was ineffective. In accordance with the AEDPA, this Court must decide whether that state court determination constituted an unreasonable application of clearly established federal law.

To establish ineffective assistance of counsel in violation of the Sixth Amendment, a *habeas* petitioner must show that: 1) his attorney's representation was deficient such that it fell below an objective standard of reasonableness measured by the prevailing professional norms; and 2) this deficient performance prejudiced his defense such that there is a reasonable probability that, but for counsel's unprofessional performance, the outcome of the proceeding would have been different. *Bell v. Cone,* 535 U.S. 685, 695, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (citing *Strickland v. Washington,* 466 U.S. 668, 688 & 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)); *see also Aeid v. Bennett,* 296 F.3d 58, 62–63 (2d Cir.2002); *Brown v. Artuz,* 124 F.3d 73, 79–80 (2d Cir.1997); *Rattray v. Brown,* 261 F.Supp.2d 149, 157 (E.D.N.Y.2003).[7] In determining the reasonableness of counsel's representation, courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound [legal] strategy.' " *Strickland v. Washington,* 466 U.S. at 689 (quoting *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)).

[7]   In *Williams v. Taylor,* the Supreme Court declared that "the rule set forth in *Strickland* qualifies as 'clearly established Federal law [.]' " 529 U.S. 362, 391, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *see also Sellan v. Kuhlman,* 261 F.3d 303, 309 (2d Cir.2001).

After reviewing the record before us, including the hearing transcripts in their entirety, this Court agrees with the county court that Rivers's defense counsel's representation did not amount to ineffective assistance of counsel. It is evident that Petitioner's counsel negotiated a favorable plea agreement for Petitioner, who was charged with a Class B felony carrying a maximum prison term of twenty-five years and a minimum sentence of five years imprisonment. *See* N.Y. PENAL LAW § 70.02(3)(a). Counsel effectively secured a plea offer where Petitioner was permitted to plead guilty to a Course of Sexual Conduct Against a Child in the Second Degree, instead of in the First Degree, whereas Petitioner would be given a two year prison sentence, which was "the

minimum determinate sentence for this offense." *See People v. Rivers,* 37 A.D.3d 908, 829 N.Y.S.2d 274, 274–75 (N.Y.App. Div., 3d Dep't 2007).

**\*7** Additionally, Petitioner points to meetings with his attorney where his counsel "stated summarily that regaurdless [sic] of the [P]etitioner['s] innocence if he went to trial he would lose and advised him of plea negeoation [sic]. Trail [sic] counsel had full knowledge of [P]etitioner['s] inabilaty [sic] to understand or rationalize but made no motion for a pycological [sic] exam of the [P]etitioner prior to acceptance of plea." Pet. at p. 12, 829 N.Y.S.2d 274 (cont.). These claims, however, as explained above, are belied by Petitioner's statements during the court's plea colloquy. Petitioner admitted his unequivocal guilt to the charge and stated his desire to plead guilty to the crime under his own volition. As already examined by this Court, there is nothing in the record to support anything but the conclusion that Petitioner's plea was knowing, voluntary, and intelligent, and consequently, that Petitioner's counsel performed laudably and effectively in securing Petitioner this plea agreement.

Therefore, we cannot conclude that Rivers's attorney's representation was objectively unreasonable. As such, we need not discuss *Strickland*'s second inquiry of whether the deficient performance actually prejudiced the Petitioner. Because, for the above reasons, the state court's determination of this claim was not an unreasonable application of established federal law, we recommend Petitioner's ineffective assistance of trial counsel claim be **denied.**

### D. Prosecutorial Misconduct

In his Petition, Rivers asserts two claims under the general umbrella of prosecutorial misconduct: 1) that the prosecutor violated the obligation pursuant to *Brady* by failing to disclose to defense counsel until sentencing a statement made by the victim's mother to the police; and 2) that the prosecutor knowingly submitted false testimony to the grand jury. Petitioner has waived both of these claims from federal *habeas* review by his guilty plea. In any event, they are without merit and not cognizable.

#### 1. *Waiver by Guilty Plea*

It is well-settled that a defendant's properly counseled plea of guilty admits all of the elements of a formal criminal charge and waives a multitude of federal constitutional rights. *See Tollett v. Henderson,* 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973). "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Id.; accord United States v. Coffin,* 76 F.3d 494, 497 (2d Cir.1996) ("A defendant who pleads guilty unconditionally while represented by counsel may not assert independent claims relating to events occurring prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [acceptable] standards.") (internal quotations omitted).

**\*8** As examined above, there is nothing in the record to indicate that Petitioner's decision in the instant case was anything but knowing, voluntarily, and intelligent. Petitioner did not suffer from ineffective assistance of counsel with regards to his guilty plea. Accordingly, we find Petitioner's complaints of prosecutorial impropriety, as they relate to proceedings prior to the guilty plea, are waived by his guilty plea. In any event, as noted below, Petitioner's claims of prosecutorial misconduct lack merit.

#### 2. *Petitioner's Brady Claim is Without Merit*

A *habeas* petitioner may be entitled to relief if he shows that the government violated his right to due process by failing to turn over exculpatory material evidence before trial. *Strickler v. Greene,* 527 U.S. 263, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999); *Giglio v. United States,* 405 U.S. 150, 153–54, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). To demonstrate a *Brady* violation, a *habeas* petitioner must establish that: (1) the evidence at issue was favorable to the accused, either because it was exculpatory or could have impeached a prosecution witness; (2) the evidence was suppressed by the prosecution, either willfully or inadvertently; and (3) prejudice ensued from the withholding. *See Moore v. Illinois,* 408 U.S. 786, 794–

95, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972); *see also Strickler v. Greene,* 527 U.S. at 281–82. Evidence is material only if there is a reasonable probability that disclosure of the evidence to the defense would have changed the result of the proceeding. *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.* at 682.

Neither the Second Circuit nor the Supreme Court has specified the timing of disclosure that *Brady* requires, but it is clearly established that "disclosure prior to trial is not mandated." *Leka v. Portuondo,* 257 F.3d 89, 100 (2d Cir.2001) ("It is not feasible or desirable to specify the extent or timing of disclosure *Brady* and its progeny require, except in terms of the sufficiency, under the circumstances, of the defense's opportunity to use the evidence when disclosure is made.") (citations omitted). All that is required by Supreme Court and Second Circuit precedent is that *Brady* material be disclosed "in time for its effective use at trial." *United States v. Gil,* 297 F.3d 93, 105 (2d Cir.2002) (quoting *United States v. Coppa,* 267 F.3d 132, 142 (2d Cir.2001)). Even assuming, *arguendo,* that the evidence in question was exculpatory, Petitioner's guilty plea negated the need for the scheduled jury trial. Therefore, the prosecution did not "suppress" evidence pursuant to *Brady,* as the Petitioner's trial never occurred as a result of his plea of guilty.

Furthermore, Petitioner specifically complains that a statement from his wife, M. T.'s mother, to the police was not made available until the pre-sentence report was produced. Pet. at p. 6. Petitioner does not identify what this purported statement was, nor does he elaborate how it constituted *Brady* material. However, granting *pro se* litigants the leniency afforded in the Second Circuit, *see Pabon v. Wright,* 459 F.3d 241, 248 (2d Cir.2006) ("We construe complaints filed by *pro se* litigants liberally and interpret them to raise the strongest arguments that they suggest."), this Court turned to Petitioner's 440 motion seeking to vacate the judgment of the trial court in an attempt to ascertain the identity and content of the alleged exculpatory statement. While it is not apparent from his motion what the statement was, Petitioner did reference statements made in an interview the police had with M.T.'s mother. In the interview, she stated that she did not believe her husband sexually abused her daughter, proffered an alternative explanation that M.T. was lying, and stated that during the past eight

years she had been with Petitioner she would not allow Petitioner to be alone with her children, but that she could not explain to the interviewing officers why. *See* Pet., Ex. B, Binghamton Police Department Report, undated. To be sure, it is unclear how this evidence would constitute exculpatory material under *Brady* inasmuch as these statements are conclusory rather than factual. Accordingly, Petitioner has failed to demonstrate that the prosecutor "suppressed" evidence within the meaning of *Brady* and he therefore does not raise a valid claim.

### 3. *Petitioner's Claim Regarding Prosecution's Evidence Before the Grand Jury is Not Cognizable*

**\*9** Turning to Petitioner's claims regarding the evidence the prosecution presented before the grand jury, notwithstanding the waiver of such claim by virtue of the guilty plea, this claim does not present a federal question and is therefore not cognizable on federal *habeas* review.

Petitioner complains that the prosecution "allow[ed] testimony and/or evidence that [they] knew to be false to be presented to the grand jury." Pet. at p. 7. Petitioner does not elaborate on what exactly was presented to the grand jury that he claims was false in either his Petition or 440 motion. [8] Regardless, Petitioner's claim cannot serve as a basis for *habeas* relief. It is well settled that claims of deficiencies in state grand jury proceedings are not cognizable in federal *habeas corpus* proceedings. *See Lopez v. Riley,* 865 F.2d 30, 32 (2d Cir.1989) (citing *United States v. Mechanik,* 475 U.S. 66, 70, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986)). Indictment by a grand jury is a right granted by the New York State Constitution, *see* N.Y. CONST. ART. 1, § 6 (McKinney 2002), but there is no corresponding right to a grand jury in a state criminal prosecution to be found in the United States Constitution. *See Fields v. Soloff,* 920 F.2d 1114, 1118 (2d Cir.1990) (noting the Fifth Amendment right to an indictment by a grand jury does not apply to the states as it is not incorporated by the due process clause of the Fourteenth Amendment); *see also People v. Iannone,* 45 N.Y.2d 589, 412 N.Y.S.2d 110, 384 N.E.2d 656, 659 n. 3 (N.Y.1978) ("The right to indictment by a Grand Jury in New York is dependent solely upon our State Constitution, since the Grand Jury provision contained in the Fifth Amendment to the Federal Constitution is not applicable to the States.") (citing *Hurtado v. California,* 100 U.S. 516 (1884)). In view of this well-established

precedent, claims based on alleged defects in grand jury proceedings are not reviewable in a petition for federal *habeas* relief. Accordingly, Petitioner's claim herein is not cognizable on *habeas* review.

[8]     Instead of identifying what offensive statements were presented to the grand jury, the Petitioner in his 440 motion only states that "[t]he inspection of the Grand Jury minutes will reveal what evidence was presented to the Grand Jury." Dkt. No. 17–7, R., Ex. F, Pet. 440 Mot., at p. 4.

### E. Amendment to the Indictment

Rivers asserts in his Petition that the prosecution's amendment of the indictment rendered the instrument legally insufficient. Pet. at p. 9. Specifically, Petitioner claims that "[d]uring a Pretrial hearing held on April 14, 2005 the prosecution moved to strike stautory [sic] "and/or" language [.]" *Id.* [9] This claim, which appeared in Petitioner's 440 motion, was addressed succinctly by the Broome County court, citing C.P.L. § 440.10(2), and further citing C.P.L. §§ 440.30(4)(b) and (d) because Petitioner's "assertions in his affidavit in support of his motion are merely conclusory statements; no new or additional facts outside the record are alleged in support of his claims." Order on 440 Mot. at p. 2.

[9]     The indictment, which accused Petitioner of a Course of Sexual Conduct Against a Child in the First Degree, stated that Petitioner engaged in, "over a period of time not less than three months in duration ... two or more acts of sexual conduct, which includes at least one act of sexual intercourse, oral sexual conduct, anal sexual conduct or aggravated sexual conduct, with a child less than eleven years old." Dkt. No. 17–2, R., Ex. A, Indict., at p. A4. Upon demand, the prosecution provided a Bill of Particulars, stating specifics such as the exact location in the City of Binghamton where the crime allegedly occurred, as well as the approximate time period— between the Fall of 2001 and the Spring of 2002. Dkt. No. 17–2, R., Ex. A, Bill of Particulars, at pp. A31–A32. At a hearing held on April 14, 2005, the prosecution and trial court clarified the indictment by replacing every instance of "and/or" between "sexual intercourse and/or oral sexual conduct and/or anal sexual conduct" with "and" alone, thus alleging that all three forms of sexual conduct did in fact happen.

*See* Dkt. No. 17–13, R., Mot. Hr'g Tr., dated April 14, 2005, at pp. 10–21.

Petitioner's claim, however, like his claims of prosecutorial impropriety, is waived by his guilty plea. *See supra* Part II.D.1. Again, "[t]he settled rule is that a defendant who knowingly and voluntarily enters a guilty plea waives all nonjurisdictional defects in the prior proceedings." *Lebowitz v. United States,* 877 F.2d 207, 209 (2d Cir.1989). Rivers's knowing, intelligent, and voluntary plea of guilty to the charges in the indictment consequently bar him from now attacking his conviction by arguing that his indictment was legally insufficient, or that his attorney should have moved to dismiss the indictment. [10] *See Scott v. United States,* 2011 WL 115087, at *4 (E.D.N.Y. Jan.13, 2011) (citing *Lear v. Poole,* 711 F.Supp.2d 288, 298 (W.D.N.Y.2010) & *Schwartz v. Connell,* 2006 WL 3549660, at *4–5 (S.D.N.Y. Dec.6, 2006)).

[10]     Petitioner claimed in his 440 motion that his "counsel did not object to any of the defective motions filed[.]" Dkt. No. 17–7, R., Ex. F, Pet. 440 Mot., at p. 4. However, the county court noted that, "[c]ontrary to [Petitioner]'s assertions, counsel for [Petitioner] filed an omnibus motion, including, *inter alia,* a motion to dismiss the indictment pursuant to CPL § 210.30, motions to suppress certain evidence and to compel disclosure." Order on 440 Mot. at p. 1. A review of the record in its entirety clearly confirms the court's findings. *See* Dkt. No. 17–2, R., Ex. A, Appellant's Br. at p. 2 & Omnibus Mot. at pp. A16–A18.

**\*10** Alternatively, even if Petitioner's claim was not waived by his plea of guilty to the charges in the indictment, the claim is procedurally defaulted as it was decided by the county court on an independent and adequate state ground.

Federal *habeas* review of a state-court conviction is prohibited if a state court rested its judgment on a state law ground that is "independent of the federal question and adequate to support the judgment." *Coleman v. Thompson,* 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (citations omitted) (noting that federal court resolution of the federal issue would merely be advisory where the state judgment is supported by independent and adequate state grounds); *see also Harris v. Reed,* 489 U.S. 255, 261–62, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *Cotto v. Herbert,* 331 F.3d 217, 238 (2d Cir.2003); *Garcia v. Lewis,* 188 F.3d 71, 76 (2d Cir.1999); *Levine v. Comm'r of Corr. Servs.,* 44 F.3d 121, 126 (2d Cir.1995). "This

rule applies whether the state law ground is substantive or procedural." *Coleman v. Thompson,* 501 U.S. at 729 (citation omitted). The independent and adequate state ground doctrine is jurisdictional, thus, if the state court "explicitly invokes a state procedural bar rule as a separate basis for decision[,]" the federal court is precluded from considering the merits of the federal claim in a *habeas* petition. *Harris v. Reed,* 489 U.S. at 264 n. 10.

In the denial of Petitioner's 440 motion, the county court found Petitioner's claim should be summarily denied pursuant to C.P.L. § 440.10(2). [11] Furthermore, citing C.P.L. §§ 440.30(4)(b) and (d), the court found that Petitioner failed to support his claim with "allegations substantiating or tending to substantiate all the essential facts," or that these "allegations ... (i) [were] contradicted by a court record or other official document, and (ii) under these ... circumstances attending the case, there is no reasonable possibility that such allegation is true." By denying the claim on these bases, the court decided the claim on state procedural rules independent of any federal question. Furthermore, this procedural bar is adequate, for purposes of *habeas* review, as it is based on a rule that is " 'firmly established and regularly followed' by the state in question." *Garcia v. Lewis,* 188 F.3d at 77 (quoting *Ford v. Georgia,* 498 U.S. 411, 423–24, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991)). The denial of a claim under C.P.L. § 440.10(2) is firmly established and regularly followed, as shown by relevant case law. *See, e.g., Veras v. Strack,* 2000 WL 8249, at *1 (S.D.N.Y. Jan.4, 2000) (citing, *inter alia, Dorsey v. Irvin,* 56 F.3d 425 (2d Cir.1995)). Therefore, because the state law ground relied upon when deciding this claim was independent of the federal question and adequate to support the decision of the state court, Petitioner's challenge to the amendments to the indictment is procedurally barred in this Court.

[11]   C.P.L. § 440.10(2) details when the reviewing court must deny a motion to vacate a judgment, such as when "sufficient facts appear on the record ... to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, [but] no such appellate review or determination occurred owing to defendant's unjustifiable failure to take or perfect an appeal[.]" *See* C.P.L. § 440.10(2)(c).

When a claim in a federal *habeas* petition is procedurally defaulted, it cannot be heard by the federal reviewing court "unless the prisoner can demonstrate cause for the

default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." [12] *Coleman v. Thompson,* 501 U.S. at 750; *Ramirez v. Attorney Gen. of State of New York,* 280 F.3d 87, 94 (2d Cir.2001); *Fama v. Comm'r of Corr. Servs.,* 235 F.3d 804, 809 (2d Cir.2000) (citing *Coleman* ). To establish legal cause for his or her procedural default, a petitioner must show that some objective external factor impeded his or her ability to comply with New York's procedural rules. *Murray v. Carrier,* 477 U.S. 478, 488 (1986); *Restrepo v. Kelly,* 178 F.3d 634, 638 (2d Cir.1999). Examples of external factors include interference by officials, ineffective assistance of counsel, or that "the factual or legal basis for a claim was not reasonably available" at trial nor on direct appeal. *Murray v. Carrier,* 477 U.S. at 488.

[12]   This final exception, however, is intended for the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier,* 477 U.S. 478, 496 (1986); *see also Lebron v. Mann,* 40 F.3d 561, 564 (2d Cir.1994).

**\*11** Petitioner has not demonstrated legal cause sufficient to excuse the procedural default of his claim. As previously examined, Petitioner did not suffer ineffective assistance of counsel. Rivers has not alleged or stated any other facts that would support a finding of cause for his procedural default. Inasmuch as he cannot establish such cause, this Court need not decide whether he also suffered actual prejudice as to this claim because federal *habeas* relief on the basis of a procedurally defaulted claim is unavailable unless both cause and prejudice are demonstrated. *See, e.g., Stepney v. Lopes,* 760 F.2d 40, 45 (2d Cir.1985); *Pou v. Keane,* 977 F.Supp. 577, 581 (N.D.N.Y.1997) (Kahn, J.) (citing *Stepney* ). Moreover, Petitioner has not established that a fundamental miscarriage of justice would occur if the Court could not adjudicate his federal claims such that he is actually innocent of the crime he was convicted of.

Accordingly, because this claim was waived by Petitioner's guilty plea, and, alternatively, is procedurally defaulted and barred from federal review as previously decided on an independent and adequate state law ground, we recommend this claim be **denied.**

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED,** that the Petition for a Writ of *Habeas Corpus* (Dkt. No. 1) be **DENIED;** and it is further

**RECOMMENDED,** that because the Court finds Petitioner has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2), no certificate of appealability should be issued with respect to any of Petitioner's claims. *See* 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."); *see also Lucidore v. New York State Div. of Parole,* 209 F.3d 107, 112 (2d Cir.2000), *cert. denied* 531 U.S. 873, 121 S.Ct. 175, 148 L.Ed.2d 120 (2000); and it is further

**ORDERED,** that the Clerk of the Court serve a copy of this Report–Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. ***FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.*** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs. .,* 892 F.2d 15 (2d Cir.1989)); *see also* 28 U.S.C. § 636(b) (1); FED. R. CIV. P. 72 & 6(a).

### All Citations

Not Reported in F.Supp.2d, 2011 WL 4592041

---

**End of Document** © 2017 Thomson Reuters. No claim to original U.S. Government Works.

2007 WL 4198255
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Barnabas LOUIS, Petitioner,

v.

Brian FISCHER, Warden, Sing Sing
Correctional Facility, Respondent.

No. 04-CV-2887 (NGG)(KAM).
|
June 25, 2007.

**Attorneys and Law Firms**

Barnabas Louis, Ossining, NY, pro se.

Kings County District Attorneys Office, New York State
Attorney Generals Office, Tziyonah Miriam Langsam,
Office of the District Attorney, Brooklyn, NY, for
Respondent.

### *REPORT AND RECOMMENDATION*

MATSUMOTO, United States Magistrate Judge.

**\*1** *Pro se* petitioner **Barnabas Louis**[1] ("Louis" or
"petitioner") seeks a writ of habeas corpus, pursuant to 28
U.S.C. § 2254, from his December 18, 2000 conviction in
Supreme Court, Kings County, for Manslaughter in the
First Degree (N.Y. Penal Law § 125.20(1)), arising out of
an incident occurring during the early morning hours of
July 20, 1999, in which the victim, Fritzner Pierre-Louis
("Pierre-Louis" or the "deceased"), sustained multiple
injuries to the head and died five days later. Petitioner was
sentenced to a term of imprisonment of fifteen years and is
currently incarcerated pursuant to that sentence. By order
dated May 16, 2006, this matter was referred by United
States District Judge Nicholas G. Garaufis, pursuant
to 28 U.S.C. § 636(b)(1)(B), to the undersigned for a
report and recommendation on the instant petition. (*See*
docket no. 6.) For the following reasons, it is respectfully
recommended that Louis's petition be denied.

---

[1]     The names of witnesses who testified at trial have
        been marked in boldface and underlined in the first
        instance.

## I. BACKGROUND AND PROCEDURAL HISTORY

Petitioner's jury trial was held December 5-18, 2000
before Justice Matthew J. D'Emic in Supreme Court,
Kings County. (*See* docket no. 4, State Court Record,
Trial Transcript ("Tr.").) The Court here summarizes the
relevant facts presented at the trial.

### A. *The Prosecution's Case*

#### 1. The Incident

In July 1999, Fritzner Pierre-Louis was living in apartment
1F of 212 East 34th Street, Brooklyn, New York, along
with his siblings, **Marie Gay** and Patrick Gay. (Gay:
Tr. at 252-53.) Their mother, Lucienne Jonathas, was
visiting from Haiti and staying at the same apartment.
(*Id.*) At approximately 10:30 p.m. on July 19, 1999,
Marie Gay arrived home from classes at Medgar Evers
College. (*Id.* at 227-29.) Lucienne Jonathas was the only
person in the apartment when Marie Gay arrived. (*Id.*
at 230.) Marie Gay sat down at the kitchen table and
began doing her homework. (*Id.* at 231.) At approximately
11:30 p.m., **Frantz Eveillard** ("Eveillard"), Pierre-Louis's
brother, came to visit his mother. (Eveillard: Tr. at 24, 27.)
As Eveillard was leaving to return home, he saw Pierre-
Louis being dropped off by a friend. (*Id.* at 28.) After
entering the apartment, Pierre-Louis went to his bedroom.
Pierre-Louis later came back to the kitchen to get a drink
and take the garbage outside. (Gay: Tr. at 231-32.)

Marie Gay and **Jean Hercules** ("Hercules") testified for
the prosecution as eyewitnesses to the incident. Hercules
testified that in July 1999, he lived at 189 East 34th Street,
and that on the night of the incident he was sitting alone
playing the flute on the steps of a friend's building, three
houses down from 212 East 34th Street. (Hercules: Tr. at
308-11, 341-42, 354-55.)[2] Hercules saw Pierre-Louis and
a woman sitting in a car in front of 212 East 34th Street.
(*Id.* at 311-12.)

---

[2]     During grand jury testimony, Hercules testified,
        through an interpreter, that he was sitting outside
        of his own house, which is located at 189 East 34th
        St. (Hercules: Tr. at 329.) At trial, he testified, also
        through an interpreter, that although he lived at 189
        East 34th Street, he was sitting in front of his friend's

building, which is three houses down from 212 East 34th Street. (*Id.* at 352-53.)

After five minutes, petitioner, while driving a Jeep, hit the side of the car in which Pierre-Louis and the woman were sitting. (*Id.* at 312.) The woman in the car with Pierre-Louis was petitioner's wife, Nadine Cenescat ("Cenescat"). (Louis: Tr. at 471, 474-75.) Both petitioner and Cenescat were wearing Domino's Pizza uniforms. (Gay: Tr. at 240.) Petitioner exited his vehicle and began kicking the car in which Pierre-Louis and Cenescat were sitting. (Hercules: Tr. at 312-13.) Pierre-Louis got out of the car, followed by Cenescat. (*Id.* at 312.) Petitioner then said to Cenescat, "I'm going to stop you from acting like a whore." (*Id.* at 313.) Petitioner took a metal bar, approximately four to five feet in length, out of his vehicle and used it to hit Pierre-Louis twice in the head. (*Id.* at 313-15; Gay: Tr. at 241-44.) Hercules testified that Pierre-Louis was empty-handed at the time he was struck. (Hercules: Tr. at 321.)

**\*2** Gay testified that when Pierre-Louis did not return from taking out the trash, she became worried. (Gay: Tr. at 236-37.) She went to her living room window, and saw a man beating her brother, Pierre-Louis, with a long black pipe. (*Id.* at 236-43.) Gay saw Pierre-Louis crouch to the ground with his left knee down, while holding his hands over his face to protect himself. (Gay: Tr. at 241-42, 244.) She screamed and awoke her mother, who told her to call Eveillard. (*Id.* at 246.) Gay called Eveillard and the police. (*Id.* at 247.)

Hercules testified that after petitioner struck Pierre-Louis, Cenescat ran, and petitioner ran after her while still holding the metal bar. (*Id.* at 314-16.) Petitioner and Cenescat returned to the area after ten to twelve minutes; when he returned, petitioner no longer had the metal bar in his hands. (*Id.* at 316-17.) Petitioner tried to get into his car, and Hercules prevented him from doing so. (*Id.* at 317-19.)

A tape recording of two anonymous 911 calls received on July 20, 1999, from the location of East 34th Street and Linden Boulevard, was also admitted into evidence and played for the jury. (Tr. at 418-420.) Although the trial transcript does not contain the text of the recordings, the People's brief in opposition to petitioner's direct appeal provides a summary of the calls. (Docket no. 4, Ex. B, Respondent's Brief at 6-7.) The first call was received at approximately 1:21 a.m. from an unidentified male who

stated that someone had just hit a man with a bat and had then run after his girlfriend. (*Id.*) The second call, received approximately one minute later, was from an unidentified male who stated that: "Someone is dying, someone is bleeding outside. He hit the guy with the baseball bat. I was at the window and I saw it." (*Id.*) The second caller also stated "it's something like a pipe." (*Id.*)

At approximately 1:30 a.m., New York City Police Department ("NYPD") Officer ***John Chell***[3] ("Chell") and Sergeant John Walcott, responding to a radio call, arrived in an unmarked police car at East 34th Street, between Linden Boulevard and Church Avenue. (Chell: Tr. at 175, 178-79, 201-02; Hercules: Tr. at 348.) Officer Chell observed Pierre-Louis crouched in a "catcher's position" on the sidewalk. (Chell: Tr. at 180, 205-06.) Officer Chell attempted to speak to Pierre-Louis, but Pierre-Louis did not respond. (*Id.* at 181, 206.) Approximately one minute later, police officers ***Edward J. Mengani*** ("Officer Mengani") and James Dahl arrived at the same location. (Mengani: Tr. at 49-50, 84; Chell: Tr. at 193.) An ambulance arrived immediately after Officer Mengani, and emergency workers helped Pierre-Louis into the ambulance. (Mengani: Tr. at 52-53, 101-102; Gay: Tr. at 247.)

3      Officer Chell has since been promoted to the rank of Sergeant, and was addressed as such during petitioner's trial. (Chell: Tr. at 175.)

Officer Chell spoke to the crowd that had formed, and they pointed to petitioner. (Chell: Tr. at 181-82.) Officer Chell looked towards petitioner, who stated, "Yeah, I hit him." (*Id.* at 182.) Officer Chell told petitioner to turn around and put his hands behind his back, and thereafter placed petitioner in handcuffs. (*Id.* at 192-93.) Officer Mengani placed petitioner under arrest (*id.* at 193), searched him, and placed him inside a police car (Mengani: Tr. at 92-93).

**\*3** Frantz Eveillard testified that after receiving the call from Gay, he ran from his house, which was approximately five blocks away, to 212 East 34th Street. (Eveillard: Tr. at 28-29; Gay: Tr. at 247.) Eveillard found Pierre-Louis lying down inside the ambulance. (Eveillard: Tr. at 29.) Eveillard tried speaking to Pierre-Louis, but Pierre-Louis did not respond. (*Id.* at 30.) Eveillard then exited the ambulance and spoke to the police. (*Id.* at 31.) Eveillard saw a woman whom he later learned to be petitioner's wife, Nadine Cenescat, panicking in the

street. (*Id.* at 32-34.) Eveillard accompanied Pierre-Louis in the ambulance to Brookdale Hospital, where Pierre-Louis was examined by neurosurgeon **Dr. Roxanne Todor.** (Eveillard: Tr. at 34; Todor: Tr. at 390-91.)

### 2. Medical Testimony

Dr. Todor testified that when she first observed Pierre-Louis in the emergency room at Brookdale Hospital, Pierre-Louis was "in a coma, on a ventilator and only minimally responsive." (Todor: Tr. at 391.) Upon examining Pierre-Louis, Dr. Todor determined that Pierre-Louis had a minimal amount of swelling around his left eye, his left pupil was larger than his right pupil, and he was only minimally responsive to painful stimulus. (*Id.* at 391-92.) Dr. Todor also performed a CT scan of Pierre-Louis's skull, from which she determined that he suffered from an approximately ten-inch "major fracture, compound, which was the coronal suture, which is the fusion part of the front and back parts of [the] skull." (*Id*. at 393-95.) The fracture "ran the length of the whole suture." (*Id.* at 394-95.) Dr. Todor determined that Pierre-Louis also suffered from multiple fractures to the left side of his skull, in a manner resembling a "windshield that has been shattered." (*Id.* at 395.) Pierre-Louis also had a contusion on the left side of his brain. (*Id.* at 398.) Dr. Todor performed surgery on Pierre-Louis to remove the frontal temporal portion of the bone on the left side of his head to alleviate swelling of the brain, and to repair the temporal lobe that had ruptured. (*Id.* at 396-97.)

According to the emergency report, Pierre-Louis suffered a grand mal seizure after his arrival at the hospital. (*Id.* at 406, 411 .) Dr. Todor ruled out the possibility that this seizure would have caused a fracture to the coronal suture, and instead testified that she believed that the fracture caused Pierre-Louis to experience a seizure. (*Id.* at 412.)

Dr. Todor testified that Pierre-Louis died on July 25, 1999 from head injuries. (Todor: Tr. at 397-98.) She determined that Pierre-Louis's head injuries were caused by a minimum of two impacts to his head involving the use of "extreme force." (*Id.* at 398-99.) Dr. Todor testified that Pierre-Louis's head injuries could have been caused by a bar or pipe approximately three to five feet in length, and that a punch to the head could not have caused such injuries. (*Id.* at 400-01.) Moreover, while Dr. Todor testified that striking the head on pavement or sidewalk could result in a skull fracture, she stated that it would be "extremely, extremely unlikely" that Pierre-

Louis's head injuries were caused by striking his head on pavement or the sidewalk, given the location and extent of the fracture. (*Id.* at 407-09, 413.) Dr. Todor also ruled out the possibility that Pierre-Louis's head injuries could have been caused by a set of keys hitting him on the head because the "keys alone would not be hard enough to cause the type of injury, and ... with a key injury, there is usually laceration or tearing of the skin associated with keys hitting the forehead or the top of the head." (Tr. at 401-02.) Dr. Todor testified that Pierre-Louis did not have any lacerations on the face or scalp. (*Id.* at 402.)

### 3. Police Interview of Petitioner

**\*4** Officer Mengani drove petitioner to the 67th Precinct after his arrest and, upon arrival at approximately 2:00 a.m., took petitioner's photograph and obtained his pedigree information. (Mengani: Tr. at 55-56, 82, 95, 98.) Petitioner told Officer Mengani that he lived at 474 Brooklyn Avenue, in Kings County, was thirty-four years old, five feet ten inches in height, weighed 145 pounds and was originally from Haiti. (*Id.* at 82-83, 96-97.)

At some point following his arrival at the police precinct, petitioner complained to Officer Mengani of pain to the right side of his head. (*Id.* at 71, 98-99.) Officer Mengani testified that he offered petitioner medical assistance, but petitioner refused to go to the hospital. (*Id.* at 72, 102, 120.) Officer Mengani stated that he did not tell petitioner that his court appearance would be delayed if he went to the hospital (*id.* at 103), and that he did not see any cuts or bruises on petitioner (*id.* at 72, 120).

At about 7:00 a.m., Officer Mengani and Detective **Ronald Taylor** ("Detective Taylor") conducted an interview of petitioner. (Mengani: Tr. at 104; Taylor: Tr. at 139.) Officer Mengani testified that he advised petitioner of his *Miranda* rights in English in the presence of Detective Taylor, and that petitioner signed a *Miranda* waiver and agreed to speak with the police officers. (*Id.* at 65-71.) Although petitioner spoke English with an accent (*id.* at 97), petitioner responded to the officers' questions in English, and did not request an interpreter at any time during the interview (Taylor: Tr. at 147). Both officers stated that they understood the petitioner throughout the interview. (*Id.* at 136-37, 148; Mengani: Tr. at 67.) Officer Mengani and Detective Taylor explained to petitioner that Pierre-Louis was suffering from serious injuries and that petitioner could be facing a murder charge. (*Id.* at 113-14.)

According to Detective Taylor's testimony, petitioner stated in his interview that while driving on East 34th Street and Church Avenue, he saw his wife, Nadine Cenescat, sitting in her vehicle with Pierre-Louis. (Taylor: Tr. at 135.) Cenescat let Pierre-Louis out of the vehicle and attempted to drive away when she saw petitioner. (*Id.*) Petitioner then used his vehicle to block and prevent Cenescat from leaving, causing a "slight accident," and Cenescat attempted to exit her vehicle and flee. (*Id.* at 135-36.) Petitioner stated that when Cenescat exited her vehicle, petitioner also exited his vehicle and was immediately in his face. (*Id.* at 136, 148-49; Mengani: Tr. at 112-13.) Detective Taylor testified that petitioner claimed that he then punched Pierre-Louis in the face with his keys. (Taylor: Tr. at 136, 149, 157-58; *see also* Mengani: Tr. at 117, 128.) Although Detective Taylor was not certain whether petitioner stated that Pierre-Louis was knocked or fell onto the sidewalk during the altercation, Detective Taylor testified that it was possible that petitioner had so stated. (Taylor: Tr. at 149-150.)

 **\*5** The interview of petitioner lasted approximately 20 to 25 minutes. (*Id.* at 142-43.) Approximately 10 minutes after the interview, Detective Taylor memorialized his recollections of the interview in writing.[4] (Taylor: Tr. at 142-44; *see also* Mengani: Tr. at 71, 124.)

[4]   Although Detective Taylor's notes of his interview with petitioner were not admitted into evidence, they were used by Detective Taylor and Officer Mengani to refresh their recollections of the interview. Specifically, Officer Mengani used Detective Taylor's notes to refresh his memory on cross-examination and re-direct (Tr: 112, 116), and Detective Taylor used his notes to refresh his memory during his direct examination (Tr: 136).

### B. *The Petitioner's Case*
*Pierre Jean Widmarc, Luc Octavien, Jean Chery* and *Breus Eloge* testified as character witnesses on behalf of petitioner, stating that they knew petitioner to have a good reputation within the community. (Widmarc: Tr. at 426-29; Octavien: Tr. at 437; Chery: Tr. at 445, 449-50; Eloge: Tr. at 460, 462.) Widmarc, who knew petitioner from church and socialized with petitioner regularly, testified that petitioner had a reputation for peacefulness. (Widmarc: Tr. at 430-33.) Octavien testified that he considered petitioner to be his friend and that he cared about the outcome of the case. (Octavien: Tr.

at 438-40.) Chery knew petitioner through their church, and stated that he only spoke to petitioner regarding church matters but knew petitioner to have a reputation for peaceful, law abiding behavior. (Chery: Tr. at 445, 447.) Eloge stated that he only associated with petitioner at work but also knew petitioner to have a reputation for peaceful, law abiding behavior. (Eloge: Tr. at 461-62.)

Petitioner also testified on his own behalf, through a Creole interpreter. (Louis: Tr. at 463.) Petitioner testified that in July 1999, he was employed as a manager for Domino's Pizza, was in charge of approximately 14 employees, and participated in weekly meetings with other Domino's Pizza managers. (*Id.* at 464-65, 495, 499.) Petitioner had seen Pierre-Louis at one such meeting, but claimed that he had never seen Pierre-Louis and Nadine Cenescat together. (*Id.* at 502-04.)

Petitioner testified that on July 19, 1999, he worked from 5:00 p .m. until 1:00 a.m. on July 20, at the Domino's Pizza located at 1109 McDonald Avenue. (*Id.* at 466-67.) At some time between 9:30 p.m. and 10:00 p.m., Cenescat called petitioner and stated that she would pick up their children from the babysitter after work and buy milk. (*Id.* at 509-10.) Petitioner left work babysitter in a black Isuzu Trooper, while still wearing his Domino's Pizza uniform. (*Id.* at 468-69, 478.) Petitioner stated that while driving he saw a grey Toyota Camry that resembled the one belonging to his wife. (*Id.* at 471.) Although he did not see who was in the car, petitioner followed the Camry, because he thought that his wife was going to buy milk after picking up their children, and petitioner did not want to leave the children unattended in the car while Cenescat was at the store. (*Id.* at 471-73, 511-514.)

Petitioner testified that as he turned onto East 34th Street, he saw the Toyota Camry double-parked. Pierre-Louis was exiting from the passenger side of the vehicle, heading towards the sidewalk, and Cenescat was exiting the car as well. (*Id.* at 473-75.) Petitioner testified that while attempting to slow his car and roll down the window to speak with his wife, his foot skipped from the clutch pedal, causing his vehicle to collide with his wife's car. (*Id.* at 475, 518-19, 524-25.) Petitioner claimed that he looked into the Camry, saw that his children were not inside, and exited his car and walked to the sidewalk where his wife was standing with Pierre-Louis. (*Id.* at 476.) He asked his wife "Where are the kids," "Where are the meals you're supposed to buy?" and "Where [did] you come from

with that man?" (*Id.* at 476-77.) Petitioner stated that he was not angry when his wife did not respond to these questions. (*Id.* at 524.)

*6 Petitioner claimed that Pierre-Louis said to him, "I am the boyfriend of your mother," and that when petitioner told Pierre-Louis not to interrupt his conversation with his wife, Pierre-Louis cursed petitioner's mother. (*Id.* at 477.) Petitioner told Pierre-Louis not to disrespect his mother, and said "Open you [sic] big mouth. I'm going to have you eat your own teeth, swallow your own teeth." (*Id.* at 477-78.) Petitioner claimed that at that point, Pierre-Louis hit him on the right side of his head with his left hand and grabbed petitioner by his shirt. (*Id.* at 478, 483, 528, 530.) Petitioner claimed that he saw something hidden under Pierre-Louis's shirt, and that Pierre-Louis was reaching for it. (*Id.* at 478, 533-34.) Petitioner thought that Pierre-Louis was reaching for a knife or a gun, but never actually saw a weapon. (*Id.* at 533-34.) Petitioner claimed that he feared for his life, and so he punched Pierre-Louis in the head with his right hand and pushed Pierre-Louis. (*Id.* at 478-79, 483, 532-33.) Pierre-Louis fell and hit his head on the ground while attempting to evade petitioner's punch. (*Id.* at 479, 484, 539-41.) Pierre-Louis held onto petitioner and tried to get up, and petitioner again pushed Pierre-Louis, who hit his head on the ground a second time. (*Id.* at 479, 484, 537-38, 541.) Petitioner went over to his wife's car, and Pierre-Louis stood up, then crouched back down. (*Id.* at 479-80, 543.) Petitioner denied ever hitting Pierre-Louis with a pipe or umbrella and claimed that he was acting in self-defense. (*Id.* at 480, 543.) He stated that he was holding his car keys in his closed fist when he punched Pierre-Louis. (*Id.* at 481-82.)

Before petitioner could see if Pierre-Louis was injured, the police arrived on the scene, arrested him, took his keys, and took him to the police precinct without questioning him. (*Id.* at 480-81.) At the police precinct, petitioner stated that he was questioned in English and was not provided with an interpreter even after he requested one. (*Id.* at 486.) Petitioner testified that he told the police officers that he had been struck, and that his head was hurting. (*Id.* at 485, 487.) The police told him he would have to wait two or three days to see a judge if he went to the hospital. (*Id.* at 486.) Petitioner testified that in the morning, at about 7 a.m., another police officer came to speak with him, in English, without an interpreter. (*Id.* at 487.) Petitioner stated that he "could not understand all the words" spoken to him. (*Id.* at 488.)

### C. *Procedural History*

#### 1. Petitioner's Direct Appeal

On December 18, 2000, a jury convicted petitioner of Manslaughter in the First Degree, in violation of N.Y. Penal Law § 125.20(1). On January 8, 2001, the court sentenced petitioner to a term of imprisonment of fifteen years. (*See* docket no. 3, Affidavit of Tziyonah M. Langsam in Opp'n to Pet. for a Writ of Habeas Corpus ("Langsam Aff."), ¶¶ 7-8.)

*7 On or about November 26, 2002, petitioner appealed his conviction to the New York Supreme Court, Appellate Division, Second Department (*see id.,* ¶ 9), raising the following claims: (1) petitioner was denied a fair trial by the prosecutor's misconduct on cross-examination and summation; and (2) his sentence of fifteen years was excessive. (*See* docket no. 2, Ex. A, Brief for Defendant-Appellant dated November 2002 ("Pet.App.Br.").)

The Appellate Division denied the appeal, holding that "[t]he defendant's contentions that the prosecutor engaged in prejudicial conduct in cross-examining him and on summation are largely unpreserved for appellate review ...." *People v. Louis,* 305 A.D.2d 699, 759 N.Y.S.2d 693, 694 (2d Dep't 2003) (citations omitted). The Appellate Division also held that "[i]n any event, the allegedly improper conduct did not result in reversible error" and that the fifteen year sentence imposed was not excessive. *Id.*

Petitioner then applied for permission to appeal to the New York Court of Appeals, raising the same issues that were raised in his direct appeal. On July 29, 2003, the Court of Appeals denied the application. *People v. Louis,* 100 N.Y.2d 584, 764 N.Y.S.2d 394, 796 N.E.2d 486 (N.Y.2003).

#### 2. Petitioner's § 440.10 Motion

On August 12, 2003, petitioner moved *pro se* to vacate the state trial court's judgment, dismiss the indictment, and modify his sentence, pursuant to New York Criminal Procedure Law §§ 440.10 (motion to vacate judgment) and 440.20 (motion to set aside sentence). Petitioner moved to vacate his conviction on the basis that (1) the indictment against petitioner was defective because Marie Gay falsely represented to the grand jury that the weapon used to

kill Pierre-Louis had been recovered and identified, and the prosecutor failed to correct the record; and (2) his trial counsel was ineffective for failing to cross-examine Marie Gay regarding her alleged grand jury testimony about the recovery of a murder weapon.[5] (*See* docket no. 1, Attachment 9, Memorandum of Law in Support of Motion to Dismiss, Vacate Conviction, Or Modification of Sentence ("Def. 440.10 MOL").) On October 15, 2003, the trial court denied petitioner's motion, ruling that petitioner's claims were procedurally barred and without merit. (*See* docket no. 2, Attachment 6, Order of Justice D'Emic dated 10/15/03 (" § 440.10 Order").) The trial court found that petitioner's claims were procedurally barred due to "his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him," N.Y.Crim. Proc. Law § 440.10(2)(c), and also because "the ground or issue raised upon the motion was previously determined on the merits upon an appeal from the judgment," N.Y.Crim. Proc. Law § 440.10(2)(a). The court continued: "In any event [petitioner's] claims are without merit since he is mistaken in his belief that there was any testimony made to the grand jury by the victim's sister regarding the recovery of a weapon." (§ 440.10 Order at 2.) Finally, the court also found that petitioner lacked any basis for setting aside his sentence because there was no showing that it was "unauthorized, illegally imposed or otherwise invalid as a matter of law," N.Y.Crim. Proc. Law § 440.20(1). Petitioner applied for leave to appeal the trial court's decision regarding his motion to vacate, but the Appellate Division denied the application on February 27, 2004. (Langsam Aff. ¶ 14.)

[5]  As set forth in section II(C)(2), *infra,* petitioner is mistaken in his assertion that Marie Gay testified before the grand jury about the recovery of a murder weapon.

### 3. Habeas Petition

**\*8** On July 7, 2004, petitioner filed the instant petition for habeas corpus, alleging that: (1) prosecutorial misconduct in cross-examination and summation deprived petitioner of a fair trial and due process of law; (2) trial counsel was ineffective because he failed to cross-examine Marie Gay during trial regarding the alleged recovery of "a piece of pipe" and to seek dismissal of the indictment based on Gay's alleged perjury to the grand jury; (3) the indictment was defective due to the grand jury's reliance on perjured testimony and on police reports referring to a "piece of pipe" that was not produced at trial; and (4) the

sentence of fifteen years imprisonment was unreasonable and excessive. (*See* docket no. 1, Petition for Writ of Habeas Corpus ("Habeas Pet.").)

### *II. DISCUSSION*

#### A. *Review of Habeas Petitions Under AEDPA*
Before addressing each of petitioner's claims, the Court reviews the relevant law under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214 (1996) as it relates to the timeliness of petitioner's application for relief and the standard of review under AEDPA.

#### 1. Timeliness
A petitioner must file an application for a writ of habeas corpus within one year of when the challenged conviction becomes final. *See* 28 U.S.C. § 2244(d)(1)(A). A conviction is considered "final" for the purposes of the limitations period either when the United States Supreme Court has denied certiorari or when the petitioner's time to seek direct review in the United States Supreme Court by writ of certiorari has expired. *Williams v. Artuz,* 237 F.3d 147, 151 (2d Cir.2000). Criminal cases must be brought to the United States Supreme Court for review of a lower state court judgment within ninety days of an order by the state court of last resort denying discretionary review. Supreme Court Rule 13(1).

Here, the New York State Court of Appeals denied petitioner's application for leave to appeal on July 29, 2003. Petitioner filed his petition for a writ of habeas corpus on July 7, 2004, less than one year and ninety days later, and thus within the limitations period.

#### 2. Standard of Review
The AEDPA established a deferential standard that federal courts must apply when reviewing state court convictions. Under AEDPA, a federal court may grant habeas relief with respect to a federal claim adjudicated on the merits in state court only if the adjudication of the claim resulted in a decision that was either: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

28 U.S.C. § 2254(d). In addition, "a determination of a factual issue made by a State court shall be presumed to be correct," and the applicant for habeas relief has the burden of "rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

**\*9** A state court's decision is "contrary to" clearly established Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court decision is an "unreasonable application" of federal law "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* The Supreme Court has emphasized that the reasonableness of the application of the law is to be assessed objectively rather than subjectively. *Id.* at 409-10. Therefore, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.

To determine whether AEDPA's deferential standard applies, the court reviewing a habeas petition must first consider whether the state court considered petitioner's claims on the merits. *Ryan v. Miller,* 303 F.3d 231, 245-46 (2d Cir.2002). A state court has "adjudicate[d] a state petitioner's claim on the merits when it "(1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment." *Sellan v. Kuhlman,* 261 F.3d 303, 312 (2d Cir.2001). The state court's decision need not "explicitly refer to either the federal claim or to relevant federal case law." *Id.*

Here, the Appellate Division on direct appeal held that petitioner's prosecutorial misconduct claim was "largely" unpreserved for appellate review, and that "[i]n any event, the prosecutor's allegedly improper conduct did not result in reversible error." *Louis,* 759 N.Y.S.2d at 694. Because the Appellate Division stated that the claim was "largely," but not completely, unpreserved, and then addressed the merits of the claim, the claim was decided on the merits. *See Garcia v. Greiner,* 01-CV-2470, 2004 WL 943902, at \*3 n. 2 (E.D.N.Y. Apr.28, 2004) (finding

that state court ruled "on the merits" when the state court "said that the claim was *largely* (not completely) unpreserved and then went on to discuss the merits of the case") (emphasis in original). The Appellate Division also addressed petitioner's claim of excessive sentence on the merits when it held that "The sentence imposed was not excessive." *Louis,* 759 N.Y.S.2d at 694. Both the prosecutorial misconduct and excessive sentence claims were thus disposed of on the merits, and may not be disturbed absent a showing that the Appellate Division's judgment "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

**\*10** With regard to the claims of defective indictment and ineffective assistance of counsel which petitioner first raised in his § 440.10 motion to vacate, the trial court found that these claims were procedurally barred but also ruled that "in any event" the claims were without merit. Because, as discussed below, the court finds that these claims were not procedurally barred, it will examine the merits of these claims, applying the deferential AEDPA standard of review: whether the trial court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). *See Garvey v. Duncan,* No. 05-5764-pr, 2007 U.S.App. LEXIS 10972, at \*31, \*44 (2d Cir. May 9, 2007) (dissenting opinion) (applying deferential AEDPA standard of review in examining merits of petitioner's claim, after concluding that state appellate court incorrectly applied state procedural rule to bar petitioner's claim).

The Court addresses each of petitioner's claims in turn below.

### B. *Ground One: Prosecutorial Misconduct*

Petitioner argues that the prosecutor engaged in misconduct by: (1) misrepresenting petitioner's testimony during cross-examination and summation; (2) denigrating and distorting the defense; (3) acting as an unsworn witness and bolstering the prosecution's witnesses; and (4) making inflammatory and prejudicial remarks. (*See* Pet.App. Br. at 21-32. [6] )

6    Because petitioner's application for writ of habeas corpus addresses petitioner's prosecutorial misconduct and excessive sentence claims by reference to petitioner's direct appeal, the Court addresses the arguments made in petitioner's brief on his direct appeal.

"The Supreme Court has instructed federal courts reviewing habeas claims brought by state prisoners and premised upon prosecutorial misconduct in summation to distinguish between 'ordinary trial error of a prosecutor and that sort of egregious misconduct ... amount[ing] to a denial of constitutional due process.' " *Floyd v. Meachum,* 907 F.2d 347, 353 (2d Cir.1990) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 647-48, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)). "Under the standard of *Donnelly,* the question before a federal appellate court is whether 'the prosecutorial remarks were so prejudicial that they rendered the trial in question fundamentally unfair.' " *Id.* (quoting *Garofolo v. Coomb,* 804 F.2d 201, 206 (2d Cir.1986) and citing *Donnelly,* 416 U.S. at 645). *See Greer v. Miller,* 483 U.S. 756, 765, 107 S.Ct. 3102, 97 L.Ed.2d 618 (1987) ("To constitute a due process violation ... prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial.") (internal quotations and citations omitted); *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) ("It is not enough that the prosecutor's remarks were undesirable or even universally condemned. The relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process.") (internal quotations and citations omitted).

**\*11** In considering whether petitioner suffered actual prejudice, the habeas court should evaluate: (1) the severity of the alleged misconduct, (2) any measures adopted to cure the misconduct, and (3) the certainty of the conviction absent the improper statements. *Floyd,* 907 F.2d at 355. The court should also review statements allegedly constituting prosecutorial misconduct "in the context of the entire argument before the jury to determine whether the defendant was deprived of a fair trial." *United States v. Tocco,* 135 F.3d 116, 130 (2d Cir.1998) (citation omitted). "In particular, where the defense summation makes arguments and allegations against the government, the prosecutor may respond to them in rebuttal." *Id.* (citations omitted).

### 1. The Prosecutor's Alleged
### Misrepresentations of Petitioner's Testimony

#### a. Alleged misrepresentations regarding
#### petitioner's English-speaking abilities

Petitioner argues that the prosecutor, during cross-examination of petitioner and on summation, mischaracterized petitioner's answers regarding his English-speaking abilities. (Pet.App. Br. at 22-24.)

The record shows that on direct examination, testifying with the assistance of a Creole interpreter, petitioner stated that during his interview with Officer Mengani and Detective Taylor, he requested an interpreter but was not provided with one, and that he could not understand everything the police officers said to him. (Louis: Tr. at 487-88.) On cross-examination, the prosecutor asked petitioner whether he understood English, and petitioner answered, "I do understand English; not all the words. That's the reason why I asked someone to translate for me, when you tell me something that I don't understand." (*Id.* at 497.) Petitioner explained that he did not have the opportunity to go to school to learn English, and that his English-speaking tasks at his workplace were limited. (*Id.* at 497-98.) The prosecutor then asked, "So it's your testimony that you rose up to become a manager ... and you do not understand English?" (*Id.* at 498.) Petitioner answered, "I understand English, but not everything." (*Id.*) After ascertaining that petitioner performed his work-related duties in English, the prosecutor, referring to petitioner's post-arrest interview with Officer Mengani and Detective Taylor, asked: "Isn't it a fact that the only reason that you are now maintaining that you do not speak English is because you know that the statement that you initially gave does not make out a self-defense claim? Yes or no." (*Id.* at 500.) An objection was raised and overruled, and petitioner again explained that although he spoke English, he did not understand "all the words" and he required an interpreter at trial because he wanted to understand everything that was happening. (*Id.* at 500-01.) This line of questioning concluded when the prosecutor asked petitioner whether he spoke with his attorney in English without an interpreter, and an objection was sustained. (*Id.* at 501.)

**\*12** Petitioner argues that the prosecutor's questioning on cross-examination "deliberately ignored" petitioner's

testimony that he spoke English but did not understand some words, and misrepresented petitioner's testimony by "suggesting that [petitioner] had said he did not understand English, when he had not ." (Pet.App. Br. at 23.) Petitioner also argues that the prosecutor's misconduct was compounded by the prosecutor's comments on summation, during which the prosecutor stated that petitioner was "pretend [ing]" that he did not speak English and was trying to "put one over" on the jury. (*Id.* at 24; Louis: Tr. at 624-25.)

The record shows that the prosecutor's questions during her cross-examination of petitioner and her arguments on summation were made in response to certain aspects of petitioner's testimony which contradicted the testimony of Officer Mengani and Detective Taylor. On direct, for example, petitioner stated that he had requested but not been given an interpreter when he was interviewed by police, and that he did not understand everything the police officers said to him. (*Id.* at 486, 488.) Petitioner also testified that he accidentally hit his wife's car with his own vehicle. (*Id.* at 475.) These statements contradicted the earlier testimony of Officer Mengani and Detective Taylor that petitioner did not request an interpreter during his post-arrest interview (Mengani: Tr. at 103-104, 114-116; Taylor: Tr. at 147), and that petitioner stated that he intentionally tried to block his wife from driving away, thus causing an accident (Taylor: Tr. at 135-36). Similarly, on cross-examination, petitioner stated that he did not speak to his wife immediately after the incident (*id.* at 543-44). Detective Taylor, however, testified that petitioner told the officers that he did speak to his wife immediately after the incident (*id.* at 136, 150, 154).

The Court finds that, when considered in the context of direct and cross-examination of the witnesses, the prosecutor's cross-examination of petitioner and her statements during summation were a fair response to the defense's attempt to highlight petitioner's limited English-language ability and to cast doubt on the testimony of Officer Mengani and Detective Taylor. *See Delgado v. Walker,* 798 F.Supp. 107, 115-16 (E.D.N.Y.1992) (finding that state trial court's admission of videotape showing habeas petitioner speaking in English, in order English and could not have confessed to police officer, did not deny petitioner of, *inter alia,* right to fair trial). Thus, even if the prosecutor's conduct was improper, which it was not, it did not constitute the type of egregious misconduct

amounting to a denial of petitioner's right to a fair trial and due process.

### b. Alleged misrepresentations regarding petitioner's self-defense claim

Petitioner also alleges that during summation, the prosecutor misrepresented petitioner's testimony regarding whether he acted in self-defense. (*See* Pet.App. Br. at 25.) During trial, petitioner testified that he saw Pierre-Louis put his hand below his shirt, that he thought Pierre-Louis might have a weapon, and that he punched Pierre-Louis in self-defense. (Louis: Tr. at 483, 534.) On cross-examination, the prosecutor questioned petitioner regarding his statements:

> **\*13** Q: [Pierre-Louis] never pulled out a weapon or anything, did he?
>
> A: He put his hand below his shirt. I don't know what he was going to do. I don't know if he have a knife. I don't know if he have a gun.
>
> Q: Okay. Those are two different things, a knife and a gun. They're completely-they look completely different; would you agree?
>
> A: Yes, I think so.
>
> Q: So could you see what he supposedly had?
>
> A: I don't know what he had.

(*Id.* at 534.) On summation the prosecutor stated:

> On direct examination ... [petitioner] tried to make it seem as if the deceased pulled up his shirt and he had a weapon; he thought it was a weapon. Then on cross-examination: Well, it could have been a knife or a gun.
>
> Well, hold up. Those are two different things.
>
> "You didn't really see anything, did you?
>
> "Well, no, I didn't." He didn't see anything.
>
> Again, it's an attempt to tailor his testimony to the law.

(Summation: Tr. at 638).

Again, placed in context, the prosecutor's arguments on summation erroneously quoted petitioner's testimony but were not prejudicial and did not amount to a violation

of petitioner's constitutional right to a fair trial. Instead, the prosecutor's arguments were not prejudicial, but were directed at emphasizing that despite petitioner's testimony that he believed Pierre-Louis may have had a weapon, petitioner did not actually see Pierre-Louis remove a weapon–neither a knife nor a gun–from his shirt. The prosecutor's statements were in accord with the Supreme Court's "longstanding rule that when a defendant takes the stand, his credibility may be impeached and his testimony assailed like that of any other witness." *Portuondo v. Agard,* 529 U.S. 61, 69, 120 S.Ct. 1119, 146 L.Ed.2d 47 (2000) (internal quotations and citation omitted). "When [a defendant] assumes the role of a witness, the rules that generally apply to other witnesses-rules that serve the truth-seeking function of the trial-are generally applicable to him as well." *Id.* (internal quotations and citations omitted). The prosecutor was entitled to challenge petitioner's assertions that he acted in self-defense. In any case, any alleged misconduct by the prosecution did not amount to a denial of due process.

### 2. Denigrating and Distorting the Defense

Petitioner argues that the prosecutor "[d]enigrat[ed] and [d]istort[ed] the [d]efense" by "repeatedly suggest[ing] that petitioner had concocted and fabricated his defense" and implying that petitioner's counsel was "complicit in the impropriety." (Pet.App. Br. at 25-26.) Specifically, petitioner claims that the prosecutor suggested that petitioner began to develop a self-defense claim after he was arrested and retained a lawyer, that petitioner came up with a "new story" in order to establish a self-defense claim, that petitioner tailored his testimony to conform to the medical evidence, and that defense counsel's opening statement conflicted with the defense actually presented during the trial. (*Id.* at 25-26.)

**\*14** In the People's summation, the prosecutor argued that petitioner's statements at trial contradicted his post-arrest statements to Officers Taylor and Mengani:

PROSECUTION: ... I submit that since he has been arrested, since he has an attorney-

DEFENSE COUNSEL: Objection to this argument.

PROSECUTION:-since he sat in this courtroom-

THE COURT: Overruled.

PROSECUTION:-he now understands the law of self-defense; and he now understands that a simple punch does not justify the use of deadly physical force. So, therefore, I submit, he must come up with a new story. And I submit that that is just what he tried to do in this courtroom.

(Summation: Tr. at 625-26.) The prosecutor also argued that petitioner tried to "conform [his testimony] to the medical evidence" (*id.* at 633), and that the testimony presented by the defense differed from defense counsel's opening arguments (*id.* at 634).

Viewed, again in context, the prosecutor's statements do not assert, much less imply, that the defense was engaged in any impropriety, as petitioner claims. Instead, the prosecutor's statements were aimed at casting doubt on petitioner's testimony at trial, particularly petitioner's claims that he acted in self-defense and that the decedent's injuries were caused by falling and hitting his head twice on the ground, rather than through trauma from a blunt instrument. During her closing arguments, the prosecutor also focused on alleged inconsistencies in petitioner's trial testimony, such as whether petitioner's collision with his wife's car was intentional or accidental (*id.* at 627, 631).

These statements were fair commentary on the disputed facts in evidence. Indeed, the Supreme Court has held that a prosecutor's comments during summation regarding a petitioner's opportunity to hear other witnesses testify and to tailor his testimony accordingly, do not violate the petitioner's rights under the Fifth, Sixth and Fourteenth Amendments. *Agard,* 529 U.S. 61, 73, 120 S.Ct. 1119, 146 L.Ed.2d 47 ("Allowing comment upon the fact that a defendant's presence in the courtroom provides him a unique opportunity to tailor his testimony is appropriate ... to the central function of the trial, which is to discover the truth.") Again, the prosecutor's statements were in accord with the Supreme Court's "longstanding rule that when a defendant takes the stand, his credibility may be impeached and his testimony assailed like that of any other witness." *Id.* at 69 (citation omitted). Moreover, "[b]oth prosecution and defense are entitled to broad latitude in the inferences they may suggest to the jury during closing arguments." *United States v. Suarez,* 588 F.2d 352, 354 (2d Cir.1978) (citation omitted).

Petitioner also claims that the prosecutor "impugned [petitioner's] right to make objections" by "telling the jury

that defense counsel had attempted to keep the jury from hearing the 911 calls" and suggesting that petitioner's right to object to evidence "was merely a technicality that stood in the way of the jury's learning the truth." (Pet.App. Br. at 27.) The record reflects, however, that the prosecutor's comments were made in response to defense counsel's comments on summation, which questioned the veracity of the anonymous 911 calls. On summation, defense counsel argued:

> **\*15** We have no idea who any of [the 911 callers] are. This means nothing in the context of this case. This is not what you convict or don't convict someone on, some anonymous 911 transmission.

(Summation: Tr. at 596.) The prosecutor, on summation, responded:

> You have 911 calls in this case. Now, [defense counsel] objected to them coming in but, guess what, you are the judge of the facts, and you get to determine how much weight you want to give those 911 tapes. Just because he doesn't like it doesn't mean that you don't consider it.

(*Id.* at 612). Given the context in which these closing arguments were made, the Court finds that the prosecutor did not prejudice petitioner by noting that petitioner objected to the 911 calls being admitted into evidence. The prosecutor's statements were in direct response to defense counsel's attack on the probative weight and credibility of the recorded 911 calls, and merely reminded the jurors that the recordings were evidence that could be considered and weighed by the jury. The petitioner's right to a fair trial was not prejudiced by the prosecutor's statement on summation.

### 3. Acting as an Unsworn Witness

Petitioner argues that the prosecutor acted as an "unsworn witness" and impermissibly bolstered the testimony of Marie Gay and Jean Hercules. (Pet.App. Br. at 28-30.) Specifically, petitioner argues that the prosecutor acted as an unsworn witness by stating on summation that Gay's testimony concerning the altercation was consistent with her statements to the police and to the grand jury, and that Hercules' testimony was also consistent with his grand

jury testimony. (*Id.*) The grand jury testimony of Gay was not discussed during her trial testimony; Hercules was cross-examined by defense counsel regarding his grand jury testimony.

The record reflects that the prosecutor's statements were made in response to defense counsel's closing arguments, which referred to the grand jury testimony of Gay and Hercules and questioned the credibility of their trial testimony. In his summation, defense counsel argued that Gay did not actually see her brother being hit with a pipe, questioned why she did not speak with police on the night of the incident, and made statements regarding Gay's grand jury testimony:

> ... at the moment that [Marie Gay] decides to look out the window-unbelievable-at that exact moment, [the deceased is] getting hit over the head with a pipe. Unbelievable.

> Well, if that was the case, then why didn't she tell this to the police that night? She didn't talk to the police that night. I submit to you she didn't talk to the police that night because she was fast asleep in the back room when this happened. She doesn't know what happened. She didn't see what happened. Someone told her what happened.

> A couple of days later, she surfaces in the grand jury and tells them this story.

(*Id.* at 584-85.)

In response to defense counsel's arguments, the prosecutor countered that Gay had talked to police on the night of the incident, and that the testimony Gay gave at trial was consistent with her statements to the grand jury. The prosecutor argued:

> **\*16** Now, let's look at [Marie Gay's] testimony.

> You heard [defense counsel] ask her; I asked her; this was not the first time that she testified. She testified in the grand jury in this case and, also, contrary to the statements of [defense counsel], she told you she spoke to the police that night....

> She went to the police that night. She told them what happened. She came in the grand jury and, again, within days of this incident before her brother passed, told them what happened.

Out of all of that testimony in the grand jury, out of what she told the police, have you heard anyone claim that she made an inconsistent statement?

Ask yourself; she was subjected to cross-examination; she had given prior testimony. Did you hear the veracity of her statements challenged about coming to the window? Did you hear any discrepancy between what she said in the grand jury and what she said now? ...

You didn't hear any of that because, I submit, her testimony was as consistent last week as it was a few days after this incident, and that lets you know that you can rely upon her when she came in here and she told you what this man did.

(*Id.* at 608-10.)

When viewed in context, it is clear that the prosecution's arguments on summation were made in response to defense counsel's attacks on Gay's credibility. Marie Gay testified on direct examination that she spoke with the police on the night of the incident and that she testified before the grand jury. (*Id.* at 251.) Although neither the prosecution nor the defense questioned Gay regarding the substance of her grand jury testimony, which was not admitted at trial, both the prosecution and the defense referred to Gay's grand jury testimony in their summation arguments. As noted above, defense counsel argued that Gay was asleep when the incident occurred, that she was later "told" what happened, and that she in turn told this story to the grand jury. (*Id.* at 585 .)

Even though it was improper for the prosecutor to refer to Gay's grand jury testimony, the prosecutor's arguments regarding Gay's grand jury testimony were made in response to defense counsel's argument that Gay had fabricated her grand jury testimony. Moreover, the prosecutor's references to Gay's grand jury testimony did not reveal any of her grand jury testimony, and defense counsel did not object to any of these arguments by the prosecution during summation. Finally, as discussed in subsection II(B)(5), *infra,* the trial court's instructions to the jury included an admonition to "Decide the case solely upon the competent evidence before you." *See Wanton v. Mann,* 91 Civ. 4950, 1992 U.S. Dist. LEXIS 8446, *7-11 (finding that prosecutor's reference in summation to witness's grand jury testimony, which was not in evidence, was improper but not severe enough to warrant habeas

relief, where defense counsel objected and trial court instructed jury to disregard any of the prosecutor's claims that had no basis in the evidence). Consequently, none of the foregoing statements by the prosecutor were so prejudicial as to constitute a denial of due process or render petitioner's trial fundamentally unfair.

**\*17** With regard to Hercules, defense counsel argued during summation that Hercules's trial testimony regarding his location at the time of the incident was inconsistent with his grand jury testimony, and questioned whether Hercules could have viewed the incident from his perspective. (*Id.* at 589-591.) Specifically, defense counsel argued that Hercules had testified to the grand jury that he was sitting in front of his home at 189 East 34th Street when he observed the incident between petitioner and the deceased, but at trial Hercules stated that he was located three houses down from 212 East 34th Street on the opposite side of the street. Defense counsel noted in summation that he had asked Hercules on cross-examination, "Now, Mr. Hercules, is the reason that you changed your testimony, changing where you were when you made these observations, is that you had some conversation with the district attorney about ... How could you possibly see this ... from where you claim you were?" (*Id.* at 590.) On rebuttal summation, the prosecutor argued that Hercules's testimony at trial that the incident happened in front of his house was consistent with his trial testimony and the facts in evidence and asked the jury, "what did you hear that was inconsistent?". (*Id.* at 613-14.)

Again, when viewed in context, the record reflects that the prosecutor's arguments on summation regarding the consistency of Hercules' testimony before the grand jury and at trial were made in response to defense counsel's contentions that Hercules did not testify consistently. The prosecutor's reference in her rebuttal summation to Hercules's grand jury testimony was not prejudicial and did not violate petitioner's right to a fair trial. Moreover, defense counsel did not object to this aspect of the prosecutor's summation.

Petitioner next argues that the prosecutor bolstered her witnesses on summation by arguing to the jury that in order to believe the defense's arguments, "You would have to believe that Marie Gay, a Jehovah's witness, came into this courtroom and lied to you," and that "she came in here and she perjured herself on the stand." (Tr. at 615.) Although defense counsel did not

move to strike the comment that Gay was a Jehovah's witness, the court sustained the defendant's objection to the comment. Moreover, the prosecutor's comments were made in response to defense counsel's attempts during summation to cast doubt on Gay's credibility, and were not prejudicial. *See Crawford v. Keane,* No. 00 Civ. 6672, 2001 U.S. Dist. LEXIS 11739, *16-17 (S.D.N.Y. Aug. 14, 2001) (finding that prosecutor's statement to jury on summation, that to accept defendant's testimony, "you must also accept that all the witnesses against him are lying," was not improper, and in any case did not substantially prejudice jury and make trial fundamentally unfair).

Petitioner also argues that the prosecutor acted as an unsworn witness when she suggested that the police did not look for a weapon because, at the time of the incident, they viewed the case as an assault, not a homicide. (Pet.App. Br. at 29.) On summation, the prosecutor argued:

> **\*18** Now, defense counsel makes much of the fact: Where is this weapon? Ladies and gentlemen, look at what happened here. The police come to the scene. The deceased isn't bleeding; he's crouched. They don't know he's bleeding internally and that he's dying ... I submit at this time it didn't look like a homicide; it looked like an assault case to them.

(Tr. at 618). The prosecutor's argument countered defense counsel's arguments during summation, highlighting the prosecution's failure to produce the weapon allegedly used to attack the deceased. (Tr. at 575.) In this context, the prosecutor's argument explaining why the weapon may not have been retrieved was not unduly suggestive or prejudicial. The prosecutor's argument suggested a reasonable inference that the jury could have drawn based on the facts in evidence, namely that Pierre-Louis had suffered serious injuries but was not killed on the night of the incident. Moreover, the court sustained an objection by defense counsel to the prosecutor's statements. (Tr. at 618.)

### 4. Making Inflammatory and Prejudicial Remarks

Petitioner claims that the prosecutor made "inflammatory comments" by referring during summation to a recent news event concerning a domestic violence counselor who had killed two people. (*See* Pet.App. Br. at 30; Tr. at 635-36.) The transcript shows that prosecutor raised the news event after questioning whether petitioner's character witnesses knew him "outside of church or outside of work," that the court sustained an objection, and that the prosecutor did not mention the news event again. The Court finds that the prosecutor's mention of the news event, which was brief, objected to, and sustained, did not cause any substantial prejudice to petitioner, whose trial counsel did not move to strike the comment.

Petitioner also claims that the prosecutor suggested on summation that petitioner's own wife, who did not testify at trial, believed petitioner to be guilty because she ran away from petitioner and went to the hospital with Pierre-Louis. (*See* Pet.App. Br. at 31.) Specifically, the prosecutor asked the jury, "if [petitioner is] such the wronged party, why is his wife at the hospital with the victim in this case the night of the incident? Why is his wife running down the street away from him?" (Tr. at 636.) These statements were based on testimony by prosecution witnesses that the deceased's wife went to the hospital the night of the incident (Eveillard: Tr. at 35) and that she ran from petitioner (Hercules: Tr. at 314-16). The Court thus finds that the statements were fair comment on the facts in evidence, and do not constitute egregious misconduct which denied petitioner due process.

### 5. Curative Instructions and the Strength of the Evidence

In addition to considering the severity of the alleged misconduct, the Court also must consider any measures adopted to cure the misconduct and the certainty of the conviction absent the improper statements. *Floyd,* 907 F.2d at 355. Here, any misconduct was addressed by the trial court's curative instructions to the jury following each side's summations, during which the Court instructed the jury:

> **\*19** During the course of the trial, incidents may have occurred which you were instructed to disregard and dismiss from your minds and there were times when questions were asked as to which objections were made and sustained. Whether these matters were trivial or consequential

is of no concern here, for they
are not in the case and you must
not be influenced by any of them;
nor shall you draw any inferences
with respect to any of them. Decide
the case solely upon the competent
evidence before you and determine
the issues on what you believe to be
the credible, believable evidence.

(Tr. at 641.) The court further instructed the jury that
"The arguments [,] remarks and summations of counsel
are not in evidence.... You must take the evidence from the
mouths of the witnesses as you have heard them and from
the exhibits which have been received in evidence." (Tr.
at 643.) These curative instructions properly directed the
jury to decide the case based only on the testimony and
exhibits in evidence before them, and served to remedy any
objectionable statements by counsel on summation.

Any misconduct committed by the prosecutor must be
weighed against the overwhelming evidence of petitioner's
guilt. *See United States v. Elias,* 285 F.3d 183, 192 (2d
Cir.2002) (finding no prosecutorial misconduct where
"[t]he specific remarks at issue did not touch upon or
bolster the most potent of the government's evidence").
The jury heard testimony from two eyewitnesses, Marie
Gay and Jean Hercules, both of whom saw petitioner
hit Pierre-Louis in the head multiple times with a metal
bar or pipe. Two anonymous 911 calls corroborated the
eyewitness accounts. Petitioner admitted to assaulting
Pierre-Louis, and was apprehended at the scene of
the incident. Expert medical testimony was introduced,
demonstrating that Pierre-Louis's injuries were consistent
with being struck with a bar or pipe, and that it was
"extremely, extremely unlikely" that Pierre-Louis could
have suffered those injuries in the manner described by
petitioner. (Todor: Tr. at 409.) The Court is satisfied that
given the weight of the evidence establishing petitioner's
guilt, the prosecutor's comments during summation
played an insignificant role.

For the reasons stated above, it is respectfully
recommended that the Court deny petitioner's claims on
ground one, alleged prosecutorial misconduct, because,
under AEDPA's deferential standard, none of the state
court's decisions were "contrary to, or involved an
unreasonable application of, clearly established Federal
law, as determined by the Supreme Court of the United
States." 28 U.S.C. § 2254(d).

### C. *Grounds Two and Three: Defective Indictment and Ineffective Assistance of Counsel*

Petitioner's ineffective assistance of counsel and defective
indictment claims are both premised on petitioner's
allegation that Marie Gay committed perjury before the
grand jury by testifying regarding recovery of a murder
weapon. (*See* Habeas Pet. at 8-10 .) In his defective
indictment claim, petitioner alleges that the indictment
against him was defective because Marie Gay falsely
testified to the grand jury that the weapon used to
kill Pierre-Louis had been recovered and identified. *Id.*
Petitioner's ineffective assistance of counsel claim alleges
that his trial counsel was ineffective because (1) counsel
failed to cross-examine Marie Gay at trial regarding
her alleged perjury before the grand jury and regarding
documents noting recovery of a weapon by Gay and
her brother, and that this failure impaired petitioner's
justification defense, and (2) counsel failed to seek
dismissal of the indictment. *Id.* Respondent argues that
both of these claims are procedurally barred and may not
be reviewed by a federal habeas court. (*See* docket no.
3, Memorandum of Law in Opposition to Petition for a
Writ of Habeas Corpus ("MOL in Opp'n to Petition") at
7-8.) Although the court does not agree that the claims are
procedurally barred, both claims are without merit for the
reasons discussed below.

### 1. Exhaustion and Procedural Bar

**\*20** In the present case, respondent argues that
petitioner's defective indictment and ineffective assistance
of counsel claims are barred because the state court denied
them on the grounds that they were barred under N.Y.
Crim Proc. Law §§ 440.10(2)(c) and 440.10(2)(a). The trial
court considering petitioner's § 440.10 motion held that:

Defendant's claims of perjured testimony and
ineffective assistance of counsel for failing to cross-
examine the witness regarding that testimony are
procedurally barred due to "... his unjustifiable failure
to raise such ground or issue upon an appeal actually
perfected by him" (CPL § 440.10[2][c]) and those claims
which were raised on direct appeal, were reviewed
by the Appellate Division and affirmed. Furthermore,
defendant's motion to vacate must be denied since "the
ground or issue raised upon the motion was previously
determined on the merits upon an appeal from the
judgment ..." (CPL 440 § [2][a] ) [sic: the court appears to

have intended to cite N.Y.Crim. Proc. Law § 440.10(2)(a) ].

§ 440.10 Order at 1-2.

"Under the independent and adequate state grounds doctrine, the Supreme Court 'will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment.' " Cotto v. Herbert, 331 F.3d 217, 238 (2d Cir.2003) (quoting Coleman v. Thompson, 501 U.S. 722, 729, 111 S.Ct. 2546, 111 L.Ed.2d 640 (1991)). "This rule applies whether the state law ground is substantive or procedural" and "applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." Coleman, 501 U.S. at 729-30; see also Harris, 489 U.S. at 264 n. 10 ("As long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision," the adequate and independent state ground doctrine "curtails reconsideration of the federal issue on federal habeas").

A procedural default "bar[s] federal habeas review of the federal claim, unless the habeas petitioner can show 'cause' for the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the federal claim will result in a 'fundamental miscarriage of justice.' " Harris v. Reed, 489 U.S. 255, 262, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) (citations omitted); accord Fama v. Commissioner of Corr. Servs., 235 F.3d 804, 809 (2d Cir.2000).

As noted, a state procedural bar forecloses federal habeas review only where it constitutes both an "independent" and "adequate" state law ground for deciding the claim. Here, the trial court clearly relied on two "independent" state procedural rules, N.Y.Crim. Proc. Law §§ 440.10(2)(c) and 440.10(2)(a), and not on any rule of federal law in denying petitioner's motion to vacate.

In determining whether the trial court's reliance on §§ 440.10(2)(a) and 440.10(2)(c) was "adequate" to support the judgment, the court must examine if these rules are " 'firmly established and regularly followed' by the state in question." Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir.1999) (quoting Ford v. Georgia, 498 U.S. 411, 423-24, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991)). Whether application of the procedural rule is "firmly established and regularly

followed" must be judged in the context of "the specific circumstances presented in the case, an inquiry that includes an evaluation of the asserted state interest in applying the procedural rule in such circumstances." Cotto, 331 F.3d at 240 (citing Lee v. Kemna, 534 U.S. 362, 386-87, 122 S.Ct. 877, 151 L.Ed.2d 820 (2002)).

**\*21** In New York, "it is well-settled ... that where the record is sufficient to allow appellate review of a claim, the failure to raise that claim on direct appeal precludes subsequent collateral review of that claim." Serrano v. Senkowski, 2004 U.S. Dist. LEXIS 18936, at \*35-36 (S.D.N.Y.2004)(citing New York state cases). This rule "applies to bar collateral review where the facts underlying an ineffective assistance of counsel claim appear on the record." Id. Accordingly, where an ineffective assistance of counsel claim is record-based, federal habeas courts have found N.Y.Crim. Proc. Law § 440.10(2)(c) to be "firmly established and regularly followed", and thus "adequate". See, e.g., Sweet v. Bennett, 353 F.3d 135, 139-40 (2d Cir.2003); Alston v. Donnelly, 461 F.Supp.2d 112, 123-24 (W.D.N.Y.2006); Powers v. Lord, 462 F.Supp.2d 371, 378 (W.D.N.Y.2006); Serrano, 2004 U.S. Dist. LEXIS 18936, at \*35-36. "By contrast, where the ineffective assistance of counsel claim is not record-based, federal habeas courts have held that the rule of CPL § 440.10(2)(c) is not 'adequate.' " Serrano, 2004 U.S. Dist. LEXIS 18936, at \*36 n. 8 (citing Bonilla v. Portuondo, 2004 U.S. Dist. LEXIS 2774, at \*30 (S.D.N.Y. Feb. 26, 2004) (Report and Recommendation) (citing New York state case law holding that claims challenging an attorney's failure to call witnesses do not sufficiently appear on the record so as to require dismissal of that claim if raised for the first time on a § 440.10 motion)).

Here, petitioner argues in his petition for writ of habeas corpus that the documents and facts regarding the defective indictment and ineffective assistance of counsel claims on which he based his § 440 .10 motion were not in his possession at the time of the direct appeal, and thus the claims were not record-based. (Habeas Pet. at 9-10.) [7] Similarly, in his memorandum of law in support of his § 440.10 motion, petitioner asserted that although the documents "existed at the time of this trial and appeal ... these facts were never made a part of the trial record per se, and hence were dehors the record at the time of his appeal." (Def. 440.10 MOL at 2.) Petitioner further asserted that the documents on which he based his defective indictment and ineffective assistance of counsel

claims "were secured (from petitioner's trail [sic] attorney) some time during his appeal process," and "therefore could not have been made a part of his appeal." (*Id.* at 2.)

7    Petitioner asserts that "The facts that involve trial counsel's omissions [were] dehors the trial record and could not have been properly raise [sic] on direct appeal" and "Petitioner was not in possession of documents supporting the [defective indictment] claim until after his direct appeal was filed." (Habeas Pet. at 9-10.)

The documents on which petitioner bases his claims for defective indictment and ineffective assistance of counsel consist of "police reports" and a synopsis sheet prepared by the prosecutor and arresting officers. (Habeas Pet. at 10; *see also* Exs. A-C to Habeas Pet.) Petitioner concedes that the documents existed at the time of his trial, and the documents were in the possession of his trial attorney because petitioner's trial counsel provided the documents to petitioner "some time during his appeal process." (Def. 440.10 MOL at 2.) The documents were not introduced by either the prosecution or defense in petitioner's trial, and hence did not become part of the trial record. Because respondent has not addressed whether petitioner was in possession of these documents at the time of his direct appeal, the court cannot conclude that petitioner's appellate counsel possessed these documents at the time of petitioner's direct appeal and could have raised claims based upon them on petitioner's direct appeal. The court thus finds that in the foregoing circumstances the trial court's ruling on petitioner's § 440.10 motion was not "adequate" to bar federal habeas review of petitioner's claims for defective indictment and ineffective assistance of counsel. *See Powers,* 462 F.Supp.2d at 378 (finding § 440.10(2)(c) to be inadequate to bar federal habeas review where petitioner's ineffective assistance of counsel claims regarding "trial counsel's failure to investigate were not based on matters within the trial record but rather focused on counsel's failure to perform certain evidentiary testing that purportedly would have yielded exculpatory results and failure to find witnesses to impeach a key prosecution witness"). Neither does N.Y.Crim. Proc. Law § 440.10(2)(a) provide an adequate state law ground for barring review of petitioner's defective indictment and ineffective assistance of counsel claims in these circumstances, because these claims were not "previously determined on the merits upon an appeal from the judgment ...." N.Y.Crim. Proc. Law § 440.10(2)(a). As a

result, these claims are not procedurally barred, and the court will consider the merits of these claims.

### 2. The Merits of Petitioner's Defective Indictment and Ineffective Assistance of Counsel Claims

**\*22** Petitioner's defective indictment and ineffective assistance of counsel claims are both based on petitioner's contention that Marie Gay perjured herself before the grand jury regarding the recovery of a murder weapon. (*See* Def. 440.10 MOL at 3-10, Habeas Pet. at 8-10.) However, the state trial court, in considering petitioner's motion to vacate, ruled that:

> [petitioner's] claims are without merit since he is mistaken in his belief that there was any testimony made to the grand jury by the victim's sister regarding the recovery of a weapon. Consequently, [petitioner's] claim of ineffective assistance of counsel for failing to cross-examine her on the matter and his claim that this weakened his justification defense, is equally without merit.

(§ 440.10 Order at 2.) This determination by the state court is a factual determination which is afforded a strong presumption of correctness, and must be rebutted by petitioner with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Here, petitioner has failed to provide any evidence that Marie Gay testified before the grand jury regarding recovery of a weapon. In support of his defective indictment claim, petitioner points to "police reports" and a synopsis sheet prepared by the prosecutor and arresting officers which "claimed the victim's sister and brother brought a piece of pipe to the precinct and claimed that the pipe was the murder weapon." (Habeas Pet. at 10, Ex. B-2, C-1.) The handwritten notes attached as Exhibit B-2 to petitioner's motion to vacate, which respondent states were written by the Assistant District Attorney who initially reviewed the case (*see* MOL in Opp'n to Petition at 9, n. 2), do refer to recovery of a weapon by the decedent's brother, Jean Gay, and identification of the weapon by Marie Gay "as the object used by [petitioner] during the assault." However, as respondent has noted, the prosecutor did not present either a recovered weapon

or the documents noting recovery of a weapon to the grand jury or trial jury, and did not question Marie Gay or any other witness about the recovery of a weapon either before the grand jury or during trial. (MOL in Opp'n to Petition at 9.) Thus, petitioner's indictment could not have been procured by any alleged perjury by Marie Gay regarding the recovery of a weapon.

Conceding that "it is true that the grand jury minutes lack any ... testimony from [Marie Gay]" regarding recovery of a weapon, petitioner nonetheless seeks to support his claims by arguing that a portion of the final page of Gay's grand jury testimony transcript, possibly containing her statements regarding recovery of a pipe, is missing. (Docket no. 5, Petitioner's Reply in Support of Petition for Habeas Corpus ("Pet. Habeas Reply"), at 3; docket no. 2, Attachment 5, Ex. B-3, Excerpt of Grand Jury Transcript.) Although the final page of Marie Gay's grand jury testimony, page 29, does contain blank space at the top of the page, it is clear that this is merely the result of a photocopying error. Both the page number, normally located at the top right hand corner of the page, and the line numbers, which normally start at the top left side of the page, are positioned in the middle of the page, establishing that no testimony is missing is missing from the top of the page.

**\*23** In any event, it is well settled that claims of deficiencies in state grand jury proceedings are not cognizable on federal habeas review. *See Lopez v. Riley,* 865 F.2d 30, 32 (2d Cir.1989) (citing *United States v. Mechanik,* 475 U.S. 66, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986)); *Perez,* 2004 WL 307271, at \*3. As the Supreme Court held in *Mechanik:*

> [T]he petit jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt. Measured by the petit jury's verdict, then, any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt.

475 U.S. at 70. If there was any defect in the indictment against petitioner, such defect was harmless beyond a reasonable doubt.

Similarly, petitioner's claim that his trial counsel was ineffective for failing to seek dismissal of the indictment and failing to cross-examine Gay at trial regarding her alleged grand jury perjury, is without merit. *Under Strickland v. Washington,* 466 U.S. 668, 687-88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a defendant seeking to reverse a conviction based on a claim of ineffective assistance must demonstrate (1) that counsel's performance fell below an "objective standard of reasonableness" under "prevailing professional norms," and (2) that the alleged ineffectiveness resulted in prejudice.

A court considering a claim of ineffective assistance of counsel "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id .* at 689. In addition, in order to demonstrate prejudice, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Here, as discussed above, petitioner has not shown that Marie Gay perjured herself by testifying before the grand jury regarding recovery of a weapon. Thus, petitioner's trial counsel can not have been ineffective for failing to seek dismissal of the indictment against him on this basis or for failure to cross-examine Gay at trial regarding her alleged perjury before the grand jury. Petitioner's claim that his counsel was ineffective for failing to cross-examine Marie Gay during trial regarding the documents noting recovery of a weapon also is without merit, because "[d]ecisions about 'whether to engage in cross-examination, and if so to what extent and in what manner, are ... strategic in nature' and generally will not support an ineffective assistance claim." *Dunham v. Travis,* 313 F.3d 724, 732 (2d Cir.2002) (quoting *United States v. Nersesian,* 824 F.2d 1294, 1321 (2d Cir.1987)).

In any case, even if trial counsel's decision not to cross-examine Marie Gay at trial regarding the documents noting recovery of a weapon was unreasonable, petitioner suffered no prejudice from this error. As noted above, the evidence against petitioner, including the testimony of two eyewitnesses, 911 recordings and expert testimony,

was overwhelming. Petitioner has thus failed to show that he was prejudiced by any allegedly ineffective assistance provided by his counsel.

**\*24** In his reply brief in support of his habeas petition, petitioner also claims that his trial counsel was ineffective for failing to preserve his right to testify before the grand jury, a claim petitioner previously raised when appealing the denial of his § 440.10 motion. (*See* Pet. Habeas Reply at 2-3; docket no. 2, Ex. B-1, Affidavit in Support of Permission for Leave to Appeal, at 1) This claim was never properly presented to the state trial court, nor was it included in petitioner's habeas petition. Even if the court were to find that petitioner's cursory mentioning of his right to testify before the grand jury was a sufficient method of raising his claim, however, the claim is without merit because the right to testify before a grand jury is a statutorily created right under state law, not a federal constitutional guarantee, and failure of trial counsel to secure that right does not, by itself, establish ineffectiveness. *See* N.Y.Crim. Proc. Law § 190.50(5); *Cates v. Senkowski,* 02 Civ. 5957, 2003 WL 1563777, at \*2 (S.D.N.Y. Mar.17, 2003) ("The right to appear before the grand jury is secured by New York State criminal law, and not by the federal Constitution.") (citation omitted); *Mirrer v. Smyley,* 703 F.Supp. 10, 11-12 (S.D.N.Y.1989) ("The right to a grand jury is a matter of New York State law and as such is not reviewable on a petition for habeas corpus.") (citation omitted); *United States v. Ruiz,* 894 F.2d 501, 505 (2d Cir.1990) ("[I]t is well established that defendants have no [federal] constitutional right to appear before a grand jury .") (citing *United States v. Ciambrone,* 601 F.2d 616, 622-23 (2d Cir.1979)). Accordingly, to the extent that this claim is alleged, it is without merit.

For the foregoing reasons, the court finds that petitioner's claims of defective indictment and ineffective assistance of counsel are without merit. Accordingly, it is respectfully recommended that these claims be denied.

### D. *Ground Four: Excessive Sentence*

Petitioner was sentenced to a prison term of fifteen years. He argues that this sentence was unreasonable and excessive because the sentencing court did not consider

petitioner's good standing within the community, his employment record, the fact that he was married and provides for his two children, the "weak evidence" against him at trial, or the alleged grand jury perjury by Marie Gay. (Habeas Pet. at 11.)

"No federal constitutional issue is presented where ... the sentence is within the range prescribed by state law." *White v. Keane,* 969 F.2d 1381, 1383 (2d Cir.1992). *See also Thompson v. Lord,* 322 F.Supp.2d 300, 301 (E.D.N.Y.2004). The term of imprisonment for a person convicted of First Degree Manslaughter in New York State must be between five and twenty-five years. N.Y. Pen. Law § 70.02(3)(a). Petitioner's sentence falls within that range. Thus, because petitioner's sentence meets both statutory and constitutional prescriptions, the Court has no authority to modify petitioner's sentence. Accordingly, it is respectfully recommended that this claim is without merit and should be denied.

### III. CONCLUSION

**\*25** For the foregoing reasons, it is respectfully recommended that the petition for a writ of habeas corpus be denied. Any objections to this Report and Recommendation must be filed with United States District Court Judge Nicholas G. Garaufis within ten days of the date of its entry. Failure to object within ten days of the date of entry will preclude appellate review by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Small v. Secretary of Health and Human Servs.,* 892 F.2d 15 (2d Cir .1989). Any requests for extensions of time to file objections should be made to Judge Garaufis. The respondent is ordered to serve a copy of this Report and Recommendation on the petitioner and to file a declaration of service no later than June 27, 2007.

**SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2007 WL 4198255

WESTLAW © 2017 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 3205177
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Thomas WITT, Petitioner,
v.
Steven E. RACETTE, Respondent.

No. 10 Civ. 9180(JPO).
|
Aug. 7, 2012.

*MEMORANDUM AND ORDER*

J. PAUL OETKEN, District Judge.

**\*1** On September 20, 2006, Petitioner Thomas Witt ("Petitioner") was convicted after a jury trial of Assault in the Second Degree, a violation of New York Penal Law (the "Penal Law") § 120.05(2). The New York State Supreme Court sentenced Petitioner to a term of seven years with three years of post-release supervision. On November 22, 2010, Petitioner, proceeding *pro se,* filed the instant petition (Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, Dkt. No. 1 ("Petition")) for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 ("Section 2254"), on the grounds that: (1) the evidence was legally insufficient to support the conviction for Assault in the Second Degree; (2) it was error that the grand and petit juries were not informed that the witness against Petitioner was an accomplice as defined by New York Criminal Procedural Law ("N.Y.C.P.L.") § 60.22(2)(b); and (3) the sentence was harsh and excessive.

For the reasons set forth below, the Court denies Petitioner's *habeas corpus* petition.

## I. Background

### A. The Crime

According to the testimony presented at trial, Witt solicited sex from a female prostitute on March 14, 2006. (Trial Transcript, Dkt. No. 7 ("Trial Tr."), at 339, August 21, 2006.) The two traveled to the roof of a building where Witt demanded sex without payment. (*Id.*) When the

woman refused, Witt began punching and beating her. (*Id.* at 340.) Witt then grabbed the victim's head and banged it against the side of the door. (*Id.*) It was shown at trial that the victim suffered multiple contusions, scratches, a bump on the back of her head, and a swollen eye. (*Id.* at 344–45, 347–48.) The victim testified at trial that the injury to the back of her head was caused by Witt's banging her head against the right edge of the doorway to the roof's landing, which was made of concrete or brick. (*Id.* at 347–48.)

The victim testified that, while Witt was beating her, and with his hand grasping her throat, he demanded money. (*Id.* at 340.) In response to the victim's insisting that she did not have any money, Witt "started hitting [her] harder and ... started using both hands." (*Id.*) At trial, the victim testified that she was unaware that she had two dollars in her pocket when Witt took it from her. (*Id.*)

### B. Trial and Conviction

Petitioner was charged with one count of Robbery in the Second Degree, in violation of Penal Law § 160.10(2)(a), and one count of Assault in the Second Degree, in violation of Penal Law § 120.05(2).

Petitioner's trial was held on August 22, 2006. The Government presented testimony previously given by Petitioner on March 21, 2006. (Trial Tr. at 521–43.) The trial court found that Petitioner was dishonest when he claimed no involvement in the assault. (*See* Trial Tr. at 679–80; Sentence Transcript ("Sentence Tr."), appended to Trial Tr. at Dkt. No. 7, at 17–18 ("Mr. Witt tells such a story, at such a time, as he thinks will benefit him.").) In the March 21 testimony, Petitioner asserted that a man he knew from the neighborhood had asked him where he could find a prostitute. After taking the man to the prostitute, Petitioner asserted that he went to the back of the building to smoke crack cocaine and did not know what transpired in the building. (Trial Tr. at 526.) The evidence presented at trial directly contradicted these statements. (*Id.* at 331–520.) Petitioner did not call any witnesses at trial or present any evidence at trial. (Trial Tr.)

**\*2** The jury convicted Petitioner of Assault in the Second Degree for causing physical injury to the victim by means of banging her head against a concrete or brick doorway. (*Id.* at 679–80.) The jury acquitted Petitioner of Robbery in the Second Degree. (*Id.*) The court sentenced him to a determinate prison term of seven years to be followed by a

three-year term of post-release supervision. (Sentence Tr. at 19–20.)

**B. Petitioner's Post–Conviction Appeal**
On appeal in the New York Supreme Court Appellate Division, First Judicial Department, Petitioner argued that: (1) the evidence was insufficient to support the jury's verdict because the only evidence of the alleged injury suffered as a result of a dangerous instrument came from the witness's testimony unsupported by medical evidence; and (2) the imposed sentence was excessive given the discrepancy between the pretrial offer of a two-year sentence and Petitioner's serious psychiatric problems. (*Id.* at 12.) On November 18, 2008, the Appellate Division affirmed the judgment of conviction against Petitioner. *Witt,* 56 A.D.3d at 324, 868 N.Y.S.2d 18.

Petitioner sought leave to appeal to the New York Court of Appeals, raising both of the arguments he made to the Appellate Division. The State opposed that application. (*See* Declaration in Opposition, Dkt. No. 8 ("Decl. in Opp."), Ex. E.) On January 16, 2009, Associate Judge Graffeo of the New York State Court of Appeals summarily denied Petitioner's application for leave to appeal. *People v. Witt,* 11 N.Y.3d 931, 874 N.Y.S.2d 17, 902 N.E.2d 451 (2009).

Petitioner then filed with the state trial court a *pro se* motion, dated August 25, 2009, to vacate the judgment of conviction pursuant to N.Y. C.P.L. § 440.10. (Decl. in Opp., Ex. G.) Petitioner argued that the judgment against him should be vacated because neither the grand nor petit jury was charged that the testifying witness was an accomplice, making corroboration necessary under New York law for her testimonial statements. (*Id.*) Petitioner's argument was that, because the victim was a prostitute and Petitioner was attempting to obtain sexual services when the assault occurred, the victim was an accomplice as a matter of law. The court found that this argument had not been properly preserved at trial. On January 13, 2010, the New York County Supreme Court issued a summary order denying Petitioner's motion for re-argument. (*Id.,* Exs.J, H.)

On January 26, 2010, Petitioner sought leave to appeal the denial of his § 440.10 motion to the Appellate Division, First Department. (*Id.,* Ex. K.) The State opposed that application. On June 3, 2010, Justice DeGrasse of the

Appellate Division denied Petitioner leave to appeal. (*Id.,* Ex. M.)

On November 22, 2010, Petitioner filed the instant petition for a writ of *habeas corpus,* pursuant to Section 2254. Petitioner raises three grounds for *habeas* relief based on alleged errors by the State and the trial court. Petitioner argues (1) that the evidence was insufficient to support the jury's verdict; (2) that it was error for the grand and petit juries not to have been instructed that the witness against him was an accomplice as a matter of law, and that her testimony therefore required corroboration; and (3) that the imposed sentence was excessive.

**II. Timeliness**
*3 The petition was filed in a timely manner. With the passage of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") on April 24, 1996, Congress set a one-year statute of limitations for the filing of a petition for a writ of *habeas corpus* by a person in custody pursuant to a state court conviction. *See* 28 U.S.C. § 2244(d)(1). A judgment of conviction becomes final under AEDPA at the conclusion of the ninety-day period during which the petitioner could have sought *certiorari* review in the United States Supreme Court. *Williams v. Artuz,* 237 F.3d 147, 150–51 (2d Cir.2001). On January 16, 2009, Associate Judge Graffeo of the New York Court of Appeals denied Petitioner's application for leave to appeal. *Witt,* 11 N.Y.3d 931, 874 N.Y.S.2d 17, 902 N.E.2d 451. Pursuant to AEDPA, Petitioner's conviction became final ninety days later on April 16, 2009. Petitioner then had one year from April 16, 2009 to file his petition for *habeas* relief. *See* 28 U.S.C. § 2244(d)(1).

The AEDPA limitations period is tolled with the proper filing of an application for state post-conviction relief. *See* 28 U.S.C. § 2244(d)(2); *Smith v. McGinnis,* 208 F.3d 13, 17–18 (2d Cir.2000) (holding that one-year limitations period is suspended while properly filed applications for relief are pending in state court). In the instant case, Petitioner filed a *pro se* motion to vacate the judgment of conviction pursuant to N.Y. C.P.L. § 440.10 on August 25, 2009.[1] That application was pending from August 25, 2009 until the Appellate Division denied Petitioner leave to appeal on June 3, 2010, at which point further appellate review was unavailable.[2] As of June 3, 2010, Petitioner had 234 days, or until January 23, 2011, to file his petition

for *habeas corpus.* Petitioner filed his petition for *habeas* relief within the limitations period on November 22, 2010.

1    This was the date on which Petitioner handed his motion papers to prison officials. *See Ruiz v. Poole,* 566 F.Supp.2d 336, 340 n. 1 (S.D.N.Y.2008) (applying the "prison mailbox rule" to incarcerated *pro se* litigants and determining that the date a N.Y. C.P.L. § 440.10 motion is given to a correctional authority for mailing to a court represents the date on which the motion is "filed"); *see also Houston v. Lack,* 487 U.S. 266, 270, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988); *Nobel v. Kelly,* 246 F.3d 93, 97–98 (2d Cir.), *cert. denied,* 534 U.S. 866 (2001).

2    The AEDPA limitations period begins to run again from the date the state court issues a final order in a collateral proceeding, in which further appellate review is unavailable. *Sanders v. Senkowski,* 587 F.3d 543, 549 (2d Cir.2009).

### III. Legal Standards

#### A. *Habeas Corpus* in Federal Courts

A *habeas* petition is not a means to re-litigate every issue previously determined in state court. *Herrera v. Collins,* 506 U.S. 390, 400–01, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). A prisoner seeking *habeas* relief is required under Section 2254 to show by a preponderance of the evidence that he is being held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Thus, the burden of proof is placed on a petitioner seeking relief. *Jones v. Vacco,* 126 F.3d 408, 415 (1997). An intermediate appellate court's denial of a claim based upon a state procedural bar and in the alternative on the merits creates an independent bar to *habeas* review, precluding a federal court from reaching the merits on the same claim. *See, e.g., Brown v. Perlman,* No. 07 Civ. 8672, 2008 U.S. Dist. LEXIS 37546, at *36–60, 2008 WL 2009220 (S.D.N.Y. May 8, 2008).

A *habeas* court must defer to the assessments of the strength of the evidence and credibility of the witnesses that were made by the jury and may not substitute its own view of the evidence in their place. *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Maldonado v. Scully,* 86 F.3d 32, 35 (2d Cir.1996). However, if a federal court is convinced that a prisoner's custody has violated the Constitution then "that independent judgment should prevail." *Williams v.*

*Taylor,* 529 U.S. 362, 389, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

**\*4** According to AEDPA, a petitioner may obtain *habeas* relief only by showing that the state court decision (1) was "contrary to," or (2) involved "an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Section 2254(d)(1) applies only "with respect to claims adjudicated on the merits in state court." *Williams,* 529 U.S. at 412. The Second Circuit defines "adjudicated on the merits" to mean "a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground." *Sellan v. Kuhlman,* 261 F.3d 303, 311 (2d Cir.2001).

The Supreme Court has "construed the amended statute so as to give independent meaning to the terms 'contrary [to]' and 'unreasonable.' " *Jones v. Stinson,* 229 F.3d 112, 119 (2d Cir.2000). First, the "contrary to" clause permits a federal court to grant *habeas* relief if the underlying state-court holding contradicts the conclusion reached by the Supreme Court on a question of law or on a "set of materially indistinguishable facts." *Williams,* 529 U.S. at 412–13.

Second, the "unreasonable application" clause instructs a federal court to inquire "whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409. The standard used to evaluate this question is not so strong as to require that all reasonable jurists would agree that the state court erred, but requires a higher level of certainty than "merely erroneous." *Stinson,* 229 F.3d at 119 (quoting *Francis S. v. Stone,* 221 F.3d 100, 109 (2d Cir.2000)). The Supreme Court's AEDPA jurisprudence clarifies that whether a state court's decision was "unreasonable" must be assessed "in light of the record the court had before it." *Holland v. Jackson,* 542 U.S. 649, 652, 124 S.Ct. 2736, 159 L.Ed.2d 683 (2004). Thus, a Petitioner may obtain *habeas* relief if the federal court believes that a claim determined on the merits in state court "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

#### B. Exhaustion

Further, a federal court may not consider a *habeas corpus* petition unless the petitioner has exhausted all state judicial remedies. *See* U.S.C. § 2254(b)(1)(A); *see also Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Dorsey v. Kelly,* 112 F.3d 50, 52 (2d Cir.1997). A state remedy is considered exhausted when a petitioner has presented the federal constitutional claim asserted in the petition to the highest state court and thus adequately informed the court of both the legal and factual bases for the federal claim. *Picard,* 404 U.S. at 276–77; *Daye v. Attorney Gen. of State of N.Y.,* 696 F.2d 186, 191–92 (2d Cir.1982) (*en banc* ).

A petitioner may alert the state court to a claim's federal constitutional nature in one of three ways. First, a petitioner may explicitly argue that a federal constitutional right was violated by citing the Constitution directly. *Smith v. Duncan,* 411 F.3d 340, 348 (2d Cir.2005) (citing *Daye,* 696 F.2d at 194. Second, a petitioner may rely on pertinent federal or state cases employing constitutional analysis in similar factual situations. *Id.* Third, a petitioner may allege "a pattern of facts that [are] well within the mainstream of constitutional litigation." *Id.* New York courts have defined "well within the mainstream of constitutional litigation" to mean that the right being asserted is "well developed [and] established by a long line of cases" so that even if not explicitly noted, the state court is aware that a federal constitutional claim is being asserted. *Adams v. Scully,* 661 F.Supp. 58, 59 (S.D.N.Y.1987); *see also Daye,* 696 F.2d at 192–94.

### C. Procedurally Barred Arguments

**\*5** A petitioner is barred from litigating under Section 2254 claims that he could have raised but did not raise on direct appeal. Under N.Y. C.P.L. § 470.05(2), often referred to as New York's "contemporaneous objection rule," a criminal defendant must raise an issue before a trial court to preserve that issue for challenge on appeal. *Garvey v. Duncan,* 485 F.3d 709, 714–15 (2d Cir.2007) ("[Section] 470.05(2) is a firmly established and regularly followed New York procedural rule"); *Simpson v. Portuondo,* No. 01 Civ. 8744(WHP)(JCF), 2002 WL 31045862, at \*4 (S.D.N.Y. June 4, 2002). A timely protest must be sufficiently clear to draw the attention of the trial court to the specific issue to be preserved. *See* N.Y. C.P.L. § 470.05(2).

A petitioner may overcome a procedural bar in two ways. First, a petitioner may show both "cause and prejudice for the default" in preserving the claim. *Gray v. Netherland,* 518 U.S. 152, 162, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996) (citation omitted). Alternatively, a petitioner may assert that a failure of the federal court to consider the claim would result in a "fundamental miscarriage of justice" because the petitioner is actually innocent of the crime. *Coleman v. Thompson,* 501 U.S. 722, 748, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). New reliable evidence that was not previously presented at trial— whether physical evidence, exculpatory scientific evidence, or trustworthy eyewitness accounts—must support the petitioner's assertion of a miscarriage of justice in order for a court to accept the claim as credible. *See Schlup v. Delo,* 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995); *see also Rivas v. Fischer,* No. 10–1300–pr, 2012 U.S.App. LEXIS 13974, 2012 WL 2686117 (2d Cir. July 9, 2012).

### IV. Analysis

The Court first addresses the exhaustion of Petitioner's claims, followed by the disposition of each claim in turn.

### A. Exhaustion of Petitioner's Claims

Petitioner exhausted the first claim raised in his *habeas* petition concerning the insufficiency of evidence and the part of his second claim that concerns improper instructions to the petit jury. However, Petitioner failed to exhaust his claims concerning improper instructions to the grand jury and the excessiveness of his sentence.

Petitioner raised the insufficiency-of-evidence claim on appeal and again in his application for leave to appeal to the New York Court of Appeals. Similarly, Petitioner raised his claim regarding the petit jury charge in his N.Y. C.P.L. § 440.10 motion. Raising these two claims as Petitioner did below was sufficient for AEDPA exhaustion because both fall "within the mainstream of constitutional litigation." *See Jackson,* 443 U.S. at 318–22. Thus, his first claim regarding the insufficiency of evidence is exhausted, as is the portion of his second claim regarding petit jury instructions.

Petitioner failed to exhaust adequately his claims concerning improper legal instructions to the grand jury and excessiveness of his sentence. Although Petitioner raised the issue of grand jury instructions in his N.Y. C.P.L. § 440.10 motion (Decl. in Opp., Ex. G), the claim remains unexhausted because Petitioner relied on a state corroboration requirement for accomplice testimony

under N.Y. C.P.L. § 60.22 rather than basing his claim on federal constitutional grounds. Whereas errors arising from petit jury proceedings are within the mainstream of constitutional litigation, those arising from state grand jury proceedings are questions of state law and do not alert a state court to any federal constitutional claim. *See LanFranco v. Murray,* 313 F.3d 112, 118 (2d Cir.2002).

**\*6** The excessive-sentence claim is unexhausted because Petitioner relied on state procedural law to assert that the Appellate Division may reduce or modify a sentence "as a matter of discretion in the interest of justice" or because a sentence was "unduly harsh or severe." *See* N.Y. C.P.L. § 470.15(3)(c). Petitioner's citation of the Fourteenth Amendment in the point heading of his Appellate Division brief on direct appeal was insufficient for AEDPA exhaustion purposes because the substance of his argument relied on state procedural law; therefore, the claim is not cognizable for *habeas* review. Additionally, the cases cited in support of Petitioner's argument that his sentence was excessive do not employ "constitutional analysis" as is necessary to apprise the state court of a petitioner's federal constitutional claims. *See Scullark v. Greiner,* No. 02 Civ. 1834, 2005 WL 3454730, at \*2–3 (S .D.N.Y. Dec. 15, 2005) ("[M]ere references to 'due process' and 'fair trial' are insufficient if the argument rests on issues of state law."); *see also Pertrucelli v. Coombe,* 735 F.2d 684, 688–90 (2d Cir.1984).

### B. Sufficiency of the Evidence

As discussed above, Petitioner has exhausted state remedies as to his insufficiency-ofevidence claim. However, Petitioner did not properly preserve that claim, and it is also without merit.

### 1. Procedural Bar

New York's contemporaneous objection rule requires that a petitioner make a specific and timely objection to preserve a claim. N.Y. C.P.L. § 470.05(2). Here, the Appellate Division rejected Petitioner's claim for failure to comply with the contemporaneous objection rule and thereby relied on an independent and adequate state procedural ground. Where a state court's judgment denies a claim based on an adequate and independent state procedural ground, federal *habeas* review of that claim is usually prohibited. *Coleman,* 501 U.S. at 729–30; *see also Restrepo v. Kelly,* 178 F.3d 634, 637–38 (2d Cir.1999).

### 2. Failure to Overcome Procedural Bar

The Court may consider Petitioner's insufficiency-of-evidence clam only if he is able to show: (1) cause for his default and actual prejudice or (2) that the Court's failure to consider his claim will result in a fundamental miscarriage of justice. *See Gray,* 518 U.S. at 162. Cause is established when "some objective factor external to the defense" impeded the petitioner's efforts to comply with the state procedural rule. *Coleman,* 501 U.S. at 753. The Supreme Court has explained three ways that a petitioner may show cause for a procedural default: (1) the factual or legal basis for a claim was not reasonably available; (2) interference by state officials made compliance with the procedural rule impracticable; or (3) Plaintiff suffered ineffective assistance of counsel. *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). Petitioner fails to allege such cause for his procedural default. Because a petitioner must establish both cause and prejudice, the failure to show cause vitiates the claim. *See Bossett v. Walker,* 41 F.3d 825, 829 (2d Cir.1994) (not considering prejudice after the petitioner could not demonstrate cause).

**\*7** To demonstrate a fundamental miscarriage of justice, one must demonstrate that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496.

Petitioner has not shown—indeed, he has not attempted to show—cause and prejudice for his default or that failure to consider his claim regarding insufficiency of evidence presented against him at trial would result in a fundamental miscarriage of justice. As such, this claim is procedurally barred.

### 3. Substantive Legal Standard

A federal court reviewing a claim challenging the sufficiency of the evidence underlying a state-court conviction must "determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson,* 443 U.S. at 318. A successful petition must show that no rational trier of fact could have determined guilt beyond a reasonable doubt. *Einaugler v. Sup.Ct. of the State of N.Y.,* 109 F.3d 836, 839 (2d Cir.1997); *Bossett,* 41 F.3d 830 (quoting *Jackson,* 443 U.S. at 324). As such, a defendant challenging the sufficiency of evidence bears a "very heavy burden." *Ponnapula v. Spitzer,* 297 F.3d 172, 179 (2d Cir.2002); *see United States*

*v. Pipola,* 83 F.3d 556, 564 (2d Cir.1996) (citing *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942)).

The *habeas* court may not substitute its evaluation of the evidence for that of the jury. *See Jackson,* 443 U.S. at 318–19; *Maldonado,* 86 F.3d at 35; *Gruttola v. Hammock,* 639 F.2d 922, 928 (2d Cir.1981) ("We cannot say that no rational jury could have found guilt beyond a reasonable doubt on all of the evidence," despite significant doubt cast on the evidence supporting defendant's guilt.). The jury's conviction must stand so long as "any competent evidence went to the fact-finders from which they could infer guilt beyond a reasonable doubt." *See Reid v. Miller,* No. 02 Civ. 2895(LTS)(MDF), 2003 WL 22383097, at *6 (S.D.N.Y. Oct. 20, 2003) (quoting *Martin v. Scully,* 748 F.Supp. 159, 164 (S.D.N.Y.1990)).

A court addressing a *habeas* petition must determine the elements of the underlying crime based on state law when considering the sufficiency of the evidence of a state conviction. *See Ponnapula,* 297 F.3d at 179 (quoting *Quartararo v. Hanslmaier,* 186 F.3d 91, 97 (2d Cir.1999), *cert denied,* 528 U.S. 1170, 120 S.Ct. 1196, 145 L.Ed.2d 1100 (2000)). Under New York Penal Law, to establish that Petitioner was guilty of Assault in the Second Degree, the trial court had to find that Petitioner, "[w]ith intent to cause physical injury to another person, ... cause[d] such injury to such person, or to a third person by means of a deadly weapon or dangerous instrument." Penal Law § 120.05(2).

Under New York law, "physical injury" is defined as "impairment of physical condition or substantial pain." *Id.* § 10.00(9). Furthermore, "physical injury" requires no particular degree of pain or impairment. *People v. McDowell,* 28 N.Y.2d 373, 375, 321 N.Y.S.2d 894, 270 N.E.2d 716 (1971). So long as the pain is "more than slight or trivial" it is considered sufficient to constitute physical injury under New York law. *People v. Chiddick,* 8 N.Y.3d 445, 447, 834 N.Y.S.2d 710, 866 N.E.2d 1039 (2007). A "dangerous instrument" is defined as "any instrument, article or substance ... which, under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or other serious physical injury." Penal Law § 10.00(13).

**4. Merits**

**\*8** Preservation aside, Petitioner's insufficiency-of-evidence claim is without merit. In support of his insufficiency-of-evidence claim, Petitioner contends that there was no basis for the jury to find him guilty of second degree assault because, although evidence existed for the injuries sustained by the victim to her face and neck, no medical evidence supported the claim of injury to the back of her head, caused by a "dangerous instrument." (Brief for DefendantAppellant ("Witt App. Br."), appended as Ex. A to Decl. in Opp.)

Even in the absence of corroboration specific to the victim's head injury resulting from Witt's banging it against the edge of the concrete or brick doorway, it was sufficient that there was corroboration on the existence of the concrete or brick doorway and various injuries sustained to the victim's face and body. (*See* Trial Tr. at 347.) It was established at trial that Petitioner had used the edge of the doorway near the landing to inflict physical injury to the back of the victim's head. (*Id.*) Petitioner failed to make a clear and convincing showing sufficient to overcome the First Department's determination that the evidence of physical injury was sufficient to support conviction. *Witt,* 56 A.D.3d at 324–25, 868 N.Y.S.2d 18. The Appellate Division held that Petitioner's claim concerning insufficiency of the evidence presented at trial was unpreserved and, as an alternative holding on the merits, found that the evidence was legally sufficient. *Id.* Considering the evidence presented at trial, this Court is not persuaded that "it is more likely than not that no reasonable juror would have convicted." *Schlup,* 513 U.S. at 329. Accordingly, Petitioner's insufficiency-of-evidence claim for *habeas* relief fails and must be denied.

**C. Jury Instructions**

Petitioner argues that the instructions to the petit and grand juries were improper because neither was instructed that the victim of the assault was an accomplice as a matter of law. These arguments are procedurally barred and are, in any event, without merit.

**1. Procedural Bar**

The Appellate Division rejected Petitioner's jury-instruction claims, holding that they were "not properly preserved at trial." (Decl. in Opp., Ex. H.) In rejecting these claims, the court relied on the procedural bar set forth in N.Y. C.P.L. § 440.10(3)(a) because Petitioner failed to raise the issue concerning accomplice

corroboration at trial or on appeal. *See* N.Y. C.P.L. § 440.10(3)(a). The court held in the alternative that Petitioner's argument "was factually and legally without merit." (Decl. in Opp., Ex. H.)

Federal courts have recognized Section 440.10(3)(a) as an adequate and independent procedural bar that precludes federal *habeas* review. *Cameron v. People of the State of New York,* No. 01 Civ. 9988(BSJ) (GWG), 200 WL 31898076, at *7 (S.D.N.Y. Dec. 30, 2002) ("C.P.L. § 440.10(3)(a) likewise constitutes an adequate and independent state ground that prevents a federal court from reviewing the merits of the claim."). The Appellate Division was the final court to address the issue in this case, and it expressly rested its judgment on procedural default grounds. *Witt,* 56 A.D.3d at 324–25, 868 N.Y.S.2d 18; *see also* N.Y. C.P.L. § 470.05. This determination procedurally bars Petitioner's claim from *habeas* review because it rests on both independent and adequate state grounds. *Velasquez v. Leonardo,* 898 F.2d 7, 9 (2d Cir.1990) ("[F]ederal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim.").

**\*9** Moreover, errors arising from state grand jury proceedings are questions of state law because the federal right to a grand jury in a criminal case was not incorporated to the states through the Fourteenth Amendment. *See* LanFranco, 313 F.3d at 118. A federal court, therefore, may not review such errors on a petition for a writ of *habeas corpus. See id.;* Mirrer v. Smyley, 703 F.Supp. 10, 11–12 (S.D.N.Y.1989). It is well established that any potential defect in a grand jury proceeding is cured by a subsequent conviction by a trial court jury where the jury was properly instructed. *Lopez v. Riley,* 865 F.2d 30, 31–33 (2d Cir.1989) (holding that claims of error in grand jury proceedings may not be raised where a properly instructed jury convicted at trial); *see also* United States v. Mechanik, 475 U.S. 66, 68, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986) ("[M]easured by the petit jury's verdict, ... any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt.").

Unlike in *Lopez,* Petitioner argues that both the grand and petit juries were improperly instructed. (Decl. in Opp., Ex. G.) This argument is not dispositive because

a petitioner must establish also that the erroneous jury instructions violated a right guaranteed him by federal law and "so infected the entire trial that the resulting conviction violated due process." *Davis v. Strack,* 270 F.3d 111, 123 (2d Cir.2011); *see also* Cupp v. Naughten, 414 U.S. 141, 146–47, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973). Petitioner has not done so.

Although Petitioner has raised a new argument that the grand and petit juries were not charged that the witness was an accomplice as a matter of law, it is hardly fathomable that, based on this argument, "no reasonable juror would have convicted," especially because no new evidence has been introduced. *See* Schlup, 513 U.S. at 329.

### 2. Failure to Overcome Procedural Bar

This Court may consider Petitioner's claims concerning the legal instructions to the grand and petit juries only if he is able to overcome the procedural bar to these claims by showing: (1) cause for his default to raise his claims at trial and actual prejudice, or (2) that the Court's failure to consider his claim will result in a fundamental miscarriage of justice. *See* Gray, 518 U.S. at 162. Here, Petitioner fails to show—or even attempt to show—cause or prejudice resulting in a procedural bar of his claims.

Additionally, under federal law a defendant may be convicted based on the uncorroborated testimony of an accomplice witness without violating the Due Process clause, "so long as that testimony is not incredible on its face and is capable of establishing guilt beyond a reasonable doubt." *United States v. Gordon,* 987 F.2d 902, 906 (2d Cir.1992); *see also* United States v. Parker, 903 F.2d 91, 97 (2d Cir.1990); *Smithwick v. Walker,* 758 F.Supp. 178, 186 (S.D.N.Y.1991) ("[T]he requirement of accomplice corroboration is solely a product of New York State law.") Since there is no federal constitutional right to corroboration parallel to the New York State right, mere lack of corroboration of an accomplice's testimony does not, *per se,* violate the federal Constitution.

### 3. Merits

**\*10** On the merits, this Court does not agree with the argument that the witness in Petitioner's trial was an accomplice as a matter of law. Under N.Y. C.P.L. § 60.22(2), an accomplice is "a witness in a criminal action who according to evidence adduced in such action, may reasonably be considered to have participated in: [a]n

offense based upon the same or some of the same facts or conduct which constitute the offense charged." N.Y. C.P.L. § 60.22(2). Here, the offense charged was assault, not prostitution. It would require quite a logical stretch to argue that the victim's agreement to engage in prostitution was based on the same facts as Petitioner's assault of her. The agreement between the victim and Petitioner to engage in illicit sex certainly was not the conduct that constituted the offense charged.

Petitioner has not shown cause and prejudice for his default in preserving these claims or that failure to consider his jury-instruction claims would result in a fundamental miscarriage of justice. The claims also lack merit. Thus, Petitioner presents no basis for *habeas* relief on these claims.

### D. Excessive Sentence

Petitioner has not preserved his excessive-sentence claim because, on direct appeal, he relied on state procedural law instead of claiming a federal constitutional violation. But preservation aside, Petitioner's excessive-sentence claim provides no basis for relief because it is not cognizable as a federal constitutional claim.

#### 1. Substantive Legal Standard

In general, "[n]o federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law." *White v. Keane,* 969 F.2d 1381, 1383 (2d Cir.1992) (*per curiam* ) (internal quotation marks and citation omitted). Under such circumstances, a petitioner's claim that his sentence is harsh and excessive does not present a basis for *habeas corpus* relief. *Id.; see also Bellavia v. Fogg,* 613 F.2d 369, 373–74, n .7 (2d Cir.1979) (long mandatory sentence imposed pursuant to statute did not constitute cruel and unusual punishment). In order to present an excessive-sentence claim under the Eighth Amendment that is cognizable on *habeas* review, a petitioner must allege that the statute under which he was sentenced is itself unconstitutional. *See United States v. Dawson,* 400 F.2d 194, 200 (2d Cir.1968); *see also Fielding v. LeFevre,* 548 F.2d 1102, 1108 n. 12 (2d Cir.1977) ("The Eighth Amendment is not a general grant to the federal courts of power to review sentences. Rather, it allows the review of the punishment specified by statute...."); *Ross v. Brown,* No. 09 Civ. 5838(PKC)(DF), 2011 WL 3874872, at *9 (S.D.N.Y. May 3, 2011). A punishment is considered "excessive," and thus unconstitutional, only if the Petitioner is able to show: (1) that it "makes no measurable contribution to acceptable goals of punishment and hence is nothing more than the purposeless and needless imposition of pain and suffering; or (2) [that it] is grossly out of proportion to the severity of the crime." *Harmelin v. Michigan,* 501 U.S. 957, 1013, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991); *see also United States v. Gonzalez,* 922 F.2d 1044, 1053 (2d Cir.1991).

#### 2. Merits

**\*11** Petitioner's conviction for Assault in the Second Degree, a Class D Violent Felony (*see* Penal Law §§ 70.02(1)(c); 120.05(2)), required the trial court to sentence Petitioner to a determinate sentence within the range of two to seven years (Penal Law § 70.02(3)(c)), as well as a term of post-release supervision ranging from three to ten years (Penal Law § 70.45). The trial court did not abuse its judicial discretion in sentencing the petitioner to a prison term of seven years, to be followed by a three-year post-release supervision period, because those time periods are within the state law sentencing guidelines. *See* Penal Law §§ 70 .02(1)(c); 120.05(2).

Petitioner's sentence does not provide a basis for *habeas* relief because it is firmly within the statutory range provided to the trial court by New York law and because Petitioner has not challenged the sentencing statute itself as unconstitutional. Petitioner has not provided arguments asserting either that the imposed sentence is a "needless imposition of pain and suffering" or that the sentence was "grossly out of proportion with the severity of the crime."

The Appellate Division perceived no basis for reducing Petitioner's sentence, *People v. Witt,* 56 A.D.3d 324, 868 N.Y.S.2d 18 (N.Y.App.Div.2008), and neither does this Court.

### V. Conclusion

For the foregoing reasons, Thomas Witt's petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 is DENIED.

A certificate of appealability will not issue because Petitioner has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2); Fed. R.App. P. 22(b). The Court certifies pursuant to 28

U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith.

Further, Petitioner's request for counsel (Dkt. No. 17) is DENIED.

The Clerk of Court is directed to terminate this case.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 3205177

---

**End of Document**                                    © 2017 Thomson Reuters. No claim to original U.S. Government Works.

2009 WL 891763
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Bruce KING, Petitioner,

v.

William E. PHILLIPS, Superintendent, Green
Haven Correctional Facility, Respondent.

No. 03–CV–6045 (NGG)(RB).
|
March 31, 2009.

West KeySummary

1   **Criminal Law**
    👉 **Identity of Accused**

    Even if a voice identification had been
    impermissibly suggestive, the procedure was
    independently reliable. Defendant argued
    that the unrecorded voice identification
    should have been suppressed in his trial for
    robbing his previous work place. The voice
    identification was necessitated by the fact
    that the perpetrator had been masked during
    the robbery. However, the identification was
    merely confirmatory since the identifying
    witness had worked with the defendant for
    years and defendant acknowledged he was
    well acquainted with the witness.

    3 Cases that cite this headnote

**Attorneys and Law Firms**

Bruce King, Malone, NY, pro se.

Donna Aldea, Ushir Pandit, District Attorney, Queens
County, Kew Gardens, NY, for Defendant.

**MEMORANDUM & ORDER**

NICHOLAS G. GARAUFIS, District Judge.

**\*1** Petitioner Bruce King ("Petitioner"), proceeding *pro
se,* seeks a petition for a writ of habeas corpus pursuant
to 28 U.S.C. § 2254. On November 6, 2008, Magistrate
Judge Lois Bloom issued a Report and Recommendation
("R & R") recommending that the court deny the petition.
(Docket Entry # 32.) Petitioner timely filed Objections to
the R & R. (Docket Entry # 36.) Pursuant to 28 U.S.C.
§ 636(b)(1) and Rule 72(b) of the Federal Rules of Civil
Procedure, this court has conducted a *de novo* review
of those portions of the R & R to which Petitioner has
objected. For the reasons discussed below, Petitioner's
Objections to the R & R are denied, and Judge Bloom's R
& R is adopted in full.

**I. PETITIONER'S OBJECTIONS**

This court has conducted a *de novo* review of the portions
of the R & R to which Petitioner has objected. [1] 28 U.S.C.
§ 636(b) (1); Fed.R.Civ.P. 72(b). The court presumes
familiarity with the R & R and addresses each of
Petitioner's Objections in turn.

[1]  The court has reviewed those portions of the R & R
     to which Petitioner has not objected and finds them
     to be thorough, well-reasoned, and well-founded
     in applicable law. *See Urena v. New York,* 160
     F.Supp.2d 606, 609–10 (S.D.N.Y.2001) (where no
     timely objection has been made, the "court need only
     satisfy itself that there is no clear error on the face of
     the record.").

**A. Judge Bloom's Reliance on the State–Court Record**
In his Objections, Petitioner contends that Judge Bloom's
report was "based on an unreasonable determination
of the facts" as set forth in the state-court record.
(Obj.2, 8, 4.) Under 28 U.S.C. § 2254, the court must
presume the correctness of the trial court's factual findings
unless Petitioner rebuts that presumption by "clear and
convincing evidence." 28 U.S.C. § 2254(d)(2), (e)(1). The
R & R describes the state-court record in detail and then
considers certain facts with respect to the specific claims
raised in the Petition, for example, that the voice lineup
was unduly suggestive. (R & R 8–9.) Because Petitioner
addresses many of the R & R's findings on the merits in
his Objections, the court addresses each Objection in turn
below. As to Petitioner's contentions that Judge Bloom
erred by relying on the state-court record, after *de novo*
review, this court concludes that Petitioner has not met
his burden of "clear and convincing evidence" to rebut the

presumption of the correctness of the trial court's factual findings.

### B. Voice Lineup

Petitioner objects to Judge Bloom's finding that he did not rebut the presumption of correctness of the state court's factual findings regarding the voice lineup. (Obj.8.) Specifically, he contends that the federal habeas review of whether the voice procedures were unduly suggestive was prejudiced by reliance "upon the fabricated evidence of an alleged 'confirmatory' visual identification," which was "not resolved" during the state-court proceedings. (*Id.* at 9.)

As the R & R correctly sets forth, courts use a two-step inquiry to evaluate out-of-court identification procedures. *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *Velazquez v. Poole,* No. 04–CV–478 (ENV)(CLP), 2007 WL 3240550, at *23 (E.D.N.Y. Oct. 30, 2007). First, a court must determine whether the procedure was impermissibly suggestive, and if so, whether it was so suggestive as to raise "a very substantial likelihood of irreparable misidentification." *Neil,* 409 U.S. at 198; *see United States v. Wong,* 40 F.3d 1347, 1359 (2d Cir.1994). If the procedure was unnecessarily suggestive, the court must then determine whether the identification was independently reliable. *Manson v. Braithwaite,* 432 U.S. 98, 110–14, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Raheem v. Kelly,* 257 F.3d 122, 133 (2d Cir.2001). In short, identification evidence is admissible if: (1) the procedure was not suggestive, or (2) the witness's identification has independent reliability. *See Raheem,* 257 F.3d at 133 (citation omitted).

**\*2** The R & R describes the voice identification procedures—both the testimony regarding the voice identification procedures and the subsequent physical lineup at which the witness identified Petitioner—and correctly applies the legal standard. The R & R notes that "that the voice lineup was not recorded does not render the lineup impermissibly suggestive." (R & R 10, *quoting People v. Wallington,* 271 A.D.2d 384, 708 N.Y.S.2d 60 (N.Y.App. 1st Dep't 2000).) The R & R also notes that that "even if the voice identification had been suggestive, the [state] Court found that the procedure was independently reliable," noting that the state court had found that the identification was "merely confirmatory, since the identifying witness had worked with the defendant for years, and the defendant acknowledged that

he was well acquainted with the witness." (*Id.* at 9, 10, 708 N.Y.S.2d 60 (*quoting People v. King,* 291 A.D.2d 413, 736 N.Y.S.2d 904 (N.Y.App. Div.2d Dep't 2002).) The R & R concludes that Petitioner did not rebut the presumption of correctness of the trial court's factual findings by clear and convincing evidence, 28 U.S.C. § 2254(d)(2), (e)(1), and that the state court's decision that the lineup was not suggestive was neither contrary to nor an unreasonable application of clearly established federal law. (R & R 10, 11.)

Petitioner's Objection is without merit. Following *de novo* review, the court agrees with Judge Bloom's conclusion that Petitioner has not rebutted the presumption of correctness of the state court's factual findings by clear and convincing evidence as required by Section 2254. (R & R 10.) Moreover, even if Petitioner could show that the evidence of the "confirmatory" visual lineup was fabricated, Petitioner has not shown that the voice identification procedures were suggestive such that they raised a "very substantial likelihood of irreparable misidentification." *Neil,* 409 U.S. at 198. Under federal law, if the procedure was not suggestive, the identification presents no problems regarding admissibility. *See Jarrett v. Headley,* 802 F.2d 34, 42 (2d Cir.1986); *Ortiz v. Artus,* No. 06–CV–6444 (DAB)(JCF), 2008 WL 2369218, at *6 (S.D.N.Y. Jun. 9, 2008). Accordingly, the state court's decision that the lineup was not suggestive was neither contrary to nor an unreasonable application of clearly established federal law. Therefore, the court adopts in full Judge Bloom's recommendation that this claim be denied.

### C. Grand Jury

The R & R rejects Petitioner's claims that the prosecutor's alleged misconduct impaired the integrity of the grand jury proceedings. (R & R 13.) First, Judge Bloom found that this claim is unexhausted and thus procedurally barred; second, she found that even if the claim were reviewed on the merits, it should be denied, because a claim of deficiencies in the state grand jury proceedings is not cognizable on federal habeas review where, as here, Petitioner was found guilty by a petit jury. (*Id.*) In his Objections, Petitioner asserts that he "agrees with the Magistrates deduction. However, [he] contends that prosecution's actions and inactions during the grand jury proceeding contributed to the pattern of cumulative misconduct, which impaired the integrity of every subsequent proceeding and part of the prosecution's conspiracy to deprive him of due process ...." (Obj.10.)

**\*3** Following *de novo* review, the court concludes that the R & R correctly concludes that Petitioner's claim is procedurally defaulted. First, the claim was not properly exhausted in state court, *Baldwin v. Reese,* 541 U.S. 27, 29, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004); *Jackson v. Edwards,* 404 F.3d 612, 618 (2d Cir.2005); second, Petitioner no longer has any procedure available in state court to raise this claim, *Aparicio v. Artuz,* 269 F.3d 78, 90 (2d Cir.2001); and third, Petitioner has not demonstrated cause, prejudice, or a showing of actual innocence that would entitle him to habeas review despite a procedural default, *see Dretke v. Haley,* 541 U.S. 386, 388, 124 S.Ct. 1847, 158 L.Ed.2d 659 (2004).

The court also agrees with Judge Bloom's finding that even if claim were reviewable on the merits, such a claim is not cognizable on federal habeas review, because Petitioner was found guilty by a petit jury. *See United States v. Mechanik,* 475 U.S. 66, 70, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986) ("The petit jury's verdict of guilty beyond a reasonable doubt demonstrates *a fortiori* that there was probable cause to charge the defendants with the offenses for which they were convicted. Therefore, the convictions must stand despite the [grand jury] rule violation."); *United States v. Eltayib,* 88 F.3d 157, 173 (2d Cir.1996) (interpreting *Mechanik* and holding that a claim of prosecutorial misconduct fails because "a guilty verdict by a petit jury remedies any possible defects in the grand jury indictment."); *see also Lopez v. Riley,* 865 F.2d 30, 32 (2d Cir.1989) ("If federal grand jury rights are not cognizable on direct appeal where rendered harmless by a petit jury, similar claims concerning a state grand jury proceeding are *a fortiori* foreclosed in a collateral attack brought in a federal court."). While Petitioner asserts in his Objections that the prosecutorial misconduct regarding the grand jury "contributed to the pattern of cumulative misconduct," his claim—which in any event is procedurally defaulted—would be foreclosed by the case law holding that a claim of prosecutorial misconduct in the grand jury proceedings is not cognizable on habeas review. The court thus adopts Judge Bloom's R & R regarding this claim in full.

### D. Right to Counsel

Petitioner asserts in his Objections that Judge Bloom "errs in determining that Petitioner's right to counsel was not violated, warranting suppression" of statements Petitioner made to Internal Affairs Bureau ("IAB")

officers and a gun recovered on the basis of those statements. (Obj.10.)

Under federal law, the right to assistance of counsel is "offense specific" and "attaches only to charged offenses." *Texas v. Cobb,* 532 U.S. 162, 164, 121 S.Ct. 1335, 149 L.Ed.2d 321 (2001). While a defendant may have a Sixth Amendment right to counsel in a case where the adversarial process has been initiated against him, that right does not attach to an unrelated case in which the adversarial process has not been initiated. [2] *Rivera v. Conway,* 350 F.Supp.2d 536, 548 (S.D.N.Y.2004).

[2]    As Judge Bloom points out in the R & R, the New York right to counsel is broader than the federal right to counsel. (R & R 16.) Under New York law, once a defendant is represented by counsel on the charge for which he is in custody, "custodial interrogation about any subject, whether related or unrelated to the charge upon which representation is sought or obtained, must cease." *People v. Burdo,* 91 N.Y.2d 146, 149, 667 N.Y.S.2d 970, 690 N.E.2d 854 (1997) (quotation omitted). To the extent that a state-law claim is broader than the analogous federal right, the state-law claim is not cognizable on federal habeas review. (R & R 16 (citing cases).)

**\*4** Judge Bloom found that Petitioner's right to counsel was not violated, because while incarcerated for the robbery case that is the subject of this petition, Petitioner was interviewed by IAB detectives at his own request and voluntarily gave them information about two unrelated cases. (R & R 16.) The purpose of the interview was to evaluate the substance of Petitioner's allegation against Officer Meehan, the arresting officer in the robbery case; Petitioner alleged that Officer Meehan had failed take action on a double homicide about which Petitioner had given him information. (*Id.*) Petitioner told the detectives that he had the gun that was used in the double homicide, and arranged for the IAB detectives to obtain the gun. (*Id.* at 2.) The R & R notes that the IAB detective testified that he did not learn the reason Petitioner was in custody until the day after he conducted his interview, and once the detectives determined that the recovered gun was not used in the double homicide, they took no further action. (*Id.* at 16.) More than a year later, when the prosecutor for the robbery case called the IAB detectives to ask about any potential *Rosario* material, they produced Petitioner's gun to her. (*Id.*) Judge Bloom concluded that "although the gun was ultimately used against him in the ... robbery case,

under the facts presented here, where plaintiff volunteered the information and the gun to the IAB detectives, there was no Sixth Amendment violation of Petitioner's right to counsel." (*Id.* at 16–17.)

Following *de novo* review, this court similarly concludes that the state court's decision was not contrary to or an unreasonable application of clearly established federal law. The court thus adopts this portion of the R & R in full.

### E. Trial Court's Exclusion of Testimony

In his petition, Petitioner had contended that his due process right to present a defense was violated when the state court precluded McHugh from testifying, and that although he served subpoenas on various witnesses, including McHugh, no one appeared in response to the subpoenas. (R & R 17.) Judge Bloom noted that the state court directed Petitioner to be ready to present his defense on a certain date, and when petitioner was not ready on that date, the court granted an adjournment to the following date. (*Id.* at 18.) The next morning, only one of the eleven defense witnesses testified. (*Id.*)

Judge Bloom recommended that Petitioner's claim be denied. First, she reasoned that Petitioner failed to demonstrate that the court's actions were arbitrary or that his defense was substantially impaired by the court's denial of his request for another adjournment, and even if he could do so, he fails to show that the testimony of any of those witnesses could be exculpatory; second, she concluded that any evidentiary error was harmless. (*Id.* at 19–20.) In particular, Judge Bloom concluded, based on the entire record, that: (1) the judge provided petitioner with ample opportunity to have his witnesses present in court; (2) the record is unclear as to why the subpoena for McHugh was rejected, though Respondent asserts that Petitioner misspelled the name "McHugh"; (3) Petitioner's allegation that McHugh was a "crucial" witness was conclusory and not supported by the record; and (4) in any event, any evidentiary error did not have a substantial and injurious effect in determining the jury's verdict. (*See* R & R 19–20.)

**\*5** In his Objections, Petitioner contends that "[t]he Magistrate erroneously rejects the Petitioner's due process violation as to being denied the right to present a defense." (Obj.11.) In particular, he contends that "Petitioner tried to prepare his defense in a fraction of

the time afforded to the prosecution" and that Detective McHugh, a witness whom the trial court precluded from testifying, "was a prosecutor's witness and Petitioner never played a role in preparing the subpoenas." (*Id.* at 11–12.)

As to Petitioner's Objections, Petitioner's assertion that he had far less time to prepare his defense compared to the time spent preparing by the prosecution does not address Judge Bloom's R & R and cannot be construed to be an objection to it. Regarding Petitioner's second assertion, that Petitioner never played a role in preparing subpoenas, the court notes that regardless of whether Petitioner played a role in preparing subpoenas, Petitioner has not contradicted Judge Bloom's conclusions that the trial court judge provided Petitioner with ample opportunity to have his witnesses in court, that Petitioner's allegation that McHugh was a "crucial" witness was conclusory and unsupported by the record, and that any error was harmless. Upon *de novo* review, the court agrees with Judge Bloom's recommended findings of fact and law and adopts this portion of the R & R in full.

### II. CONCLUSION

For the reasons above, after conducting a *de novo* review of those portions of the R & R to which Petitioner has objected, Judge Bloom's R & R is adopted in its entirety. As Petitioner has not made a substantial showing of the denial of any constitutional right, no certificate of appealability shall issue. Pursuant to 28 U.S.C. § 1915(a), *in forma pauperis* status is denied for the purposes of any appeal. The Clerk of Court is directed to close this case.

SO ORDERED.

### *REPORT AND RECOMMENDATION*

BLOOM, United States Magistrate Judge.

The Honorable Nicholas G. Garaufis, United States District Judge, referred this petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254 to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). For the following reasons, it is respectfully recommended that the petition should be denied.

## BACKGROUND

### I. *Facts*

On November 29, 1995, at approximately 8:00 p.m., petitioner and an accomplice [1] entered Continental Services, an office where petitioner had formerly been employed, and held two employees Michael Thomas ("Thomas") and Marie Gehring ("Gehring") at gunpoint and demanded money. T at 50–55, 549, 551. [2] The employees stated that there was no company money on the premises. However, Gehring offered the money that she had in her purse. After taking Gehring's money, petitioner fired a shot and fled the scene. T at 53, 552. Although petitioner was wearing a ski mask during the robbery, Thomas recognized petitioner's voice, and subsequently identified petitioner in a voice line-up. On January 2, 1996, following the identification, petitioner was arrested and gave police a written statement, admitting that he had participated in the robbery, but alleging that it was his accomplice who fired the gun.

[1]  On August 8, 1996, petitioner's accomplice, Carl Dade, pled guilty to two counts of Attempted Robbery in the First Degree, two counts of Attempted Robbery in the Second Degree, and Criminal Possession of a Weapon in the Third Degree. *See* Affidavit and Memorandum of Law in Opposition to Writ of Habeas Corpus at 2, n. 1

[2]  T refers to the transcript for the Jury Trial.

**\*6** In March 1996, while petitioner was in custody for the Continental Services robbery, petitioner filed a complaint against Detective Kevin Meehan, ("Meehan") the arresting officer in the case. T at 378. Petitioner alleges that he gave Meehan information on an unrelated double homicide, and that Meehan's failure to follow-up on that homicide resulted in a subsequent murder and robbery. T at 378–380, C at 29, 49–50. [3] On March 13, 1996, petitioner met with two detectives from the Internal Affairs Bureau ("LAB") to discuss his allegations against Meehan. At that time, petitioner told the IAB detectives that he had the gun that was used in the double homicide, and arranged for the IAB detectives to obtain the gun. T at 380–382, C at 50–51. Subsequent ballistics tests revealed that the gun was not related to either of the homicides. T at 386–387, C at 15, 47. Petitioner's allegations against Meehan were deemed unfounded..

[3]  C refers to the transcript for the Good Cause hearing held on August 5, 1997.

In April 1997, Karen Lynch, the Assistant District Attorney ("Lynch") assigned to prosecuting the Continental Services robbery case, learned that in response to a complaint filed by petitioner against Meehan, petitioner had been interviewed by the IAB. Lynch contacted the IAB detectives and was informed that a gun had been recovered as a result of the investigation. C at 52–54, 70. Lynch subpoenaed the file and the gun, and subsequent ballistics tests revealed that the bullet recovered from the Continental Services robbery had been fired from petitioner's gun. T at 519.

### A. *Pre-trial Hearings*

On August 5, 1997, a Good Cause hearing was held before the Honorable Joel L. Blumenfeld, pursuant to section 710.30 of New York's Criminal Procedure Law. [4] Petitioner argued that his March 13, 1996, statement regarding the gun that was used in the double homicide, should be precluded, because the state did not serve the statement upon him until a year and two months later. The Court held that "there is good cause for not having served it within fifteen days of arraignment, because within fifteen days of arraignment, they had no clue that the [petitioner] made this statement or what its relevance to this case." C at 97–98.

[4]  Section 710.30 provides, in pertinent part:
1. Whenever the people intend to offer at a trial ... evidence of a statement made by a defendant to a public servant, which statement if involuntarily made would render the evidence thereof suppressible upon motion pursuant to subdivision three of section 710.20, ... they must serve upon the defendant a notice of such intention, specifying the evidence intended to be offered.
2. Such notice must be served within fifteen days after arraignment and before trial, and upon such service the defendant must be accorded reasonable opportunity to move before trial, pursuant to subdivision one of section 710.40, to suppress the specified evidence. For good cause shown, however, the court may permit the people to serve such notice, thereafter and in such case it must accord the defendant reasonable opportunity thereafter to make a suppression motion.
N.Y.Crim. Proc. Law § 710.30(1), (2).

Moreover, prior to trial, a *Wade–Huntley* hearing was held before the Honorable Justice Timothy J. Flaherty. [5] In a decision dated July 23, 1997, the trial court denied petitioner's suppression motion and upheld the voice and physical identification of petitioner, as well as his oral and written statements. *See People v. King,* Ind. No. 3320–96, slip op. (Sup.Ct. Queens County, July 23, 1997).

[5]     A *Wade* hearing is held to determine whether the pretrial identification was unduly suggestive. *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). A *Huntley* hearing is held to determine the voluntariness of a confession. *People v. Huntley,* 15 N.Y.2d 72, 255 N.Y.S.2d 838, 204 N.E.2d 179 (1965).

Following, a jury trial, in Supreme Court, Queens County, petitioner was convicted of Robbery in the First Degree, Robbery in the Second Degree, Attempted Robbery in the First Degree, and Attempted Robbery in the Second Degree. *See People v. King,* 291 A.D.2d 413, 736 N.Y.S.2d 904 (2d Dept.2002). On August 11, 1998, petitioner was sentenced to a concurrent indeterminate term of imprisonment of twelve and one-half to twenty-five years on the First Degree Robbery conviction and seven and one-half to fifteen years on the Second Degree Robbery conviction, to run consecutive to concurrent indeterminate terms of seven and one-half to fifteen years on the Attempted First Degree Robbery conviction, and three and one-half to seven years on the Attempted Second–Degree Robbery conviction. S at 45–46. [6]

[6]     S refers to pages of the sentencing transcript.

## II. *Procedural History*

### A. *Direct Appeal*

**\*7** Petitioner, appealed his conviction to the Appellate Division, Second Department and argued that: (1) the integrity of the Grand Jury proceeding was impaired by the prosecutor's improper comments; (2) the trial court erred when it denied suppression of the voice lineup; (3) his right to counsel was violated when IAB detectives interviewed him after his right to counsel had attached; (4) that the trial court deprived petitioner, who was proceeding *pro se,* the right to present a defense by refusing to grant his request for an adjournment; and (5) that the court reporter unilaterally amended the sentencing transcript without a settlement hearing. (Brief for defendant-appellant at 11–20).

By opinion dated February 4, 2002, the Appellate Division affirmed petitioner's conviction holding:

> The Supreme Court properly denied the defendant's motion to dismiss the indictment. At the grand jury, the prosecutor had the right to cross-examine the defendant and to impeach him "within the limits of proper cross-examination" (*People v. Rosa,* 145 Misc.2d 423, 546 N.Y.S.2d 803; *see, People v. Karp,* 76 N.Y.2d 1006, 565 N.Y.S.2d 751, 566 N.E.2d 1156, *revg.* 158 A.D.2d 378, 551 N.Y.S.2d 503). Contrary to the defendant's contention, the prosecutor's crossexamination did not exceed permissible boundaries so as to render the proceedings defective (*see,* CPL 210.35[5]; *People v. Huston,* 88 N.Y.2d 400, 409, 646 N.Y.S.2d 69, 668 N.E.2d 1362). Therefore, the Supreme Court properly denied the defendant's motion to dismiss the indictment on that ground.

> The hearing court properly denied that branch of the defendant's omnibus motion which was to suppress voice identification evidence. The failure of the police to produce an audiotape of the voice lineup created a presumption of suggestiveness (*see, People v. Collins,* 60 N.Y.2d 214, 218, 469 N.Y.S.2d 65, 456 N.E.2d 1188; *People v. Wedgeworth,* 156 A.D.2d 529, 548 N.Y.S.2d 790). However, the police overcame that presumption by the testimony of the arresting officer who oversaw the lineup, which demonstrated that the procedures utilized were not impermissibly suggestive (*see, People v. Brennan,* 222 A.D.2d 445, 635 N.Y.S.2d 39). Once the People met their initial burden, the burden shifted to the defendant to prove that the identification procedure was unduly suggestive (*People v. Chipp,* 75 N.Y.2d 327, 553 N.Y.S.2d 72, 552 N.E.2d 608, *cert. denied* 498 U.S. 833, 111 S.Ct. 99, 112 L.Ed.2d 70). The defendant failed to do so.

> In any event, the People established that the identification was merely confirmatory, since the identifying witness had worked with the defendant for years, and the defendant acknowledged that he was well acquainted with the witness (*see, People v. Rodriguez,* 79 N.Y.2d 445, 452, 583 N.Y.S.2d 814, 593 N.E.2d 268). Therefore, there is no basis in the record for disturbing the hearing court's determination. The defendant's remaining contentions are without merit.

See *People v. King,* 291 A.D.2d 413, 736 N.Y.S.2d 904 (2d Dept.2002). On June 24, 2002, the New York Court of Appeals denied petitioner leave to appeal. *People v. King,* 98 N.Y.2d 677, 746 N.Y.S.2d 466, 774 N.E.2d 231 (2002).

B. *Habeas Petition*

Petitioner, proceeding *pro se,* filed the instant habeas petition on November 17, 2003. The petition raises five grounds, each of which contains several claims. By order dated May 3, 2005, this Court dismissed, as unexhausted, Grounds One through Four. Accordingly, the only ground that remains to be addressed in this Report and Recommendation is Ground 5 which alleges that: petitioner was deprived of his right to a fair trial because the prosecutor impaired the grand jury; the trial court erred in not suppressing an unrecorded voice identification; the police improperly questioned petitioner outside the presence of counsel; and petitioner was denied the opportunity to present a defense on his behalf. *See* Ground Five of Habeas Petition.

**\*8** On December 6, 2007, petitioner filed a motion to compel respondent to produce additional documents, and for an extension of time to reply to respondent's opposition to the writ. *See* docket entry 29. As petitioner was granted numerous extensions of time to reply, petitioner's motion is denied but will be construed as his reply.

## DISCUSSION

### I. *Standard of Review*

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214, once a state court has adjudicated a petitioner's claim on the merits, a federal court may not grant a habeas petition on that claim unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *See Mask v. McGinnis,* 252 F.3d 85, 90 (2d Cir.2001) (holding that the phrase federal law refers only to "clearly established Supreme Court precedent").

Clearly established Federal law is comprised of "the holdings, as opposed to the dicta, of [the Supreme

Court's decisions as of the time of the relevant state court decision." *Green v. Travis,* 414 F.3d 288, 296 (2d Cir.2005) (quoting *Williams v. Taylor,* 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams,* 529 U.S. at 413; *see also Earley v. Murray,* 451 F.3d 71, 74 (2d Cir.2006). A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Williams,* 529 U.S. at 413; *Earley,* 451 F.3d at 74.

AEDPA establishes a deferential standard of review: the relevant inquiry under AEDPA "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable-a substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 127 S.Ct. 1933, 1939, 167 L.Ed.2d 836 (2007); *Gilchrist v. O'Keefe,* 260 F.3d 87, 93 (2d Cir.2001). The Second Circuit has noted that although "[s]ome increment of incorrectness beyond error is required ... the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Gilchrist* 260 F.3d at 93 (quoting *Francis S. v. Stone,* 221 F.3d 100, 111 (2d Cir.2000)); *accord Earley,* 451 F.3d at 74.

When reviewing a habeas petition, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241; *see also Rose v. Hodges,* 423 U.S. 19, 21, 96 S.Ct. 175, 46 L.Ed.2d 162 (1975) (per curiam); *Cook v. N.Y. State Div. of Parole,* 321 F.3d 274, 277 (2d Cir.2003). Federal habeas corpus relief does not lie for errors of state law. *Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *DiGuglielmo v. Smith,* 366 F.3d 130, 136–37 (2d Cir.2004).

**\*9** Furthermore, as long as the state court disposes of the federal claim on the merits and reduces its disposition to judgment, the deference demanded of a federal habeas court by § 2254(d)(1) applies even if the state court does not explicitly refer to either the federal claim or to relevant

federal case law. *Jimenez v. Walker,* 458 F.3d 130, 146 (2d Cir.2006); *Sellan v. Kuhlman,* 261 F.3d 303, 312 (2d Cir.2001). Applying this standard to this case, petitioner's application for a writ of habeas corpus should be denied.

## II. *Petitioner's Claims*

### A. *Voice Lineup*

Petitioner alleges that the trial court erred when it ruled that the voice identification of petitioner by Thomas, a witness to the robbery, should not be suppressed. Petitioner further alleges that the failure to preserve the voice lineup by an audiotape of the procedure was unduly suggestive. (Brief for defendant-appellant at 38, 40).

The Court employs a two-step inquiry to evaluate out-of-court identification procedures. *See Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *Velazquez v. Poole,* No. 04 CV 478, 2007 WL 3240550, at *23 (E.D.N.Y. Oct.30, 2007). First, a court must determine whether the identification procedure was impermissibly suggestive and if so, whether it was so suggestive as to raise "a very substantial likelihood of irreparable misidentification." *Id.* at 198; *see also United States v. Wong,* 40 F.3d 1347, 1359 (2d Cir.1994).

If the procedure was not suggestive, the identification presents no problems regarding admissibility. *See Jarrett v. Headley,* 802 F.2d 34, 42 (2d Cir.1986); *Ortiz v. Artus,* No. 06 Civ. 6444, 2008 WL 2369218, at *6 (S.D.N.Y. June 9, 2008). If however, the court finds the procedures were unnecessarily suggestive, it must then determine whether the identification was nonetheless independently reliable. *Manson v. Brathwaite,* 432 U.S. 98, 110–14, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Raheem v. Kelly,* 257 F.3d 122, 133 (2d Cir.2001). In short, identification evidence will be admissible if (a) the identification procedures used were not suggestive or (b) the witness' identification has independent reliability. *Raheem,* 257 F.3d at 133 (citing *Manson,* 432 U.S. at 114; *Hornedo v. Artus,* No. 04 CV 3201, 2008 WL 346360 at *12 (E.D.N.Y. Feb. 6, 2008).

Applying these principles to the voice identification procedure employed by the police in this case, the state court decision was not contrary to or an unreasonable application of Federal law. Even if the voice identification had been suggestive, the Court found that the procedure was independently reliable. As the suppression court noted, the voice identification was necessitated by the

fact that petitioner was masked during the robbery. *See People v. King,* Ind. No. 3320–96, slip op. (Sup.Ct. Queens County, July 23, 1997). Meehan testified at trial that petitioner was put in a room with five fillers, was given a choice of what number and what seat he would like. T at 169. The fillers and petitioner had the same general characteristics and voices, including no distinctive accents of any kind. T at 172. At the lineup, petitioner and the fillers recited the words that Thomas stated were said to him during the robbery. T at 170–171. Thomas was in a separate room behind a wall and was unable to view the lineup. T at 172. At the voice lineup, Thomas was able to identify petitioner as the individual who robbed him at the Continental Services office. The voice lineup was confirmed by a physical lineup, at which Thomas once again identified petitioner. T at 175.

**\*10** Under § 2254, the Court must presume the correctness of the trial court's factual findings that the police adequately maintained the integrity and fairness of the voice identification. *See* 28 U.S.C. § 2254(d)(2), (e)(1).

Following a suppression hearing, the trial court held:

> The challenge to the voice line-up of the defendant is without merit. In this case, a voice identification was necessitated by the fact that the perpetrator has been masked during the robbery. Additionally, prior to the voice line-up, the complainant had identified the defendant, who was previously known to him as the perpetrator of the robbery. Therefore, the defendant's claim that the voice identification of the defendants is unreliable is contrary to long established law and must be rejected (citations omitted).

*See People v. King,* Ind. No. 3320–96, slip op. at 4 (Sup.Ct. Queens County, July 23, 1997).

The Appellate Division further reviewed this claim:

> The failure of the police to produce an audiotape of the voice lineup created a presumption of suggestiveness (*see, People v. Collins,* 60 N.Y.2d 214, 218, 469 N.Y.S.2d 65, 456 N.E.2d 1188; *People v. Wedgeworth,* 156 A.D.2d 529, 548 N.Y.S.2d 790). However, the

police overcame that presumption by the testimony of the arresting officer who oversaw the lineup, which demonstrated that the procedures utilized were not impermissibly suggestive (*see, People v. Brennan,* 222 A.D.2d 445, 635 N.Y.S.2d 39). Once the People met their initial burden, the burden shifted to the defendant to prove that the identification procedure was unduly suggestive (*People v. Chipp,* 75 N.Y.2d 327, 553 N.Y.S.2d 72, 552 N.E.2d 608 *cert. denied* 498 U.S. 833, 111 S.Ct. 99, 112 L.Ed.2d 70). The defendant failed to do so.

In any event, the People established that the identification was merely confirmatory, since the identifying witness had worked with the defendant for years, and the defendant acknowledged that he was well acquainted with the witness (*see, People v. Rodriguez,* 79 N.Y.2d 445, 452, 583 N.Y.S.2d 814, 593 N.E.2d 268).

*See People v. King,* 291 A.D.2d 413, 736 N.Y.S.2d 904 (2d Dept.2002).

Petitioner has not rebutted the presumption of correctness of the state court's factual findings by clear and convincing evidence as required under § 2254. Moreover, that the voice lineup was not recorded does not render the lineup impermissibly suggestive. *See People v. Wallington,* 271 A.D.2d 384, 708 N.Y.S.2d 60 (1st Dept.2000) (lack of a tape recording of the vocal aspect of a lineup did not require suppression). Accordingly, the state courts' decision that the lineup was not suggestive was neither contrary to, nor involved an unreasonable application of clearly established Federal law. *See* 28 U.S.C. § 2254(d), (e)(1). Therefore, this claim should be denied.

### B. *Grand Jury*

#### 1. *Exhaustion*

Petitioner argues that the prosecutor's cumulative misconduct impaired the integrity of the grand jury proceeding. (Brief for defendant-appellant at 27). Specifically, petitioner alleges that following his testimony at the grand jury, the prosecutor injected her opinion about petitioner's guilt, attacked his failure to come forward earlier with his alibi defense, became an unsworn witness against him, and suggested that petitioner had a propensity to commit armed robberies. *Id.*

*11 Respondent argues that this challenge to the grand jury proceedings is unexhausted because petitioner's brief did not alert the Appellate Division to the federal constitutional nature of petitioner's argument. *See* Affidavit and Memorandum of Law in Opposition to Writ of Habeas Corpus at 17. This Court agrees.

A federal court may not grant a writ of habeas corpus unless a petitioner has exhausted his remedies available in the state courts. 28 U.S.C. § 2254(b)(1)(A). A petitioner exhausts his state-court remedies by fairly presenting each federal claim for relief to the highest state court capable of review. *See, e.g., Baldwin v. Reese,* 541 U.S. 27, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004); *Jackson v. Edwards,* 404 F.3d 612, 618 (2d Cir.2005) (to be eligible for habeas relief, the substance of claim must have been fairly presented to the state appellate court); *Fama v. Com'r of Corr. Servs.,* 235 F.3d 804, 808–09 (2d Cir.2000). Such fair presentation to the state court requires that the petitioner assert the same legal theory and premise it on essentially the same body of facts as he invokes in the federal court. *See, e.g., O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Jimenez,* 458 F.3d at 149; *Volpe v. Downstate Correctional Facility,* No. 06 CV 6181, 2006 WL 3498580, at *1 (E.D.N.Y. Nov.30, 2006).

Here, petitioner's state court brief makes no reference to federal constitutional principles. The brief cites exclusively to New York State court cases, and makes no reference whatsoever to any federal cases or to the federal constitution. Even if some of the state cases cited to federal cases, nothing in petitioner's brief alerted the appellate courts to the federal nature of petitioner's grand jury claim. *See Baldwin,* 541 U.S. at 29.

If a claim is not fairly presented to the state court, the habeas court will nonetheless deem it exhausted if there is "an absence of available State corrective process under § 2254(b)(l)(B)(i)" because "it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile." *Aparicio v. Artuz,* 269 F.3d 78, 90 (2d Cir.2001). When a petitioner "fail[s] to exhaust state remedies, 'and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' federal habeas courts also must deem the claims procedurally defaulted." *Id.* (quoting *Coleman v. Thompson,* 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)).

Petitioner has already taken the one direct appeal to which he is entitled, and no longer has any procedure available in state court to raise this claim. Accordingly, this claim is procedurally barred from habeas corpus review. Where a habeas claim is deemed procedurally barred, a federal court will not entertain such a claim "absent a showing of cause and prejudice to excuse the default," or where the petitioner can show that he is "actually innocent of the underlying offense." *Dretke v. Haley,* 541 U.S. 386, 388, 124 S.Ct. 1847, 158 L.Ed.2d 659 (2004) (citing *Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2678, 91 L.Ed.2d 397 (1986)). Here, petitioner does not demonstrate cause, prejudice or that a fundamental miscarriage of justice would occur absent federal court review. Therefore, petitioner's grand jury claim should not be reached because it is unexhausted and procedurally barred.

**\*12** Even if the claim were to be reviewed on the merits, it should be denied. Petitioner was convicted following a trial, therefore, any alleged deficiencies in the indicting grand jury's proceedings are not cognizable in a federal habeas corpus proceeding. *See United States v. Mechanik,* 475 U.S. 66, 70, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986) ("The petit jury's verdict of guilty beyond a reasonable doubt demonstrates a *fortiori* that there was probable cause to charge the defendants with the offenses for which they were convicted. Therefore, the convictions must stand despite the [grand jury] rule violation."); *Davis v. Mantello,* 42 Fed. Appx. 488, 490–91 (2d Cir.2002) (summary order) ("Claims of deficiencies in state grand jury proceedings are not cognizable in a habeas corpus proceeding in federal court."), *cert. denied,* 538 U.S. 986, 123 S.Ct. 1803, 155 L.Ed.2d 681 (2003); *see also Lopez v. Riley,* 865 F.2d 30, 32 (2d Cir.1989) ("If federal grand jury rights are not cognizable on direct appeal where rendered harmless by a petit jury, similar claims concerning a state grand jury proceeding are a *fortiori* foreclosed in a collateral attack brought in federal court."); *Archer v. Connell,* No. 06 CV 2961, 2008 WL 434266, at \*10 (E.D.N.Y. Feb. 14, 2008).

Here, petitioner argues that there were deficiencies in the grand jury proceeding. However, petitioner was found guilty by a petit jury. Therefore, his grand jury claim is not cognizable on federal habeas review and this claim should be denied.

## C. *Right to Counsel*

### 1. *Exhaustion*

Petitioner alleges that his right to counsel was violated when after an attorney had been appointed on the Continental Services robbery case, IAB detectives questioned him on an unrelated matter. Therefore, petitioner argues that the gun and his statements should have been suppressed. (Brief for defendant-appellant at 48). Respondent argues that this claim does not present a cognizable federal claim, is unexhausted and procedurally barred.

In March 1996, while petitioner was in custody on the Continental Services robbery case, he filed a complaint against Meehan. The complaint alleged that Meehan failed to investigate a double homicide about which petitioner had given him information, and that his failure to do so resulted in the death of two other people. T at 378–380. Petitioner was interviewed by two IAB detectives regarding the allegations he made against Meehan. During that interview, petitioner stated that he received a handgun from a friend of his that was used in the double homicide. T at 380. Petitioner further stated that the gun was kept at his girlfriend's house, and that he would tell his girlfriend to turn over the gun to the IAB detectives. The gun was tested, and was found not to have been used in the double homicide. T at 386.

More than a year later, Lynch, the Assistant District Attorney assigned to the Continental Services robbery case, contacted IAB to see if there was any *Rosario* material in the file. At that time, she learned that petitioner had surrendered a gun to the IAB detectives. Tests confirmed that the bullet recovered from the wall of the Continental Services office came from gun petitioner had surrendered a year earlier. T at 221, 247–249.

**\*13** Respondent argues that petitioner failed to alert the state courts to the federal constitutional nature of this claim and that he no longer has a forum in which he could raise this claim now. This Court disagrees. In order to satisfy the exhaustion requirement, a habeas petitioner must give the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan,* 526 U.S. at 845; *see also Taveras v. Smith,* 388 F.Supp.2d 256, 264 (S.D.N.Y.2005) (a petitioner is required to present his constitutional claim "to each level

of the state court system available to review the claim"). A petitioner must not only " 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review)," but must alert each court "to the federal nature of the claim." *Baldwin,* 541 U.S. at 29 (citing *Duncan v. Henry,* 513 U.S. 364, 365–66, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam), and *O'Sullivan,* 526 U.S. at 845).

A petitioner can alert a state court to the federal constitutional nature of his claim in various ways, including "(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." *Daye v. Attorney General of State of N.Y.,* 696 F.2d 186, 194 (2d Cir.1982); *Martinez v. Brown,* No. 05 CV 4464, 2007 WL 2402995, at *1 (E.D.N.Y. Aug. 17, 2007). Petitioner's appellate brief cites to both federal and state cases involving the legal standard for federal constitutional right to counsel. Accordingly, this Court deems this claim exhausted and reaches the merits of the claim.

Under New York law, once a defendant is represented by counsel on the charge for which he is in custody, " 'custodial interrogation about any subject, whether related or unrelated to the charge upon which representation is sought or obtained, must cease.' " *People v. Burdo,* 91 N.Y.2d 146, 149, 667 N.Y.S.2d 970, 690 N.E.2d 854 (1997) (quoting *People v. Steward,* 88 N.Y.2d 496, 646 N.Y.S.2d 974, 670 N.E.2d 214 (N.Y.1996)). The Supreme Court has held that the right to assistance of counsel is "offense specific" and "attaches only to charged offenses." *Texas v. Cobb,* 532 U.S. 162, 164, 121 S.Ct. 1335, 149 L.Ed.2d 321 (2001); *Key v. Artuz,* No. 99 CV 161, 2002 WL 31102627, at *4 (E.D.N.Y. Sept. 16, 2002). That is, while a defendant may have a Sixth Amendment right to counsel in a case where the adversarial process has been initiated against him, that right does not attach to an unrelated case in which the adversarial process has not been initiated. *Rivera v. Conway,* 350 F.Supp.2d 536, 548 (S.D.N.Y.2004). Accordingly, the New York right to counsel is broader than the federal right to counsel. *Cf. Rivera v. Artus,* No. 05 Cv 5050, 2007 WL 3124558, at *7 n. 7 (E.D.N.Y. Oct.25, 2007) (citing *Hill v. Senkowski,* 409

F.Supp.2d 222, 232 (W.D.N.Y.2006) (holding that, to the extent a state law claim is broader than a similar federal right, the state law claim is not cognizable on federal habeas review)); *Hurd v. Stinson,* No. 99 Civ. 2426, 2000 WL 567014, at *12 n. 12 (S.D.N.Y. May 10, 2000).

**\*14** Here, the IAB detectives interviewed petitioner at his request. The purpose of the interview was to determine the substance of petitioner's allegations against Meehan, not to elicit any information about the Continental Services robbery. T at 379. In fact, the IAB detective testified that he did not learn the reason petitioner was in custody until the day after he conducted his interview. T at 468– 469. Moreover, petitioner volunteered the information about the gun, and once the detectives determined that the recovered gun was not used in the double homicide they took no further action. T at 380. The police were not interested in prosecuting petitioner for possession of the gun, as he relinquished it as part of the Internal Affairs investigation. More than a year later, when Lynch contacted the IAB detectives to ask about any potential *Rosario* material, they produced petitioner's gun to her. T at 462–466.

As respondent effectively argued: "by giving the detectives the gun in relation to two other cases, [petitioner] effectively distanced himself from it; and, just in case anyone caught on, he could argue that the gun—and the subsequent ballistics tests—were not admissible against him." (Brief for respondent at 34). Although the gun was ultimately used against him in the Continental Services robbery case, under the facts presented here, where plaintiff volunteered the information and the gun to the IAB detectives, there was no Sixth Amendment violation of petitioner's right to counsel. Accordingly, the state court decision was not contrary to or an unreasonable application of clearly established Federal law and this claim should be denied.

### D. *The Trial Court's Exclusion of Testimony*

Petitioner alleges that his due process right to present a defense was violated when the court precluded Detective McHugh ("McHugh") from testifying. Petitioner argues that although he served subpoenas on various witnesses, including McHugh, [7] no one appeared in response to the subpoenas. Petitioner further argues that since he was incarcerated and representing himself *pro se,* he could not

determine McHugh's or his other witnesses whereabouts. (Brief for defendant-appellant at 55).

7    Petitioner characterized McHugh as a "key witness to prove that the police had framed him ..." (Brief for defendant-appellant at 54).

A federal court's habeas review is limited where petitioner claims that a state court's evidentiary ruling involved an error of constitutional magnitude. *See Estelle,* 502 U.S. at 67 (federal habeas corpus relief does not lie for errors of state law.). In determining whether the exclusion of evidence improperly infringed on a defendant's right to present a complete defense, reviewing courts analyze: (1) whether the trial court's evidentiary ruling was proper; and (2) whether the excluded evidence was material. *See Wade v. Mantello,* 333 F.3d 51, 58–59 (2d Cir.2003). Erroneously excluded evidence only reaches a level of unfairness if it "creates a reasonable doubt that did not otherwise exist." *Jones v. Stinson,* 229 F.3d 112, 120 (2d Cir.2000) (quoting *United States v. Agurs,* 427 U.S. 97, 112, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)); *see also Sims v. Stinson,* 101 F.Supp.2d 187, 194 (S.D.N.Y.2000) (for an evidentiary error to reach constitutional magnitude, "it must have been 'crucial, critical, highly significant' ") (quoting *Collins v. Scully,* 755 F.2d 16, 19 (2d Cir.1985)). Therefore, a petitioner seeking habeas relief on the basis of an allegedly erroneous evidentiary ruling must establish that the trial court's error "deprived [him] of a fundamentally fair trial." *Zarvela v. Artuz,* 364 F.3d 415, 418 (2d Cir.2004) (quoting *Rosario v. Kuhlman,* 839 F.2d 918, 925 (2d Cir.1988)).

**\*15** Moreover, a federal habeas court reviews the evidentiary error "objectively in light of the entire record before the jury." *Collins,* 755 F.2d at 19. Here, a review of the state court record reveals that the judge provided petitioner with ample opportunity to have his witnesses present in court. On June 25, 1998, the trial court instructed petitioner to be ready on June 29th to present his defense. (T at 766–67, 834–835, 838, 840). On June 29th, when petitioner was not ready to present any witnesses the judge granted an adjournment until the following morning. (T at 989–993). The following morning, petitioner presented the testimony of Bernice Sutton, the only one of eleven defense witnesses that was available to testify. (T at 994–98, 1029–1032).

According to petitioner's legal advisor, petitioner had served a subpoena requesting the presence of "Detective

MacHuge." T at 1033–35. The legal advisor further stated that the Nassau County police department refused to accept that subpoena. *Id.* According to petitioner's legal advisor, no subpoenas were served on any of the other witnesses.

Although the trial record is unclear as to why the subpoena for McHugh was rejected, respondent asserts that petitioner had misspelled McHugh's name on the witness list and possibly on the subpoena itself. Therefore, the subpoena was rejected as it named "Detective MacHuge" instead of Detective McHugh. *See* Affidavit and Memorandum of Law in Opposition to Writ of Habeas Corpus at 36, n. 5. The record reflects that the subpoena for McHugh was signed by the court on June 10, 1998, and served on June 18, 1998. T at 1034–35. Prior to trial, petitioner made no further attempt to secure McHugh's appearance. Furthermore, although petitioner characterized McHugh as a "crucial" witness, necessary to prove that the police had framed him for the Continental Services robbery, this allegation is conclusory and is not supported by the record. T at 1035. McHugh arrested petitioner on an unrelated robbery, and thus was unlikely to have any material information about petitioner's involvement in this case. *See* Affidavit and Memorandum of Law in Opposition to Writ of Habeas Corpus at 42.

The decision of whether to grant or deny a continuance is "a matter 'traditionally within the discretion of the trial judge.' " *Drake v. Portuondo,* 321 F.3d 338, 344 (2d Cir.2003) (quoting *Ungar v. Sarafite,* 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964) and *citing Morris v. Slappy,* 461 U.S. 1, 11, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983)). "[O]nly an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the [Constitution]." *Morris,* 461 U.S. at 12 (quoting *Ungar,* 376 U.S. at 589); *accord Drake,* 321 F.3d at 344; *United States v. Arena,* 180 F.3d 380, 397 (2d Cir.1999) ("The denial of a defendant's request for a continuance will not be reversed absent a showing of both arbitrariness and of prejudice to the defendant.") (citations omitted).

**\*16** Petitioner fails to demonstrate that the court's actions were arbitrary or that his defense was substantially impaired by the court's denial of his request for another adjournment. Petitioner makes no showing that a further adjournment would have enabled him to secure the

attendance of any of his witnesses. Moreover, even if he could do so, he makes no showing that the testimony of any of these witnesses would have been exculpatory.

Finally, any evidentiary error is subject to the harmless error standard. The Supreme Court has clarified that, on habeas review, courts must analyze whether a constitutional error was harmless by using the substantial and injurious effect standard set forth in *Brecht v. Abrahamson,* 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). *Fry v. Plier,* 551 U.S. 112, 127 S.Ct. 2321, 2328, 168 L.Ed.2d 16 (2007). Under the *Brecht* standard, "an error is harmless unless it 'had substantial and injurious effect or influence in determining the jury's verdict.' " *Fry,* 127 S.Ct. at 2325 (quoting *Brecht,* 507 U.S. at 631). Here, it is clear that any evidentiary error did not have a substantial and injurious effect or influence in determining the jury's verdict. Accordingly, the state court decision was not contrary to or an unreasonable application of clearly established Federal law and this claim should be denied.

### CONCLUSION

Accordingly, it is recommended that the instant petition seeking a writ of habeas corpus under 28 U.S.C. § 2254 should be denied. Because petitioner has not made a substantial showing of the denial of any constitutional right, it is recommended that no certificate of appealability should be issued. 28 U.S.C. § 2253: *see Lozada v. United States,* 107 F.3d 1011, 1017(2d Cir.1997), *abrogated on other grounds, United States v. Perez,* 129 F.3d 255, 259–

60 (2d Cir.1997) (discussing the standard for issuing a certificate of appealability); *see also Lucidore v. N. Y. State Div. of Parole,* 209 F.3d 107, 112–13 (2d Cir.2000), *cert. denied,* 531 U.S. 873, 121 S.Ct. 175, 148 L.Ed.2d 120 (2000). It is further recommended that the Court certify pursuant to 28 U.S.C. § 1915(a) that any appeal from a judgment denying this petition would not be taken in good faith. *Coppedge v. United States,* 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

### FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report and Recommendation to file written objections. Any request for an extension of time in which to file objections must be made within the ten (10) day period. Failure to timely file an objection to the Report and Recommendation generally waives any further judicial review. *DeLeon v. Strack,* 234 F.3d 84, 86 (2d Cir.2000); *Spence v. Superintendent, Great Meadow Corr. Fac.,* 219 F.3d 162, 174 (2d Cir.2000); *see also Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

SO ORDERED.

### All Citations

Not Reported in F.Supp.2d, 2009 WL 891763

---

    © 2017 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2017 Thomson Reuters. No claim to original U.S. Government Works.   13

2000 WL 709005
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Robert SMITH, Petitioner,

v.

Ernest EDWARDS, Superintendent, Respondent.

No. 98 Civ. 7962(DLC).
|
May 31, 2000.

**Attorneys and Law Firms**

Robert Smith, Otisville Correctional Facility, Otisville, NY, for Petitioner, pro se.

Mary C. Farrington, Assistant District Attorney, New York County, New York, NY, for Respondent.

*OPINION AND ORDER*

COTE, J.

**\*1** On November 6, 1998, [1] Robert Smith ("Smith") filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2554 challenging his conviction following trial for rape, sodomy, assault, and unlawful imprisonment. In the course of a collateral attack on the conviction in state court, Justice Arlene Silverman ordered DNA testing of semen samples taken after the rape from the victim. The testing excluded the petitioner as the donor. Smith's collateral attacks in state court were rejected, and on November 15, 1999, Magistrate Judge Kevin Fox recommended that the petition be dismissed. Based on the analysis which follows, this petition is dismissed.

[1]     The petition was received by the Court's Pro Se Office on September 28, 1998, but was not filed until November 6, 1998.

BACKGROUND

The evidence at trial, which took place in July 1990, included the following. The victim testified that after a sexual liaison with her boyfriend on Saturday, February 10, 1990, she showered and later went to Smith's apartment that same night with her boyfriend and a woman friend. Smith and his friend William Webb ("Webb") were there, and all of the group drank alcohol and used drugs, including crack cocaine. After awhile only the victim, Smith, and Webb remained in the apartment. Smith then attacked the victim, beating, raping, and sodomizing her over the course of several episodes. The victim testified that she did not know whether Smith had ejaculated.

The victim tried unsuccessfully to escape from the apartment. At approximately 4:00 p.m. on Sunday, the building manager, who was walking past the apartment, heard screaming and investigated. The manager forced open the apartment door and heard a woman scream, "Let me out of here. Let me out of here. I'm going to die if you don't let me out of here." The victim ran past the manager and onto the street. Smith told the manager that nothing was going on and that the woman was crazy.

The victim used a telephone on the street to call the police and when they arrived, she reported that she had been beaten and raped. The police saw that she had been crying, that her nose was bleeding, that her face was swollen and puffy and that her clothes were in disarray. When she led them to Smith's apartment, Webb was there with another man, but Smith was not. The police arrested Smith in a nearby apartment, where he was crouching down in a closet holding a bottle of wine and wearing only a pair of pants.

An examination at the hospital confirmed that the victim had lacerations on her face and pelvic area. There were multiple tears or lacerations on the lining of her vagina, some of which were bleeding. The doctor concluded that they had resulted from forceful trauma or penetration and were consistent with rape. Forensic testing showed the presence of sperm on the victim's underwear and on the rectal and vaginal slides prepared at the hospital. No testing had been done, however, to link the semen to the defendant.

Smith called two witnesses on his behalf and also took the stand himself. One witness testified that he had stayed at Smith's apartment on Saturday night and that there were no women there. The second witness testified that he lives next door and did not hear anything through the common door that separates the two apartments. He added that at 8:00 a.m. on Sunday morning he met Smith and the victim

on the street in front of the apartment building and bought wine for them. When he returned at approximately 4:00 p.m., he met Smith in the building's hallway and went with him out onto the street, where they saw the victim. Smith said, "Oh she must have called the cops on me." When he later returned to his apartment he discovered Smith inside a closet holding a wine bottle.

**\*2** Smith testified that he had spent Saturday night at home with only male friends. He remembered the victim coming to his apartment early Sunday morning to smoke crack with him. According to Smith, the victim had wanted to have sex, but he rebuffed her because his gonorrhea made intercourse too painful. The fact that he suffered from gonorrhea was corroborated by medical records. His recollection of what occurred during the day was confused, but Smith recalled that the victim eventually returned to his apartment complaining that she had been given had drugs, at which point he had hit her and her nose began to bleed. The victim fell several times. At this point the manager forced her way into the apartment. Smith explained that he had hidden in the closet because the building manager had threatened to have him arrested if she discovered him drinking alcohol on a Sunday.

Smith was convicted on all counts and sentenced on October 1, 1990, to concurrent prison terms of seven to twenty-one years for each of the rape and sodomy counts, two and one-third to seven years for the assault count, and one year for the unlawful imprisonment. On appeal, Smith claimed that (1) he was denied effective assistance of counsel for the failure to conduct DNA testing of the semen samples collected at the hospital and for the failure to call two potential defense witnesses; (2) the trial court erred in limiting argument on the state's failure to conduct DNA testing; (3) the state denied him exculpatory evidence by refusing to conduct DNA testing; and (4) the verdict was based on insufficient evidence. The Appellate Division affirmed the conviction in a published opinion, 612 N.Y.S.2d 13 (1st Dep't 1994), and leave to appeal was denied by the Court of Appeals.

While the appeal was pending, Smith filed a Section 440.10 motion *pro se* on the grounds that his trial counsel had been ineffective for failure to arrange DNA testing and to call the two defense witnesses. Assigned counsel filed a second such motion, raising the same claims. It was denied and Smith did not appeal.

Smith filed a third such motion *pro se,* focused solely on the failure of the prosecution and the court to arrange for DNA testing. The court assigned counsel for Smith and ordered the testing, which when done, excluded Smith as a donor. At a hearing, the prosecution's expert confirmed the lab tests and added that Webb was also eliminated as a donor and that all of the DNA material obtained by the hospital came from one source. The DNA material had been collected from the victim's pantyhose, vagina and rectum, and possibly from her mouth and hair. An expert explained that sperm could travel from the vagina to rectum. The state was unable to locate the victim's boyfriend, and there is no evidence as to whether he is the source of the sperm that was analyzed. Justice Silverman denied the motion based on a claim of ineffective assistance of counsel on the ground that it had been rejected by the Appellate Division and in the denial of Smith's second Section 440.10 motion. She concluded that the DNA evidence was not newly discovered evidence since it could have been obtained prior to trial. Finally, she reasoned that Smith would have been convicted even if the DNA evidence had been available at trial given the other evidence introduced at trial.

**\*3** Smith appealed the denial of his Section 440.10 motion. The decision was affirmed and leave to appeal to the Court of Appeals was denied on June 23, 1998. The Appellate Division ruled that the "DNA tests would not have probably resulted in a more favorable verdict" for Smith. *People v. Smith,* 665 N.Y.S.2d 648 (1st Dep't 1997).

Smith filed this petition on November 6, 1998. He raised four claims: (1) that he received ineffective assistance from trial counsel; (2) that the trial court erred in limiting argument regarding the absence of the DNA testing; (3) that the prosecution had an obligation conduct DNA testing; and (4) that the DNA evidence exonerates him. On January 15, 1999, this Court referred the petition to Magistrate Judge Fox for a Report and Recommendation. On November 15, 1999, the Magistrate issued his Report, recommending that the petition be dismissed ("Report"). Smith asked for an extension of his time to object to the Report and submitted his objections on March 1, 2000. Through a letter of March 9, 2000, the state asks the Court to accept the Report.

DISCUSSION

In reviewing the Report, this Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). "To accept the report and recommendation of a magistrate, to which no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record." *Nelson v. Smith,* 618 F.Supp. 1186, 1189 (S.D.N.Y.1985) (citations omitted). *See also Pizarro v. Bartlett,* 776 F.Supp. 815, 817 (S.D.N.Y.1991) (court may accept report if it is "not facially erroneous"). The Court shall make a *de novo* determination of those portions of the Report to which objection is made. *See id.; United States v. Male Juvenile,* 121 F.3d 34, 38 (2d Cir.1997).

Section 2254, as amended by the AEDPA, provides for the following standard of review:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). As the Supreme Court has recently elaborated,

> [u]nder the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a

> federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

**\*4** *Williams v. Taylor,* 120 S.Ct. 1495, 1523 (2000). With respect to factual findings, Section 2254(e)(1) states that "a determination of a factual issue made by a State court shall be presumed to be correct" and that a petitioner is required to rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A. Ineffective Assistance of Trial Counsel

Smith contends in his petition that his trial counsel was ineffective in that he failed to arrange for DNA testing and failed to call two potential defense witnesses. The Report found that these claims were procedurally barred whether one considered the record on the direct appeal or the Section 440.10 litigation. On direct appeal, the Appellate Division ruled that the remaining claims made by Smith which it had not yet discussed, and which included the claimed ineffectiveness of trial counsel, were "either unpreserved or without merit." Since a Section 440.10 motion is the "preferred avenue" for a claim of ineffective assistance, *Caballero v. Keane,* 42 F.3d 738, 740 (2d Cir.1994), it is presumed that the appellate division considered this particular argument to be "unpreserved." Although Smith properly brought these claims in a collateral attack on his conviction, he did not appeal from the denial of that Section 440.10 motion. Consequently, the Report analyzed whether Smith had shown cause and prejudice, and found that he had offered no explanation sufficient to establish either.

Despite the conclusion that Smith was procedurally barred from claiming ineffective assistance of counsel, the Report also addressed the claim on the merits. Smith's counsel for the Section 440.10 litigation explained that trial counsel had not conducted the DNA testing because of concerns about the expense of the testing and the availability of the results by the time of the trial, as well as its admissibility. The Report found that there was no ineffective assistance since, as a strategic matter, it was reasonable not to conduct testing when the results might be harmful to Smith or even if helpful might well be

inadmissible. Using similar reasoning, the Report found that it was a reasonable and strategic decision by trial counsel not to call the two witnesses, both of whom trial counsel had interviewed.

Smith argues that his claims are not procedurally barred since the verdict represents a fundamental miscarriage of justice. [2] Since the Report was based on alternative analyses and Smith's objections do not raise the Report's alternative ground for dismissing the claimed ineffective assistance of counsel, the Court will review the Report for clear error. Finding none, this portion of the Report is adopted.

[2]     Smith adds a claim in his objections that his counsel was ineffective for failing to object to the following alleged violation of his Sixth Amendment right to confront the witnesses against him. Apparently, the Grand Jury testimony included his co-defendant's plea allocution that what had happened in Smith's apartment was "frightening". Wholly apart from whether this claim is properly presented, errors in the Grand Jury presentation are not cognizable in a federal habeas petition. *See Lopez v. Riley,* 865 F.2d 30, 32 (2d Cir.1989). *See also United States v. Eltayib,* 88 F.3d 157, 173 (2d Cir.1996) (noting that the guilty verdict of a petit jury cures any defect in the grand jury proceeding).

As to Smith's claim of a fundamental miscarriage of justice, when a

> "state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."

**\*5** *Glenn v. Bartlett,* 98 F.3d 721, 724 (2d Cir.1996) (quoting *Coleman v. Thompson,* 501 U.S. 722, 750 (1991)). In the context of a federal habeas petition, a fundamental miscarriage of justice means that the " 'constitutional violation has probably resulted in the conviction of one who is actually innocent," ' *Reyes v. Keane,* 118 F.3d 136,

138 (2d Cir.1997) (quoting *Murray v. Carrier,* 477 U.S. 478, 496 (1986)). In order to demonstrate actual innocence in a collateral proceeding, a petitioner must present " 'new reliable evidence that was not presented at trial" ' and " 'show that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt." ' *Lucidore v. New York State Div. of Parole,* 209 F.3d 107, 114 (2d Cir.2000) (quoting *Schlup v. Delo,* 513 U.S. 298, 299, 327-28 (1995)) (brackets in original). Further, actual innocence means factual innocence, not mere legal insufficiency. *Rosario v. United States,* 164 F.3d 729, 733 (2d Cir.1998).

The facts to which petitioner points are insufficient to establish that his trial counsel's performance resulted in a miscarriage of justice. Even assuming that the evidence he points to could be characterized as "new reliable evidence," the facts Smith argues should have been presented at trial had he been represented effectively-the results of the DNA testing and the potentially exculpatory statements of two additional defense witnesses-are insufficient to establish his actual innocence. First, given the overall evidentiary strength of the prosecution's case, these facts do not present the situation in which the exclusion of petitioner as the source of semen recovered from the victim's body is dispositive of the trial issues. The jury was aware that the victim had had sex with her boyfriend prior to the sexual assaults and the police chemist testified at trial that no testing had been done to connect Smith to the semen recovered from the victim. As to the two witnesses defense counsel elected not to call, although the affidavits they submitted suggest that their trial testimony may have had some exculpatory value to petitioner, their statements were equally problematic to the extent that they conflicted with the petitioner's version of the events and even the theory of the defense. Defense counsel interviewed these witnesses prior to trial and thereafter determined not to call them. Because their testimony would have, at most, amounted to limited impeachment of the victim, the absence of such evidence is insufficient to establish actual innocence.

## B. The Trial Court Rulings

Smith contends in his petition that the trial court erred in not allowing him to point out to the jury that the prosecution had failed to conduct DNA testing. The Appellate Division ruled that

the trial court appropriately exercised its discretion in precluding cross-examination of the police chemist as to the absence of a particular chemical test (i.e., DNA testing), while permitting cross-examination regarding the inability of the tests actually performed to connect defendant with the crimes charged, as well as argument thereon in summation. By such ruling, the trial court properly discouraged undue speculation, while keeping the proceedings within the reasonable confines of the issues and encouraging clarity, rather than obscurity in the development of proof.

**\*6** 612 N.Y.S.2d at 14.

The Report recommends that this Court find no error since the trial court acted within its discretion to prevent jury speculation. Smith objects in a general fashion to the Report, but does not bring any specific objection to bear on this portion of the Report. Reviewing it for facial error, and finding none, the Report's recommendation is adopted.

C. The Prosecution's Failure to Conduct DNA Testing
Relying on *Arizona v. Youngblood,* 488 U.S. 51 (1988), the Report rejected Smith's contention that the prosecution had any obligation to perform DNA testing. Smith objects to this analysis, contending as he did before the state courts that the prosecutor had an obligation under *Brady v. Maryland,* 373 U.S. 83 (1963), to disclose exculpatory evidence to him, and that the failure to conduct the DNA testing amounted to a violation of that obligation.

Under *Brady,* 373 U.S. at 87, the government has a due process obligation to disclose without delay evidence *in its possession* that is material to either guilt or punishment. *United States v. Avellino,* 136 F.3d 249, 255 (2d Cir.1998). The prosecution is not, however, required to disclose evidence it does not possess or of which it is not aware, *see United States v. Tillem,* 906 F .2d 814, 824 (2d Cir.1990), and there is no due process requirement that the government use any particular

investigatory tool, including quantitative testing, to secure exculpatory evidence. *Youngblood,* 488 U.S. at 58-59. Because petitioner clearly does not contend that any exculpatory DNA evidence was within the prosecutor's possession, the fact that he couches the government's failure to perform DNA testing in terms of *Brady* does not convert a legitimate prosecutorial choice into a constitutional violation.

Moreover, the absence of a *Brady* violation is particularly clear where, as here, the evidence was equally available to the defense, which chose not to pursue this course of investigation. *Cf. Morgan v. Salamack,* 735 F.2d 354, 358 (2d Cir.1984). The rationale underlying *Brady* is that the defendant should not be denied access to exculpatory evidence only known to the government. *United States v. Zackson,* 6 F.3d 911, 918 (2d Cir.1993). *See also United States v. LeRoy,* 687 F.2d 610, 618 (2d Cir.1982) (no obligation to disclose exculpatory evidence "if the defendant either knew, or should have known, of the essential facts permitting him to take advantage of any exculpatory evidence"). Defense counsel had knowledge of the semen samples and, as discussed above, strategically opted not to pursue DNA testing as a means of garnishing potentially exculpatory evidence. Smith is not therefore entitled to habeas corpus relief on this claim.

D. Newly Discovered Evidence
Finally, Smith contends in his petition that he is entitled to a new trial because the DNA test results eliminating him as a donor of the semen recovered from the victim amount to newly discovered evidence. The Report rejects this claim on the ground that it constitutes a claim of innocence, [3] which is not a basis for habeas relief in the absence of an independent constitutional violation.

[3]     The Report finds that Smith's characterization of the DNA test results as "newly discovered evidence" is erroneous, because such physical evidence, although newly tested, is not newly discovered; its existence was known to petitioner prior to and during the trial.

**\*7** Smith's objections to the Report principally address this issue. He argues that, as outlined above, the prosecution had a *Brady* obligation to conduct DNA testing, and that if it had done so, there would have been a different result at trial. In support of this contention, he points to the fact that the victim's testimony was inherently unreliable since she was, as she admits, under

the influence of both drugs and alcohol at the time of the alleged rape. [4] He also argues that one of the witnesses interviewed but not called by his attorney as a defense witness was the victim's boyfriend, and that that person would have denied having had sex with the victim before the attack. [5] He further points to the fact that the semen found on the victim could not, in any event, be attributed to the boyfriend since the victim admitted that she took a shower after having had sexual relations with him.

[4]     Smith may thereby be arguing the existence of a second constitutional error. He contends that the trial court should have charged the jury that they could consider the victim's level of intoxication in deciding whether her testimony was reliable, a charge that his trial counsel had requested. Since this argument is first raised in Smith's objections, however, it will not be further addressed.

[5]     As the respondent points out, it is not altogether clear that the witness to whom Smith refers was the man the victim described in her testimony as her boyfriend. Among other things, he has a different surname.

Claims of newly discovered evidence that relate only to a petitioner's guilt or innocence do not warrant federal habeas relief absent an independent constitutional violation occurring in the state proceeding. *See Herrera v. Collins,* 506 U.S. 390, 400 (1993). Federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution-not to correct errors of fact. *See id.* As discussed above, the alleged violations of constitutional rights-petitioner's claims of ineffective assistance of counsel and *Brady* violations-are without merit, and thus the factual results of the DNA testing do not present a cognizable federal habeas corpus claim.

In any event, it is far from clear that the results of the DNA test constitute newly discovered evidence, since the physical evidence on which the testing was done was available to petitioner before and during the trial. Moreover, even assuming *arguendo,* that this evidence may be classified as newly discovered due to the advances in both DNA testing methodology and such evidence's increasing acceptance and admissibility, petitioner has failed to establish that its admission would probably lead to an acquittal. That Smith was eliminated as the source of the semen recovered from the victim was consistent with the victim's testimony that she had had intercourse with her boyfriend shortly before the crimes at issue, and that she was uncertain whether Smith had ejaculated during his sexual assaults upon her. Moreover, the victim's testimony about the assaults and rapes was corroborated by the doctor who examined her shortly after the events at issue, the responding police officers' testimony as to her demeanor and physical appearance, the testimony of the building manager, the actions of the victim herself-including her flight from petitioner's apartment and her immediate call to 911 from the street-and the petitioner's own conduct, which was consistent with guilt. In light of such evidence, Smith is unable to establish that had the jury been informed that the semen recovered from the victim's body was not his, such information would probably have resulted in his acquittal.

CONCLUSION

**\*8** For the reasons stated, the petition for a writ of habeas corpus is denied. The Clerk of Court shall close the case. I find that the petitioner has not made a substantial showing of the denial of a constitutional right and appellate review is therefore not warranted. *See Tankleff v. Senkowski,* 135 F.3d 235, 241 (2d Cir.1998); *Rodriguez v. Scully,* 905 F.2d 24 (2d Cir.1990). In addition, I find, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith. *See Coppedge v. United States,* 369 U.S. 438 (1962).

SO ORDERED:

**All Citations**

Not Reported in F.Supp.2d, 2000 WL 709005

End of Document                    © 2017 Thomson Reuters. No claim to original U.S. Government Works.